JENNIFER R. LIAKOS, ESQ. (CA SBN 207487)
MATTHEW M. LAVIN, ESQ. (*pro hac vice* forthcoming)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

JOHN W. TOWER, ESQ. (CA SBN 106425)
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA  92024
(760) 436-5589 / Fax (760) 479-0570

*Attorneys for Plaintiff*
Bristol SL Holdings, Inc.,
in its capacity as the assignee for
Sure Haven, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

BRISTOL SL HOLDINGS, INC., a California corporation, in its capacity as the assignee for SURE HAVEN, INC., a California corporation,

    Plaintiff,

  vs.

CIGNA HEALTH AND LIFE INSURANCE COMPANY, a Connecticut corporation; CIGNA BEHAVIORAL HEALTH, INC., a Connecticut corporation; and DOES 1 through 10, inclusive,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.:**

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL:**

1. **BREACH OF EMPLOYEE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER E.R.I.S.A.) 29 U.S.C. § 1132(a)(1)(b);**
2. **BREACH OF ORAL CONTRACT;**
3. **INTENTIONAL MISREPRESENTATION;**
4. **NEGLIGENT MISREPRESENTATION;**
5. **FRAUDULENT CONCEALMENT;**
6. **NEGLIGENT FAILURE TO DISCLOSE;**
7. **PROMISSORY ESTOPPEL;**
8. **QUANTUM MERUIT;**
9. **VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200;**
10. **BREACH OF IMPLIED CONTRACT;**
11. **BREACH OF WRITTEN CONTRACT;**
12. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

1. Plaintiff brings this action for monetary relief pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. §§

1132(a)(1)(b). This Court has subject matter jurisdiction over Plaintiff's claim because the action seeks to enforce rights under ERISA pursuant to §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

2.     Plaintiff also asserts state law claims for relief in this Complaint over which this Court can assert pendant jurisdiction as such claims arise from a nucleus of facts common to both the state law and ERISA claims. *Nishimoto v. Federman Bachrach & Assoc.*, 903 F.2d 709 (9th Cir. 1990).

3.     This Court is the proper venue for this action pursuant to 8 U.S.C. § 1392(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, because one or more of the Defendants conducts a substantial amount of business in this Judicial District, and pursuant to 29 U.S.C. §1132(e)(2) because it is the Judicial District in which the breach occurred.

4.     On June 13, 2018, Plaintiff and Defendant entered into a Tolling Agreement with respect to the claims which are the subject of this lawsuit.  That agreement terminates at the earlier of a) the filing of the instant action, or b) June 13, 2019.

Plaintiff alleges and as for its causes of action, avers as follows:

5.     BRISTOL SL HOLDINGS, INC. ("BRISTOL") is a corporation authorized to do and doing business in the City of Costa Mesa, County of Orange, State of California.  The principals of BRISTOL are the former owners and operators of the three healthcare provider entities described, below.  BRISTOL is pursuing this action

Complaint – BRISTOL HOLDINGS v. CIGNA

on behalf of itself and the creditors of the entity below who, on June 1, 2017, filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The bankruptcy filing was due, in part, to the failure of the Defendant herein to pay the claims which are the subject of this action.  A copy of the Order of the Bankruptcy Court for the Central District of California dated August 4, 2017 approving the asset sale and assignment to BRISTOL of the claims which are the subject of this lawsuit is attached hereto as **Exhibit A**.

6.     SURE HAVEN, INC. ( "SURE HAVEN" or "Plaintiff"), at all relevant times, was a corporation authorized to do and doing business in the City of Costa Mesa, County of Orange, State of California and was at all times herein mentioned doing business as a  residential substance abuse treatment facility and provided services which were or should have been covered by health insurance policies which Plaintiff is informed and believes and thereon alleges were provided, sponsored, supplied, underwritten, administered and/or implemented by Defendants and/or Defendants alter ego's or parent companies.  SURE HAVEN was duly licensed and accredited by the State of California and all local agencies and was nationally accredited by the Commission on Accreditation of Rehabilitation Facilities ("CARF").

7.     Upon admittance to one of Plaintiff's treatment facilities, all patients, including the patients whose claims are the subject of this lawsuit, assigned payment of their insurance benefits to Plaintiff and also appointed Plaintiff as their Authorized

Representative for ERISA and other claims.  These assignments and authorizations explicitly extend to "all judicial reviews under ERISA and any applicable federal or state laws."  A representative copy of this assignment form is attached as **Exhibit B**.

8.     Plaintiff is informed and believes and thereon alleges that Defendants CIGNA HEALTH AND LIFE INSURANCE COMPANY and CIGNA BEHAVIORAL HEALTH, INC. (Collectively, "CIGNA") are State of Connecticut corporations authorized to do and doing insurance business in the County of Orange, State of California.

9.     Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 10 are somehow related to and/or controlled by the named Defendant and are related entities that were somehow involved in the issuing of the plans/policies and/or the handling of the claims described herein.  The true names and capacities of the Defendants sued herein as DOES 1 through 10 are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the events herein referred to and caused the damages hereinafter alleged.

10.    Plaintiff is informed and believes and thereon alleges that each Defendant is and was at all times herein mentioned acting as the agent, employee and/or alter ego of each of the remaining Defendants and at all times acted within the scope and authority of said agency and/or employment.

11.   At all times herein mentioned, Plaintiff is informed and believes that the approximately 106 patients it treated whose claims are the basis for this lawsuit were insured for substance abuse treatment services pursuant to health insurance plans/policies that Plaintiff is informed and believes and thereon alleges were issued, underwritten and administered by Defendants and/or said Defendants' predecessor(s), assignor(s), agent(s), alter ego(s) or related entities, including the DOE Defendants herein. Defendants wrote the plans/policies, are in possession of same and are familiar with all terms and conditions. Plaintiff is informed and believes and thereon alleges that as to provisions applicable to the issues herein, the plans/policies have the same operative language.  The terms and conditions of these plans/policies are contained in summary plan descriptions (SPD) which are in the possession of Defendant.

12.   While the subject plans/policies were in effect, Plaintiff's patients and Defendant's insureds sought covered substance abuse treatment services with Plaintiff.  Plaintiff verified all benefits and obtained authorization for all treatment, as required and directed by Defendants.  In all cases Plaintiff was directly informed that the policies provided and Defendants would pay for treatment at the Usual, Customary and Reasonable ("UCR") rate.  Throughout the course of Plaintiff's prior dealings with CIGNA, the UCR had never been less than 70% of actual billed charges for the years that Plaintiff been providing services to CIGNA subscribers. Communications with representatives of Defendants included thousands of telephone

calls which were made to phone numbers provided by CIGNA. Identifying

information, notes, logs, recordings and/or transcripts of the calls (Plaintiff believes

these calls are recorded by CIGNA) and other information concerning the VOB calls

are known to and in the possession of CIGNA. Plaintiff also has voluminous records

detailing these communications with Defendant.  The information is confidential, and

HIPAA protected. Upon request by Defendants, Plaintiff can provide additional

information in a nonpublic, confidential manner or under seal in this Court, although

it is Plaintiff's belief that all relevant information is already in Defendants possession

and much of it has already been duplicatively provided by Plaintiff again within the

last year.

13.   Prior to the admittance of each CIGNA patient to a facility, Plaintiff contacted

Defendant at the number listed on each patient's insurance card to conduct a

Verification of Benefits ("VOB") call. On each VOB call, Plaintiff's representative

confirmed with agents of Defendant (including but not limited to Defendants' agents

Lauren, Honey, Lynn, David L., Earl and Selina (last names not provided)) whether

patient was eligible for benefits, the reimbursement rate at which Defendants would

pay out-of-network mental health and substance use disorder (SUD) services to

Plaintiff. Once verified, and in reliance upon Defendants' offer to reimburse the

Plaintiff for services rendered, Plaintiff would admit patients to the facility, provide

services (many patients received as many as 90 days of inpatient and other services),

timely submit bills to Defendant, and collect deductibles and co-insurance payments.

 14.    As this action involves unpaid claims for approximately **106 CIGNA patients**

and thousands of VOB and authorization calls regarding those patients, in the interest

of brevity, Plaintiff pleads the following facts with particularity as a representative

sampling of VOB calls for patients identified here only by their initials for

confidentiality:

 a) On 1/14/15 Defendant's agent David L stated to Plaintiff's representative

Francisco R that Patient WR was covered for out-of-network substance

abuse treatment and that CIGNA would reimburse provider at 70% of UCR

until Patient WR met his out-of-pocket maximum, thereafter CIGNA would

pay 100% of UCR. David L stated that the reference number for the VOB

was his name and the date.

 b) On 8/24/15 Defendant's agent Honey stated to Plaintiff's representative

that Patient MM was covered for out-of-network SUD services at a 60% of

usual customary and reasonable charges until patient's out-of-pocket

maximum was met, thereafter CIGNA would pay 100% of UCR. Honey

stated that the reference number for the VOB was her name and the date.

 c) On 9/6/15 Defendant's agent Angela stated to Plaintiff's representative

that Patient LB was covered for out-of-network SUD services at 50% of

UCR until the patient met his/her out-of-pocket maximum, thereafter CIGNA would pay 100% of UCR. Angela stated that the reference number for the VOB call was her name and the date.

d)  On 10/20/15 Defendant's agent Lauren stated to Plaintiff's representative Andy that Patient KL was covered for out-of-network SUD services at 65% of UCR until patient met his/her out-of-pocket maximum, thereafter CIGNA would pay 100% of UCR. Lauren stated that the reference number for the VOB call was her name and the date.

15.    Once admitted to a Plaintiff facility, while under the care of Plaintiff, Plaintiff's Utilization Review ("UR") team would routinely call CIGNA (at specific intervals for each patient as requested by CIGNA) to receive authorization to continue providing services to that patient.  Plaintiff's UR team member would call Defendant's Utilization Management ("UM") agents, timely submit any requested medical records or information, and receive pre-authorization and/or pre-certification to continue services. Defendants' agents would then issue authorization reference numbers which Plaintiff would later include on invoices to CIGNA. Defendants has records of each authorization call. Below is a representative sample of the authorization calls for the same patients whose VOB calls are described above.

a)  On 1/15/15, 1/20/15 and 1/26/15, CIGNA's UM agent stated to Plaintiff's UR team member that residential detoxification, residential SUD

treatment, and Partial Hospitalization Program ("PHP") treatment services were authorized for Patient WR, per authorization numbers 155679899, 155679899 and 155674828, respectively. On 1/28/15 and 2/5/15 CIGNA's UM agent stated to Plaintiff's UR team member that authorization was no longer required for Patient WR's continuing Intensive Outpatient Program ("IOP") treatment and that claims would be paid at the stated rate.

b)  On 8/27/15, 9/1/15, 9/8/15, 9/25/15, 10/12/15, 10/29/15, and 11/13/15, CIGNA's UM agent stated to Plaintiff's UR team member that for Patient MM, no pre-authorization was required for PHP or IOP, and that claims would be paid at the agreed rate.

c)  On 9/12/15, 9/15/15, 9/19/15 and 9/30/15, CIGNA's UM agent stated to Plaintiff's UR team member that detoxification, residential SUD treatment, PHP and IOP was authorized for Patient LB, and gave the authorization numbers 156009288, 155990321, 155990321, 155986747, respectively, and that claims would be paid at the agreed rate.

d)  On 10/25/15, 10/28/15, 11/5/15, 11/13/15, 11/17/15, 11/24/15, 12/1/15 and 12/24/15, CIGNA's UM agent stated to Plaintiff's UR team member that detoxification, residential SUD treatment, and PHP treatment services were authorized for Patient KL, per authorization numbers 156130753, 156097895, 156083394, 156083394, 156052448, 156052448, 156052448

and 156046149, respectively. On 1/18/16 CIGNA agents stated that no authorization was required for IOP services and that claims would be paid at the agreed rate.

16.    The Defendants breached their agreements with Plaintiff and/or committed other wrongful acts and omissions by failing to pay Plaintiff the represented and agreed upon UCR rate and, instead, refused to pay Plaintiff anything at all for the services Plaintiff had in good faith provided to the Defendant's insureds.  Moreover, after treatment was provided and claims were submitted, Defendants used the common guise of an "audit" as a justification for nonpayment when there was no reasonable basis for an audit and/or the results of the audit established the Defendants responsibility for payment of the claims. At one point, as an effort to distract from its indebtedness to Plaintiff for almost $9 million dollars, Defendant attempted to claim that it had partially overpaid some earlier benefits unrelated to the patients whose claims are the subject of this lawsuit for whom Defendant has paid no benefits.  Upon information and belief, these were and are tactics used by CIGNA at the time to avoid paying out of network behavioral benefits throughout Southern California and elsewhere.  <u>Plaintiff was still actively appealing all of the non-payments which are the subject of this lawsuit until May of 2017 and it did not become clear to Plaintiff that it would not be paid by Defendant until May of 2017, shortly before the Plaintiff was forced to file its petition for bankruptcy.</u> As a result of the facts and conduct alleged

herein, an unconscionable injury would continue to result to Plaintiff if Defendants are not required to pay the claims they authorized, and Defendants are equitably estopped from denying the agreement/obligation to pay those amounts.

17.    Attached as **Exhibit C** is a redacted schedule of authorized yet still owed amounts which Defendant promised to pay.  The unpaid claims owed to date total not less than **$8,608,468.26**.  The unedited version of this schedule contains personal health information which is confidential, and HIPAA protected. Upon request by Defendants, Plaintiff can provide additional information in a nonpublic, confidential manner or under seal in this Court.

**FIRST CAUSE OF ACTION**

**(Claim for Benefits under 29 U.S.C. § 1132(a)(1)(B))**

18.    Plaintiff re-alleges and incorporates the factual allegations above, as though such allegations were fully stated herein.

19.    This cause is a claim to recover benefits due to Plaintiff under the terms of those CIGNA plans which were governed by ERISA, to enforce rights under the terms of the plans, and/or to clarify rights to future benefits under the terms of the plans, brought pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B).  As a third-party administrator of ERISA plans, Defendant is in possession of information indicating which plans under its control are subject to ERISA.  Plaintiff believes that most of the claims at issue in this case are subject to ERISA.

20.    Plaintiff has standing to pursue claims under ERISA as the Authorized

Representative and as the assignee of benefits for its patients who were subscribers to

CIGNA ERISA plans.  As the assignee, Plaintiff is entitled to reimbursement from

Defendant for the approved services it provided to patients with CIGNA plans.

21.    Defendant has breached the terms of the ERISA plans by refusing to pay out-of-

network behavioral health claims as required by the plans and promised by CIGNA.

These breaches include the acts alleged in paragraph 16 above, refusing to pay claims

at all, refusing to pay the UCR and/or reasonable and customary rates, or to pay

prevailing fees or recognized charges or such other rates as provided might have been

provided in the plans. Defendants breached its ERISA plans by making claim

determinations (i.e. decisions <u>not</u> to pay - effectively denials or Adverse Benefit

Determinations as that term is defined under ERISA) that had no basis in the terms of

the plans, without valid evidence or information to substantiate such determination,

and in an unreasonable and arbitrary manner.

22.    By doing so, Defendants not only violated their legal duties, they also

wrongfully denied benefits to Plaintiff.

23.    Plaintiffs are entitled to recover unpaid (and any underpaid) benefits from

Defendants. To date, these benefits total not less than **$8,608,468.26**.

## SECOND CAUSE OF ACTION

### (Breach of Contract- Pre-Admission Oral Agreement)

24.   Plaintiff re-alleges and incorporates the factual allegations above, as though such allegations were fully stated herein.

25.   Based on the facts alleged in paragraphs 13-16 above, within two years prior to the date of the tolling agreement, Plaintiff and Defendants entered into agreements whereby Plaintiff would provide substance abuse treatment to the insureds of Defendants referred to herein at the UCR rate. Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of said contracts/agreements except, if applicable, those that have been excused, waived or are otherwise inapplicable.

26.   Defendants breached the agreements alleged at paragraphs 13-15, by way of example and without limitation, engaging in the conduct alleged in paragraph 16.

27.   As a proximate and direct result of the Defendants' breach of contract, Plaintiff has suffered, and will continue to suffer in the future, damages subject to proof at the time of trial.

## THIRD CAUSE OF ACTION

### (Intentional Misrepresentation)

28.   Plaintiff re-alleges and incorporates the factual allegations above, as though such allegations were fully stated herein.

29.     Within two years prior to the date of the Tolling Agreement, Plaintiff and Defendants entered into negotiations for the treatment and services of the patients as alleged herein.  In connection with these negotiations, said Defendants, and each of them, with the intent to deceive and defraud Plaintiff, falsely and fraudulently made representations to Plaintiff, by way of example and without limitation, alleged in paragraphs 13-16 hereinabove.

30.     In truth and in fact, these representations were false, were known at the time by said Defendants, and each of them, to be false, and were made with the intent to induce Plaintiff to act in reliance thereon as alleged herein.

31.     Plaintiff, reasonably believing and relying upon said representations made by the Defendants, who held themselves out to have special knowledge and expertise, provided the treatment as alleged herein.

32.     Within two years prior to the date of the Tolling Agreement, Plaintiff eventually discovered that the representations made by said Defendants, and each of them, were in fact false as alleged in paragraph 16 herein.  Defendant sought to conceal the fact the representations were false by inferring repeatedly that the claims might still be paid.

33.     As a direct and proximate result of the fraud and deceit of said Defendants, and each of them, Plaintiff has suffered damages as alleged herein, all of which will be subject to proof at the time of trial.

34.    The acts and omissions of the Defendants, and each of them, as alleged herein above, were performed maliciously, oppressively and fraudulently, with the intent to deceive and defraud Plaintiff, thereby entitling Plaintiff to exemplary damages in an amount sufficient to punish and deter the Defendants, and each of them. The conduct described herein was approved, authorized and/or ratified by officers, directors and/or managing agents of the named Defendants.

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

35.    Plaintiff re-alleges and incorporates the factual allegations above, as though such allegations were fully stated herein.

36.    Defendants had a duty to provide accurate/correct information regarding benefits when contacted by providers and it was and is foreseeable to Defendants that providers would rely on the information given to them and that providers would be damaged if they were provided with incorrect information. When Defendants made said representations to Plaintiff as alleged herein, they had no sufficient or reasonable grounds for believing them to be true, in that Defendants, and each of them, did not have accurate information and data, nor any information and data, concerning the accuracy of the representations, and understood without such information and data, they could not accurately make the representations to Plaintiff as alleged herein. Plaintiff is informed and believes and thereon alleges that at the time of the representations made by Defendants as alleged herein above, and thereafter,

Defendants, and each of them, concealed and suppressed from Plaintiff their lack of information and data and the consequent inability to accurately make the representations referred to herein above.  Defendant also sought to conceal the fact the representations were false by inferring repeatedly that the claims might still be paid.

## FIFTH CAUSE OF ACTION
### (Fraudulent Concealment)

37.   Plaintiff re-alleges and incorporates the factual allegations above, as though such allegations were fully stated herein.

38.   Plaintiff is informed and believes and based thereon alleges that the Defendants, and each of them, actively concealed material facts regarding the coverages and/or rates provided in the plans/policies at issue herein from Plaintiff by way of example and without limitation, among other things, as alleged at paragraphs 13-16 herein. This information was not discoverable or known to Plaintiff and was known only to Defendants.

39.   As a direct and proximate result of the fraudulent concealment by Defendants, and each of them, Plaintiff acted as alleged herein and sustained damages as alleged herein.

## SIXTH CAUSE OF ACTION
### (Negligent Failure to Disclose)

40.   Plaintiff re-alleges and incorporates the factual allegations above, as though such allegations were fully stated herein.

Complaint – BRISTOL HOLDINGS v. CIGNA

41.   Defendants, and each of them, negligently failed to disclose the facts set forth in paragraphs  13-15 herein, although they knew, or in the exercise of reasonable diligence, should have known of the inaccuracy of the representations as alleged herein.

42.   Had Plaintiff known the undisclosed facts, Plaintiff would have declined to admit the patients for treatment.

43.   As a direct and proximate result of the Defendants negligent failure to disclose information, and the facts herein alleged, Plaintiff has suffered damages as alleged herein.

**SEVENTH CAUSE OF ACTION**
**(Promissory Estoppel)**

44.   Plaintiff re-alleges and incorporates the factual allegations above, as though such allegations were fully stated herein.

45.   As alleged herein at paragraphs 13-16, Defendants represented to Plaintiff that they would pay for substance abuse treatment at the UCR rate.  Instead, Defendant paid nothing.  Plaintiff is informed and believes and thereon alleges that Defendants made these representations with the intention that Plaintiff would rely on the representations and knowing that Plaintiff had no knowledge of the falsity of the representations.

46.   Plaintiff relied upon Defendants' representations and admitted the Defendants insureds for treatment based thereon. Had Plaintiff known of the falsity of the

representations it would not have done so. Accordingly, Defendants are estopped from asserting any payment amount contrary to the representations made by Defendants and Plaintiff is entitled to damages in an amount according to proof together with interest at the legal rate, and any other appropriate relief.

47.    The acts and omissions of the Defendants, and each of them, as alleged herein above, were performed maliciously, oppressively and fraudulently, with the intent to deceive and defraud Plaintiff, thereby entitling Plaintiff to exemplary damages in an amount sufficient to punish and deter the Defendants, and each of them. The conduct described herein was approved, authorized and/or ratified by officers, directors and/or managing agents of the named Defendants.

## EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

48.    Plaintiff re-alleges and incorporates the factual allegations above, as though such allegations were fully stated herein.

49.    As alleged herein Defendants communicated to Plaintiff that the insureds/patients whose claims are at issue herein were insured and that the claims would be paid at the UCR rate. Once Defendants made representations that went beyond/outside the terms of the applicable plans, as alleged herein, they were no longer responding to an inquiry, but rather were making a request for the services to be performed by Plaintiff. These communications and the conduct of the Defendants

alleged herein constitute a request by Defendants that Plaintiff provide the outpatient substance abuse treatment services alleged herein.

50.    Plaintiff provided the substance abuse treatment services to the patients/insureds identified herein in reasonable reliance upon the representations and conduct of the Defendants.

51.    Plaintiff providing the substance abuse treatment services in reliance on the representations/communications/agreements by Defendants was not gratuitous.

52.    The amounts that Plaintiff built for the substance abuse treatment services was and is the reasonable value of those services and was and is the UCR rate for those services. Nevertheless, Defendants have refused to pay the UCR rate they represented would be paid, and instead have refused, and continue to refuse, to pay anything.

53.    Under the circumstances, Defendants cannot conscientiously refuse to pay the for the services provided by Plaintiff to patients/insureds identified herein and Defendants should be required to pay the UCR rate for the substance abuse treatment services provided by Plaintiff to the insureds of Defendants. Defendants are essentially getting the de facto benefit of network adequacy by using a non-network provider and then making no payments after claims at issue herein were submitted by the Defendants. Plaintiff is located within an important service area for Defendants and Defendants get the benefit of providing plans that allow employers/employees to go out of network and utilize the services of Plaintiffs which is uniquely and

conveniently located in their area, without having to pay UCR or a fair and reasonable amount.

## NINTH CAUSE OF ACTION

### (Violation of Business and Professions Code section 17200)

54.  Plaintiff re-alleges and incorporates the factual allegations above, as though such allegations were fully stated herein.

55.  At all times relevant herein, California Business and Professions Code section 17200 et seq. was in full force and effect. The Defendants conduct of, by way of example and without limitation, providing false and misleading information regarding the payment amount for substance abuse treatment and then after treatment is completed denying claims and/or refusing to pay claims, and by using the audit process as a weapon or justification for not paying claims (essentially a de facto denial) is putting substance abuse treatment providers at risk of financial failure, or in some cases out of business. In this case the nonpayment of claims contributed to the bankruptcy of the Plaintiff entities which had to stop providing treatment services.

56.  Plaintiff has been and continues to be directly damaged by the conduct of the Defendants and there is a causal link between the Defendants continuing conduct in violation of Business and Professions Code section 17200 alleged herein and the monetary damages suffered by Plaintiff. Additionally, Plaintiff's legal remedies are inadequate in that available legal remedies do not compensate Plaintiff for the time and expense of collection efforts to reprocess, resubmit appeal and/or negotiate

payment of claims. Moreover, the Defendants continuing course of conduct put Plaintiff and other non-network substance abuse providers out of business due to increases costs and lack of reasonable income. <u>When Plaintiff went out of business, a reputable substance abuse provider serving an important geographic region and patient demographic was no longer available to individuals requiring substance abuse treatment, including Defendant's insureds. At the time Plaintiff went out of business, it provided much needed access to treatment beds for individuals suffering from alcohol and drug addiction and employed hundreds of workers. Defendant committed these acts in the face of the current opioid epidemic, which is the largest public health crisis the United States has faced in generations.</u>

57. The Defendants continue to engage in the conduct complained of herein that offend established public policy and which is unethical, oppressive, unscrupulous, unlawful, unfair, fraudulent and substantially injurious to the public at large in that, by way of example and without limitation, those battling substance abuse walk a fine line between sobriety and relapse are placed in a position where they are financially responsible for considerable sums of money for treatment received, and providers of substance abuse treatment are placed in a position where they may be required to pursue former patients for payment of substantial funds that were promised to be paid by Defendants. This places former patients at risk of relapse, potentially puts substance abuse treatment facilities at financial risk.

58.    The Defendants conduct of misrepresenting the amount it will pay for substance abuse treatment and then not paying and/or aggressively using the audit process to unjustifiably delay or refuse payment, is unlawful and unfair and constitutes fraud against Plaintiff since Plaintiff makes admission decisions based on information that is provided by and/or agreements entered into with Defendants when insurance benefits and payment amounts are verified and confirmed.

59.    Plaintiff seeks compensation for the damages arising from the conduct and activities of Defendants in violation of Business and Professions Code section 17200 as alleged herein, including but not limited to disgorgement of illegal profits and/or ill-gotten financial gains and restitutionary damages, in an amount according to proof at the time of trial and injunctive relief prohibiting Defendants from engaging in the conduct alleged herein. Plaintiff is informed and believes and thereon alleges that Defendants conduct is unfair, fraudulent and in violation of California law. Plaintiff is further informed and believes that this course of conduct by Defendants , results in Defendants having a superior bargaining position with substance abuse providers who may be driven by the financial necessity created by nonpayment, delayed payment and/or severe underpayment of claims to either attempt to go in network (assuming that would even be an option) or face the prospect of going out of business, thereby reducing the number of reputable, qualified substance abuse providers.

Complaint – BRISTOL HOLDINGS v. CIGNA

60.    This pattern of misconduct not only affected Plaintiff, but it also has implications for patients of Plaintiff who potentially face large balance bills, and for other substance abuse providers who are facing the same problems/issues raised by Plaintiff herein, but who do not have the resources or ability to fight legal battles with insurance companies and their top-level big law firms and attorneys. This also impacts the general public in that it substantially reduces available treatment options for the large number of people who are battling substance abuse and want to get help. An injunction prohibiting Defendants from engaging in this misconduct, including but not limited to misrepresenting benefits, not paying claims, and indiscriminately delaying and/or denying claims by demanding post treatment/post claim submittal "audits" will is appropriate to ensure that parity for mental health/substance abuse treatment is maintained and that there is adequate access to such treatment. Because of the Defendants unfair, unlawful and fraudulent business practice described herein, Plaintiff is entitled to reasonable attorney's fees in an amount to be determined according to proof at the time of trial as this action potentially creates a substantial benefit to substance abuse treatment providers in general and individuals who are struggling with substance abuse and need available treatment options.

## TENTH CAUSE OF ACTION

### (Breach of Contract- Pre-Admission Implied in Fact Contract)

61.    Plaintiff re-alleges and incorporates the factual allegations above, as though such allegations were fully stated herein.

- 24 -

62.   Based on the facts alleged in paragraphs 13-16 above, implied in fact contracts exist whereby Plaintiff would provide substance abuse treatment to the insureds of Defendants referred to above herein at the UCR rate. Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of said contracts/agreements except, if applicable, those that have been excused, waived or are otherwise inapplicable.

63.   Defendants breached the implied in fact contracts, by way of example and without limitation, engaging in the conduct alleged in paragraph 16.

64.   As a proximate and direct result of the Defendants' breach of contract, Plaintiff has suffered, and will continue to suffer in the future, damages subject to proof at the time of trial.

## ELEVENTH CAUSE OF ACTION

### (Breach of Written Insurance Contracts based on assignment)

68.   Plaintiff re-alleges and incorporates herein by reference the factual allegations above, as though such allegations were fully stated herein. This cause of action is based on valid assignments and does not include any claims under ERISA plans.

69.   Plaintiffs patients and assignors and Defendants insureds entered into written insurance contracts whereby Defendants would provide coverage and pay for substance abuse treatment to the insureds of Defendants based on an allowed amount specified by the insurance policies. Defendants drafted the insurance policies, are in possession of the policies and are familiar with all of the terms and conditions of the

insurance policies. The insurance policies provided that Defendants will pay for covered services based on an appropriate allowed amount, as defined in the polices and paid in numerous previous claims.  Plaintiffs patients/Defendants' insureds have performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of said contracts/agreements except, if applicable, those that have been excused, waived or are otherwise inapplicable.

70.   Defendants breached the insurance contracts by engaging in the conduct alleged herein, and by way of example and without limitation, not paying the appropriate allowed amount under the insurance policies. By way of illustration, Defendants paid nothing on the claims at issue herein, Plaintiff is informed and believes and thereon alleges that Defendants are not following the procedures or methodology under the insurance policies for determining the allowed amounts and paying claims, but rather are refusing to pay claims, and engaging in other misconduct as alleged herein.

71.   As a proximate and direct result of the Defendants' breach of contract, Plaintiff and/or Plaintiffs assignors/patients and Defendants insureds have suffered, and will continue to suffer in the future, damages subject to proof at the time of trial.

### TWELFTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

72.   Plaintiff re-alleges and incorporates herein by reference the factual allegations above, as though such allegations were fully stated herein. This cause of action is based on valid assignments and does not include any claims under ERISA plans. The

only extra contractual damage claim Plaintiff is asserting in this cause of action is for attorneys pursuant to Brandt v. Superior Court.

73.   The Defendants, by operation of law owed its insureds/Plaintiffs patients, an implied duty by Defendants to act at all times in good faith and to deal fairly in connection with the subject health insurance policies.  The Defendants' implied by law duties include, but are not limited to, the duty to act fairly, reasonably and promptly in dealing with its insureds or its insureds representatives, adjusting claims, investigating claims handling and paying all claims that are covered under the subject policies.

74.   The Defendants tortiously breached their implied in law duty of good faith and fair dealing owed to Plaintiffs patients in the following respects: By engaging in the conduct alleged hereinabove; Not attempting in good faith to effect prompt, fair and equitable payment of claims in which the Defendants' obligations were reasonably clear; Misrepresenting pertinent policy provisions in relation to the coverage and facts in issue in relation to the claims at issue herein; Failing to provide a reasonable basis relied upon in the subject contract of insurance, in relation to the applicable facts, for the handling of the claims at issue herein; By other wrongful acts and conduct which will be shown according to proof at the time of trial.

75.   Plaintiff is informed and believes and thereon alleges that said acts, conduct and/or omissions of the Defendants mislead and deceived Plaintiff and/or Plaintiffs patients and were done in an effort to deprive Plaintiffs patients of their legal rights

under the policies, and as a direct and proximate result of the wrongful conduct of the Defendants, Plaintiff has suffered, and will continue to suffer in the future, the loss of policy benefits due under said contracts of insurance, plus interest, for a total amount to be shown at the time of trial.

76.   As a direct and proximate result of the wrongful conduct of the Defendants, in particular, the bad faith refusal to honor contractual obligations, the Plaintiff has been forced to retain attorneys and incur substantial costs and expenses to obtain policy benefits from said Defendants, for which Plaintiff is entitled to be compensated under California law.

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

1.    For general, special, restitutionary and compensatory damages not less than $8,608,468.26 according to proof.

2.    For prejudgment interest on amounts benefits wrongfully withheld.

3.    On the First cause of action, recovery of benefits, declaratory and injunctive relief and attorney's fees pursuant to 29 U.S.C. § 1132(g).

4.    On the Ninth and Twelfth causes of action, attorney's fees according to proof.

5.    On the Third, Fifth and Sixth causes of action, punitive damages according to proof.

6.      On the Ninth cause of action, for an injunction prohibiting Defendants from the conduct alleged herein.

7.      For costs and such other and further relief as the Court may deem appropriate.

Dated:  April 15, 2019                          NAPOLI SHKOLNIK PLLC


                                                By: */s/Jennifer R. Liakos*
                                                JENNIFER R. LIAKOS
                                                *Attorneys for Plaintiff*
                                                Bristol SL Holdings, Inc.,

## JURY DEMAND

Plaintiff hereby demands a jury for all issues properly giving rise to the right to trial by jury.

Dated: April 15, 2019                    NAPOLI SHKOLNIK PLLC


By: */s/Jennifer R. Liakos*
JENNIFER R. LIAKOS
*Attorneys for Plaintiff*
Bristol SL Holdings, Inc.,