MATTHEW M. LAVIN, ESQ. (*pro hac vice*)
JENNIFER A. LIAKOS, ESQ. (CA SBN 207487)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

JOHN W. TOWER, ESQ. SBN 106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA  92024
(760) 436-5589 / Fax (760) 479-0570

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., a California corporation, in its capacity as the assignee for SURE HAVEN, INC., a California corporation<br><br>Plaintiff,<br><br>vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, a Connecticut corporation; CIGNA BEHAVIORAL HEALTH, INC., a Connecticut corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | **Case No.: 8:19-cv-00709-AG-ADS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF BRISTOL SL HOLDINGS INC. IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date:   July 22, 2019<br>Time:   10:00 a.m.<br>Judge:  Hon. Andrew J. Guilford<br>Dept:   Courtroom 10D |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................iii

I.  INTRODUCTORY STATEMENT.............................................................................. 1

II.  STATEMENT OF RELEVANT FACTS ................................................................... 1

III.  LEGAL STANDARD................................................................................................3

IV.  THE COMPLAINT STATES A VALID CLAIM FOR ERISA BENEFITS.........3

V.  THE FRAUD-BASED CLAIMS ARE PROPERLY PLEAD ................................9

VI.  THE NEGLIGENT NONDISCLOSURE CLAIM IS APPROPRIATE...............11

VII.  THE PROMISSORY ESTOPPEL CLAIM IS LEGALLY SUFFICIENT .........11

VIII.  THE CLAIM FOR UNFAIR BUSINESS PRACTICES IS VALID. ................12

IX. THE BREACH OF CONTRACT CLAIMS STATE VALID CLAIMS. ..............15

X.  THE BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR
DEALING CLAIM IS VALID........................................................................................18

XI.  THE QUANTUM MERUIT CLAIM IS VALID..................................................19

XII.  THE STATE LAW CLAIMS ARE NOT PREEMPTED BY ERISA ...............20

XIII.  PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.........................23

XIV.   CONCLUSION...................................................................................................23

- ii -

_____
Points and Authorities in Opposition to Motion to Dismiss – BRISTOL v. CIGNA Case No. 8:19-cv-00709-AG-ADS

1
2

## **TABLE OF AUTHORITIES**

**Cases**

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) ...............................21

*Allergan Inc. v. Athena Cosmetics Inc.* (Fed. Cir 2011) 640 F3d. 1377 .....................14

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015) ..................................................................6, 8

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal. 4th 993, 1002 (2009) .............................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)...............................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)...................................3

*Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045 (9th Cir.1999) ..................................................................22

*Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999) ..................................................................5, 20

*Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) ....................................9

*Brandt v. Superior Court* (1985) 37 Cal. 3d 813........................................19

*Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008) ..................................................................5, 6, 20

*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal 4th 163......................15

*DaVita, Inc. v. Amy's Kitchen, Inc.*, No. 18-CV-06975-JST, 2019 WL 1509186, at *4 (N.D. Cal. Apr. 5, 2019)..................................................................6

*Earhart v. William Low Co.*, 25 Cal. 3d 503, 510 (1979) ...........................................20

*Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 947 (E.D. Tex. 2011)..................................................................8

*Enloe Med. Ctr. v. Principal Life Ins. Co.*, No. CIV S-10-2227 KJM-DAD, 2011 WL 6396517 at *6 (E.D. Cal. Dec. 20, 2011)...........................................12, 16

*Fleet v. Bank of Am N.A.*, (2014) 229 Cal App 4th 1403 ...........................................12

- iii -

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2011 WL 2748724 (N.D. Cal. July 13, 2011) ............................................................... 6

*Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) ........................................... 20

*Goodwest Rubber Corp. v. Munoz* (1985) 170 Cal. App. 3d 919 ................... 17

*Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1059 (9th Cir. 2018) ............ 21, 22

*Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453, 458 (2004) .................... 19

*In re Managed Care Litigation*, 2009 WL 742678 at *3 (S.D.Fla. Mar.20, 2009) ........ 8

*Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000). 12

*Love v. Fire Insurance Exchange* (1990) 221 Cal.App.3d 1136, 1151 ...................... 19

*Maglica v. Maglica*, 66 Cal. App. 4th 442, 449 (1998), *as modified on denial of reh'g*, (Sept. 28, 1998) ........................................................................................ 20

*Manzarek v. St. Paul Fire &Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ..... 3

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009) 22

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 948 (9th Cir. 2009) ................................................................................................................. 22

*McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (2004) ............................ 20

*McKell v. Washington Mut. Inc.* (2006) 142 Cal. App. 4th 1457 ................. 13

*Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009) .......... 13

*Murphy v. California Physicians Serv.*, 213 F. Supp. 3d 1238, 1246 (N.D. Cal. 2016) ................................................................................................................. 21

*Orthopedic Specialists of Southern California v. CALPERS* 228 Cal.App.4th 644 (2014) .................................................................................................... 16, 17

*Pacific Bay Recovery, Inc. v. California Physicians Services, Inc.* (2017) 12 Cal.App. 5th 200 ............................................................................................... 16, 17

*Port Med. Wellness, Inc. v. Connecticut Gen. Life Ins. Co.*, 233 Cal. Rptr. 3d 830, 848–49 (Ct. App. 2018) ................................................................................ 5, 21

*Regents of the Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006) ...................................................................................... 12, 16

Points and Authorities in Opposition to Motion to Dismiss – BRISTOL v. CIGNA Case No. 8:19-cv-00709-AG-ADS

*Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) ................................9

*Simi Surgical Ctr., Inc v. Connecticut Gen. Life Ins. Co.*, 2018 WL 6332285 (C.D. Cal. Jan. 4, 2018)........................................................................................6

*SocialApps, LLC v. Zynga, Inc.*, 2012 WL 381216, at *3 (N.D. Cal. Feb. 6, 2012)....18

*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 CA4th 821 .10

*The Meadows vs. Employers Health Ins.*, 47 F.3d 1006, 1010 (9th Cir. 1995) ...........22

*Vess v.Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003).........................11

*Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969) ..............................12

**Statutes**

29 U.S.C. § 1132(a)(1)(B) ......................................................................3, 5, 6, 21

Business and Professions Code §§ 17200, *et seq.*......................................................12

California Civil Code section 1611 ...............................................................................17

California Health & Safety Code section 1371.8 .........................................................13

California Health & Safety Code section 1374.72 .......................................................13

California Insurance Code section 10144.5..................................................................13

**Other Authorities**

*See* 29 C.F.R. § 2560.503-1(l)(i) (2018)........................................................................9

**Rules**

Fed R. Civ. P. 8(a) ........................................................................................................3

Fed. R. Civ. P. 12(b)(6) ................................................................................................3

Fed.R. Civ. P. 8(d) .....................................................................................................18

Federal Rule of Civil Procedure 9(b)............................................................................9

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)...............23

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)..................................................23

Rule 15(a)....................................................................................................................23

# I.  INTRODUCTORY STATEMENT.

This is a collection action for unpaid insurance benefits.  The claims at issue have not been denied. As shown by the Tolling Agreement referenced in the Complaint at paragraph 4, the Parties have been attempting to resolve this matter themselves for a year. These efforts have been unsuccessful, necessitating this suit.

Plaintiff, BRISTOL SL HOLDINGS, INC. ("BRISTOL") is the successor in interest to a nationally accredited substance abuse treatment center, SURE HAVEN, INC. ("SURE HAVEN"), that filed for Chapter 11 bankruptcy protection in 2017. SURE HAVEN was part of a network that oversaw over 320 patient beds and employed hundreds of workers. That network closed due to collection issues with insurance companies including Defendant, CIGNA HEALTH AND LIFE INSURANCE COMPANY, CIGNA BEHAVIORAL HEALTH, INC., and DOES 1 through 10, inclusive ("CIGNA").

In the midst of a national public health emergency, the opioid epidemic, CIGNA has stopped paying behavioral health and substance abuse treatment claims, effectively running providers out of business at a time when they are desperately needed.

# II.  STATEMENT OF RELEVANT FACTS

This lawsuit is for CIGNA's nonpayment of inpatient residential and outpatient substance abuse treatment services provided by SURE HAVEN, INC. ("SURE HAVEN"). These services were approved and authorized by CIGNA. Following SURE HAVEN's bankruptcy, BRISTOL acquired the right to bring SURE HAVEN's claims and brings this action for the benefit of the creditors of SURE HAVEN's estate.

It is well documented that the services provided by SURE HAVEN were authorized by CIGNA. Prior to accepting patients for treatment, SURE HAVEN undertook a rigorous intake procedure that included verifying patients' insurance coverage and determining what CIGNA's rate of payment *prior to admitting* an individual for treatment. SURE HAVEN, as an out-of-network provider, relied on this

- 1 -

information to make admission determinations. Without CIGNA's assurances Plaintiff would not have admitted any CIGNA patients for treatment.

In these pre-admission conversations and in frequent utilization review and/or service authorization calls, CIGNA specified the number of days of treatment covered by its policy and the stated rate of payment. The stated rate was consistently a specific percentage of the usual, customary and reasonable rate ("UCR"). This is often referred to as the "allowed amount." In California, the Healthcare.gov website defines UCR as "[t] he amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service."

Despite this thorough process, CIGNA did not pay SURE HAVEN's claims even though up until this time and for years prior, SURE HAVEN had a regular and consistent course of dealing with CIGNA where they paid a rate equal to approximately 70% of the fully billed amount as the correct percentage of UCR. SURE HAVEN relied upon all of this in making patient admittance and other business decisions.

Since the effective date of the Tolling Agreement in June 2018, Plaintiff has provided Defendant with voluminous amounts of records detailing the claims at issue here and the services provided for each claim are identified, again, in Exhibit C to Plaintiffs' Complaint. Yet, Cigna, a highly sophisticated corporation responsible for maintaining health care information to tens of millions of individuals, would have the Court believe that it has no understanding or record of millions of dollars in claims submitted to it by SURE HAVEN. Exhibit C lists every single claim at issue and uses standard industry terms in identifying and specifying the claims at issue.

Plaintiff's causes of action are brought on its own behalf under applicable and well-established state law and common law theories. Additional causes of action (1:ERISA, 11: Breach of Written Contract, and 12: Bad Faith, brought as an assignee of patients' benefits are pleadings in the alternative as permitted by Fed. R. Civ. P. 8(d). Under each theory, Plaintiff is entitled to, at a minimum, full reimbursement for the claims submitted to but never paid by CIGNA.

- 2 -

Plaintiff has properly plead and supported each of the claims asserted in the Complaint and the state law claims asserted by Plaintiff are not preempted by ERISA. As such, Defendant's motion should be denied.

### III.  LEGAL STANDARD

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a). A complaint that fails to meet this standard may be dismissed under Rule 12(b)(6). Plaintiffs are required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire &Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). All of these requirements are met.

### IV.  THE COMPLAINT STATES A VALID CLAIM FOR ERISA BENEFITS

Plaintiff's Complaint states a valid claim for benefits under 29 U.S.C. § 1132(a)(1)(B) (Plaintiff's ERISA Claim). The Defendants' Fed. R. Civ. P. 12(b)(6) argument for dismissal of this claim lacks merit and sufficient legal support.

Defendants' first argument, that "Bristol fails to allege the existence of plans that govern the patients at issue or any of the terms of those purported plans" (Def. Mot. Ln. 16-17) is untrue.

Defendants' second argument, that "Bristol also fails to allege compliance with these alleged ERISA plans, including without limitation, exhaustion of administrative remedies" (Def. Mot. Ln. 17-19) again misreads the complaint, misapplies the applicable law, and lacks merit.

Plaintiff's Complaint asserts that "most of the claims at issue are subject to ERISA." (¶19) Most employer group health plans in the United States are self-funded and therefore subject to ERISA. According to the Department of Labor, during the plan years relevant here, there were "2.2 million ERISA-covered health plans covering approximately 136 million people.[1]" The Henry J. Kaiser Foundation, a leading authority on the subject, has found that for the applicable years, 61% of all persons covered by commercial health insurance were members of self-funded, or ERISA covered, plans.[2] Therefore, that many, if not most, of the plans at issue here are ERISA plans. The findings of these reports are commonly accepted facts within the healthcare industry and well understood by issuers of ERISA plans like CIGNA.

SURE HAVEN, as a healthcare provider, was not a CIGNA plan member and not in possession of individual health plans of its patients. Instead, it verified the existence of and received confirmation for the relevant plan terms for patients from CIGNA through VOB calls and routine service authorizations. SURE HAVEN was not privy to the specific language contained in those plans, nor was it expected to be. As such, BRISTOL cannot say with absolute certainty which patients' plans are subject to ERISA; however, CIGNA, , as the issuer and administrator of the plans, has this knowledge and has never shared any of this information with BRISTOL.

CIGNA also fundamentally misconstrues the civil enforcement provision of ERISA. ERISA's civil enforcement provision provides that a civil action may be brought "by a participant or beneficiary" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B)

---

[1] U.S. Dept. of Labor, *Annual Report to Congress on Self-Insured Group Health Plans* (2018)

[2] Henry J. Kaiser Family Foundation, *2016 Employer Health Benefits Survey*, kff.org (Sep. 14, 2016) https://www.kff.org/report-section/ehbs-2016-section-ten-plan-funding/

- 4 -

Plaintiff's Complaint alleges, "[u]pon admittance to one of Plaintiff's treatment facilities, all patients, including *the patients whose claims are the subject of this lawsuit, assigned payment of their insurance benefits to Plaintiff and also appointed Plaintiff as their Authorized Representative for ERISA and other claims.*" (Compl. ¶7, emphasis added). Further, all of the claims at issue in the present Complaint are those for which Defendant "*refused to pay Plaintiff anything at all* for the services Plaintiff had in good faith provided to the Defendant's insureds." (Compl ¶ 7, emphasis added). Every claim at issue in the present suit is one where the Plaintiff received an assignment of benefits and where benefits were denied *in toto*. This gives rise both to a cause of action under ERISA as well as an independent, state causes of action. *See, for example, Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999) ("we find no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan."); *Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008) ("where a third party medical provider sues an ERISA plan based on contractual obligations arising directly between the provider and the ERISA plan (or for misrepresentations of coverage made by the ERISA plan to the provider), no ERISA-governed relationship is implicated and the claim is not preempted"); *Port Med. Wellness, Inc. v. Connecticut Gen. Life Ins. Co.*, 233 Cal. Rptr. 3d 830, 848–49 (Ct. App. 2018) ("where a plan assures a provider that a proposed treatment is covered under the plan but later determines it is not covered, the provider may sue based upon the plan's independent promise to the provider to pay for the services rendered.")

As to this first cause of action, Plaintiff seeks only to enforce participants' rights under ERISA, 29 U.S.C. § 1132(a)(1)(B) as the assignee of the insureds. It is well-established in this Circuit that a Provider may assert a derivative ERISA claim as an assignee. *See DaVita, Inc. v. Amy's Kitchen, Inc.*, No. 18-CV-06975-JST, 2019 WL 1509186, at *4 (N.D. Cal. Apr. 5, 2019) ("Under the civil enforcement provisions of

ERISA, a valid assignment confers standing on the assignee to sue in the place of the assignor.) *Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008) ("St. Mary's could have brought an ERISA claim derivatively as an assignee"). The assignments specifically state that they extend to "all judicial reviews under ERISA and any applicable federal or state laws." (Compl. ¶7, Compl. Exhibit "B"). This litigation is clearly, therefore, within the scope of the assignment.

Defendant also cites to *Simi Surgical Ctr., Inc v. Connecticut Gen. Life Ins. Co.*, 2018 WL 6332285 (C.D. Cal. Jan. 4, 2018) and *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2011 WL 2748724 (N.D. Cal. July 13, 2011), alleging that Plaintiff has not sufficiently alleged facts that establish the existence of an ERISA plan. (Def. Mot. Pg. 3-4, Ln. 27-4). Defendant argues that Plaintiff is required to assert which of the 106 insureds were subject to ERISA plans and to cite specific terms from the plans (Def. Mot. Pg. 4 Ln. 5-7), effectively claiming that the Plaintiff is required to specifically quote chapter and verse from the insureds' policies.

Defendant seems to have ignored the language in *Forest* from the same page cited by Defendant that states, "A plan is established if a reasonable person "can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* at 5; *see also, Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc*., 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015). In *Forest* the complaint made only conclusory allegations. By contrast, in the present case, Plaintiff makes specific claims in the Complaint:

- "Plaintiff verified all benefits and obtained authorization for all treatment, as required and directed by Defendants. In all cases Plaintiff was directly informed that the policies provided and Defendants would pay for treatment at the Usual, Customary and Reasonable ("UCR") rate." ¶7

- 6 -

- "Prior to the admittance of each CIGNA patient to a facility, Plaintiff contacted Defendant at the number listed on each patient's insurance card to conduct a Verification of Benefits ("VOB") call" ¶13

- "On each VOB call, Plaintiff's representative confirmed with agents of Defendant … whether patient was eligible for benefits, the reimbursement rate at which Defendants would pay out-of-network mental health and substance use disorder (SUD) services to Plaintiff." ¶13

- Plaintiff's Utilization Review ("UR") team would routinely call CIGNA (at specific intervals for each patient as requested by CIGNA) to receive authorization to continue providing services to that patient. Plaintiff's UR team member would call Defendant's Utilization Management ("UM") agents, timely submit any requested medical records or information, and receive pre-authorization and/or pre-certification to continue services. Defendants' agents would then issue authorization reference numbers which Plaintiff would later include on invoices to CIGNA. ¶15

This more than meets the requirements as set forth in *Forest*. A "reasonable person" can clearly determine that Plaintiff is seeking payment on behalf the insureds for benefits owed for treatment of SUD's from Defendant and that Plaintiff followed the very procedures and processes created by Defendant to do so. Further, Plaintiff has offered to provide personal, confidential HIPAA protected information in a nonpublic, confidential manner or under seal in this Court. (Compl. ¶17).

Other courts have held that relatively general allegations are sufficient to assert entitlement under ERISA. *See, for example*, *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 947 (E.D. Tex. 2011). Further, in *Forest,* the court states, "the allegations in the complaint do not need to describe a given plan in detail, such as to identify each plan's policy number, the allegations must be sufficient to raise the existence of an ERISA plan above [a] speculative level" (quoting *In re Managed Care Litigation*, 2009 WL 742678 at *3 (S.D.Fla. Mar.20, 2009)). Just as the complaint does

not have to include the policy number, it does not have to quote the specific policy language at issue. In the Complaint, Plaintiff has alleged "thousands of VOB and authorization calls" (¶14) and offered to provide to Defendants with an unedited schedule of authorized yet still owed amounts (¶17). Thus, the existence of the plan term that entitles Plaintiff to benefits has been more than sufficiently alleged and is far more than "speculative."

The cases cited by Defendant, *Forest* and *Simi*, actually support Plaintiff's position. *Simi* cites to *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110 (C.D. Cal. 2015) approvingly where the court held it was a "close call" and gave plaintiff leave to amend to plead that "the terms of the plan: (1) provide coverage for each of the procedures at issue in this case; and (2) dictate that these covered services would be paid according to a specific reimbursement rate..., which must be specified." *Simi* at *3. Plaintiff has met this standard.

Defendant's claim that "Bristol's deficient allegations make it impossible to determine whether Bristol exhausted internal review procedures as required by ERISA" (Def. Mot. Pg. 4, Ln 18-20) is similarly without merit. The claims in this matter have been the subject of ongoing negotiations and correspondence between BRISTOL and CIGNA for some time and Plaintiff was still actively following up on the non-payments which are the subject of this lawsuit until shortly before Plaintiff was forced to file its petition for bankruptcy.

Further, CIGNA's brief half-heartedly tries to argue that BRISTOL may have failed to exhaust its administrative remedies under ERISA. However, there has never been an adverse benefit determination from which Plaintiff could pursue administrative remedies. Under ERISA, a denial, or adverse benefit determination, that would trigger pursuit of remedies would be timely (within 45 days at most) and contain precise language describing the determination as well as notice of appeal rights. Here, CIGNA has provided nothing of the sort. Absent a timely and formal denial, claimants under

- 8 -

ERISA are deemed to have exhausted their administrative remedies may pursue a civil action. *See* 29 C.F.R. § 2560.503-1(l)(i) (2018).

For all of the reasons described above, Plaintiff has brought valid ERISA claims and Defendant's motion should be denied.

## V.  THE FRAUD-BASED CLAIMS ARE PROPERLY PLEAD

Plaintiffs' third cause of action for intentional misrepresentation, fourth cause of action for negligent misrepresentation, fifth cause of action for fraudulent concealment, and sixth cause of action for negligent failure to disclose are all based on the factual allegations in the sixth and eight paragraphs of the complaint, including the allegations that CIGNA agreed/represented that it would pay UCR when it knew that it would pay different, lower, after the fact negotiated amounts.

Claims sounding in fraud are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

The complaint does this. Paragraph 12 alleges that the VOB process was done as directed and required by Defendants and that Defendants informed SURE HAVEN that it would be compensated at the UCR. Paragraph 13 identifies four of the CIGNA representatives who made these representations during the VOB calls and paragraph 14 provides the details of these calls and that on behalf of CIGNA, these representatives stated that CIGNA would pay UCR. Paragraph 15 identifies post-admission authorization calls where these same representations were made. Exhibit C to the complaint provides identifying information for each of the patients/insureds with pending claims.

Reference to California law is helpful and consistent with Federal law. In *Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 CA4th 821, at pages 837-838 the court discussed the exception to the general rule of specific fraud pleading when a Defendant has the operative information concerning the alleged fraud, stating as follows:

> "There exist, however, "certain exceptions which mitigate the rigor of the rule requiring specific pleading of fraud." (*Committee on Children's Television*, *supra*, 35 Cal.3d at p. 217.) For example, less specificity is required of a complaint when " 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy, ' [citation]; '[e]ven under the strict rules of common law pleading, one of the canons was that less particularity is required when the facts lie more in the knowledge of the opposite party....' " (*Ibid*.)"

*Tenet* is similar to this case in that it involved a demurrer to an amended complaint in which a health care provider was asserting various fraud causes of action based on preadmission verification of benefit conversations. In that case, the trial court had sustained Anthem's demurrer to causes of action for intentional fraud and causes of action for negligent misrepresentation without leave to amend. The Court of Appeal reversed, observing at page 839:

> "In addition, the trial court failed to consider that a cause of action based in fraud may arise from *conduct* that is designed to mislead, and not only from verbal or written statements. (See *Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1567 [54 Cal.Rptr.2d 468] ["A misrepresentation need not be oral; it may be implied by conduct."]; *Universal By-Products, Inc. v. City of Modesto* (1974) 43 Cal.App.3d145, 151 [117 Cal.Rptr. 525] ["A misrepresentation need not be express but may be implied by or inferred from the circumstances."].) …"

In *Tenet* the court also stated at page 840:

> "Anthem suggests that Hospital's TAC is insufficient because it does not identify each individual and defendant entity who is alleged to

have engaged in communications with Hospital regarding Patient X's care. To the extent that Hospital may he relying on the communications it received from *unnamed* case managers at Anthem, Hospital provided sufficient information to permit Anthem, the party with superior knowledge of who was responsible for preparing the documents in question, to identify the specific individual or individuals; Hospital is relieved from having to plead that particular information with specificity under such circumstances…"

It is respectfully submitted that CIGNA knows exactly the factual basis for the fraud causes of action asserted against it and that those causes of action are factually and legally supported by the allegations of the complaint. By way of example, CIGNA is, or should be in possession of notes, tapes and/or transcripts of tapes of the VOB conversations which would confirm that it represented to SURE HAVEN that reimbursement would be based on the UCR.

## VI.  THE NEGLIGENT NONDISCLOSURE CLAIM IS APPROPRIATE

The Ninth Circuit has held that Rule 9(b) does not apply to claims for negligent failure to disclose. *Vess v.Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003). As to the merits of the negligent nondisclosure cause of action allegations, Plaintiff respectfully refers to the discussion in the directly preceding point above.

## VII.  THE PROMISSORY ESTOPPEL CLAIM IS LEGALLY SUFFICIENT

Under the equitable doctrine of promissory estoppel, "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969); *accord Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000). The elements of the claim are: "(1) a promise, (2) the reasonable expectation by the promisor that the promise will induce reliance or forbearance, (3) actual reliance or forbearance, and (4) the avoidance of injustice by enforcing the promise." *Fleet v. Bank of Am N.A.*, (2014) 229 Cal App 4th 1403, 1412.

Plaintiff argues and pleads that the verification and authorization communications that occurred *in factual circumstances like this case* constitute an appropriate predicate for promissory estoppel. *See, e.g.*, *Regents of the Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006) (concluding that insurer demonstrated intent to be bound to pay health care provider because insurer verified coverage and authorized treatment on multiple occasions); *Enloe Med. Ctr. v. Principal Life Ins. Co.*, No. CIV S-10-2227 KJM-DAD, 2011 WL 6396517 at *6 (E.D. Cal. Dec. 20, 2011) (noting that courts diverge on whether treatment authorization evinces a promise to pay and stating that "in some instances, a contract may be created on an authorization call").

In this case, the only issue is the amount of payment, not authorization for the services. In all of the claims the authorization for services and/or medical necessity of those services is not in dispute, only the payment amount. The complaint does not base the promissory estoppel cause of action on promises made in the insurance contracts, but rather the promises made in the preadmission VOB communications. CIGNA should be estopped from paying anything other than the represented UCR.

## VIII.  THE CLAIM FOR UNFAIR BUSINESS PRACTICES IS VALID.

CIGNA claims that the UCL cause of action for violation of California's unfair competition law, set forth in Business and Professions Code §§ 17200, *et seq*. fails to satisfy any of the three prongs of California's UCL.

The UCL prohibits unlawful, unfair, and fraudulent business practices. A "business practice need only meet one of the three criteria to be considered unfair competition." *McKell v. Washington Mut. Inc*. (2006) 142 Cal. App. 4th 1457, 1471.

Defendant suggests that the UCL claims are inadequate because they do not show a statutory violation of any type. However, the allegations of the FAC establish that Defendant violated California Health & Safety Code section 1371.8 and pleads requisite facts to establish Defendants violation of California's mental health parity laws,

including but not limited to California Health & Safety Code section 1374.72 and California Insurance Code section 10144.5.

The complaint clearly satisfies the fraud prong of a UCL claim in that it pleads multiple fraud causes of action showing that CIGNA has engaged in a fraudulent business practice. "A fraudulent business practice is one in which members of the public are likely to be deceived." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009) (citation and internal quotation marks omitted). To be actionable under the UCL, a representation may be untrue, or it "may be accurate on some level, but will nonetheless tend to mislead or deceive." *McKell*, 142 Cal. App. 4th at 1471. "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under" the UCL. *Id.* (citation omitted).

BRISTOL alleges that CIGNA deceptively induced SURE HAVEN to provide treatment to their insureds. Through CIGNA's course of conduct, including its confirmation of coverage and authorization of treatment, SURE HAVEN was encouraged to provide treatment and misled by CIGNA into believing that it would be reimbursed for their services. CIGNA did not disclose relevant information, namely, that it would refuse to fully pay based on the UCR. These allegations are sufficient to state a claim for deceptive business practices.

CIGNA claims that UCL claim is invalid because it was assigned, citing *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal. 4th 993, 1002 (2009) which held that the UCL claim in that case could not be assigned to an uninjured assignee. Amalgamated doesn't discuss if any consideration was paid for the assignment. In this case, BRISTOL is a successor entity to SURE HAVEN, and is comprised of individuals who were also formerly part of SURE HAVEN who suffered significant injury in fact due to the nonpayment of claims by CIGNA which forced SURE HAVEN out of business.  BRISTOL then paid significant consideration for the assignment of the claims which was also for the benefit of SURE HAVEN'S creditors.

CIGNA also claims the complaint does not properly allege a request for equitable relief. The issue of restitution under the UCL law has been discussed in the context of standing and available monetary remedies-restitution/restoration. Because of the definitional language used, the discussion regarding standing is relevant to this motion.

In *Allergan Inc. v. Athena Cosmetics Inc.* (Fed. Cir 2011) 640 F3d. 1377, at pages 1381-1382, the court discussed the concept of damages in the context of determining standing to bring a UCL case, stating as follows:

> "After Proposition 64 was adopted, both state and federal California courts interpreted the limitation of standing under section 17204 to mean that the money or property lost by individuals alleging unfair competition must be " eligible for restitution." *Buckland v. Threshold Enters., Ltd.,* 155 Cal.App.4th 798, 817, 66 Cal.Rptr.3d 543 (2008) *overruled by Kwikset,* 120 Cal.Rptr.3d 741, 246 P.3d at 895; *see also Walker v. Geico Gen. Ins. Co.,* 558 F.3d 1025, 1027 (9th Cir.2009); *Walker v. USAA Cas. Ins. Co.,* 474 F.Supp.2d 1168, 1173 (C.D.Cal.2007); *Citizens,* 171 Cal.App.4th at 22, 89 Cal.Rptr.3d 455. This conclusion rested on connecting the " lost money or property" language in section 17204 with the language in section 17203 that allowed restitution " as may be necessary to restore any person in interest any money or property." The use of money or property in both sections led courts to conclude that section 17204 limited standing to those who had an injury compensable by restitution. *See, e.g., Buckland,* 155 Cal.App.4th at 817-18, 66 Cal.Rptr.3d 543.
>
> In its most recent decisions, the California Supreme Court has rejected this reasoning. It concluded in *Kwikset* and *Clayworth* that " ineligibility for restitution is not a basis for denying standing under section 17204 and disapprove[d] those cases [including *Citizens* and *Buckland* ] that have concluded otherwise." *Kwikset,* 120 Cal.Rptr.3d 741, 246 P.3d at 895. In *Kwikset,* the court held that to satisfy the standing requirements of section 17204, a plaintiff must allege exactly what the statutory text requires: " (1) ... a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. *economic injury,* and (2) ... that [the] economic injury was the result of, i.e. *caused by,* the unfair business practice...." *Id.,* 120 Cal.Rptr.3d 741, 246 P.3d at 885."

- 14 -

Plaintiff is asking for payment from Defendant for the represented UCR amount. However, under existing case law on the issue of standing to bring an UCL claim, the California Supreme Court has made it clear that the requisite harm, i.e. injury in fact, can be an economic injury caused by the unfair business practice for which a restitutionary remedy is available. In addition to the standing issue discussed above, the California Supreme Court has also discussed and defined "restitution" broadly to include the payment of unpaid wages.

In this case, BRISTOL alleges that Defendants withheld funds from SURE HAVEN for treatment services that were provided to the insureds of Defendants based on the VOB representations and authorizations. It is respectfully submitted that as to the issue of restitutionary remedies, this situation is analogous to *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal 4th 163, 177-178, wherein the court decided the issue of whether payment of withheld wages was restitutionary in nature, holding that an order to pay earned wages is "…a restitutionary remedy authorized by the UCL." Here, the reality is that both SURE HAVEN and BRISTOL have suffered significant economic harm for which BRISTOL seeks the available restitutionary remedy of payment of the represented/agreed amount which has been wrongfully withheld.

## IX. THE BREACH OF CONTRACT CLAIMS STATE VALID CLAIMS.

The second cause of action for breach of oral contract and the tenth cause of action for breach of implied contract both allege breach of contract claims based on the preadmission VOB process (not the insurance policies/plans) wherein CIGNA consistently specifically stated/agreed that it would pay based on the UCR. The eleventh cause of action is based on the written insurance plans/policies issued to the patients/insureds and is completely separate and distinct from the oral and implied VOB contract claims.

CIGNA has lumped all three breach of contract claims together in its points and authorities in support of its motion. Plaintiff will treat them separately, first addressing the implied and oral contract claims based on the VOB process.

Under California law, verification and authorization communications that occur in factual circumstances like this case constitute an appropriate predicate for an agreement and/or promissory estoppel. See, e.g., *Regents of the Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006) (concluding that insurer demonstrated intent to be bound to pay health care provider because insurer verified coverage and authorized treatment on multiple occasions); *Enloe Med. Ctr. v. Principal Life Ins. Co.*, No. CIV S-10-2227 KJM-DAD, 2011 WL 6396517 at *6 (E.D. Cal. Dec. 20, 2011) (noting that courts diverge on whether treatment authorization evinces a promise to pay and stating that "in some instances, a contract may be created on an authorization call").

At page 11, lines 16-24, CIGNA argues that the oral and implied contract causes of action are deficient because they do not state a "specified rate", and in support of its position cites *Pacific Bay Recovery, Inc. v. California Physicians Services, Inc.* (2017) 12 Cal.App. 5th 200 and *Orthopedic Specialists of Southern California v. CALPERS* 228 Cal.App.4th 644 (2014), both of which are distinguishable and inapplicable.

By representing that it would pay the UCR, a term of art in the industry, CIGNA provided a recognized method by which the amount it would pay would be objectively determined. For example, in California, Healthcare.gov. defines UCR as "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."

UCR is a certain and well-known term, and analogous to the concept of Fair Market Value in the real estate or other industries. In *Goodwest Rubber Corp. v. Munoz* (1985) 170 Cal. App. 3d 919, 921, the court held that "Fair Market Value" was a certain enough price or method to determine consideration to support an action for specific performance.

Even if there was a legitimate question about using the UCR as the method to ascertain the payment amount, California Civil Code section 1611 would apply to fix

- 16 -

the payment amount/consideration at what SURE HAVEN's services were "reasonably worth". (A close reading of Civil Code section 1611 shows that it implicitly recognizes that a contract's consideration can be either a specified amount or ascertained by an appropriate methodology).

CIGNA relies on *Pacific Bay Recovery, Inc. v. California Physicians Services, Inc.* (2017) 12 Cal.App. 5th 200. In that case, the Court of Appeal rejected the substance abuse provider's argument that it was entitled to be compensated based on the UCR. However, *Pacific Bay* is completely different from this case. It was a case in which the provider questionably attempted to rely on inapplicable Knox Keene act provisions allowing emergency providers to receive the UCR, even though the services Pacific Bay provided were not emergency services.

In *Pacific Bay*, as to the allegations of what Blue Shield represented, Pacific Bay alleged only that Blue Shield would pay for the services. It did not allege that it was told it would receive the UCR, only that it "was led to believe it 'would be paid a portion or percentage of its total billed charges, which charges correlated with usual, reasonable and customary charges'" (*Id*., at 216).

CIGNA's reliance on *Orthopedic Specialists of Southern California v. CALPERS* 228 Cal.App.4th 644 (2014) is misplaced as in that case the provider did not allege misrepresentation claims, and only plead that it "was led to believe" it would be paid its billed amount or UCR (*Id.*, at page 646). In this case, the complaint alleges fraud claims and that SURE HAVEN was told it would be paid based on the UCR. More importantly, the ruling in *Orthopedic Specialists* was based on the fact that as a public entity, Defendant CALPERS could not have an oral or implied contract enforced against it per California Government Code section 815(a). *Id.* at page 650.

CIGNA suggests that the tenth cause of action for breach of implied contract cannot coexist with the second cause of action for breach of oral contract. Federal Rule of Civil Procedure 8 explicitly allows Plaintiff to plead different theories of relief in the alternative, even if those theories are inconsistent.  Fed.R. Civ. P. 8(d) ("A party may

set out 2 or more statements of a claim or defense alternatively or hypothetically…A party may state as many separate claims or defenses as it has, regardless of consistency."). Thus, courts routinely allow plaintiffs to plead both express contract and implied contract theories, as long as those theories are pled in the alternative. *See, e.g.*, *SocialApps, LLC v. Zynga, Inc.*, 2012 WL 381216, at *3 (N.D. Cal. Feb. 6, 2012) ("While the allegations of the implied contract claim rely on the same allegations as the express contract claim, SA is entitled to plead different theories of recovery in the alternative.").

     As to the breach of written insurance contract cause of action plead in the alternative, Plaintiff has provided the necessary information for CIGNA to reference the applicable plans/policies. It should be noted that as is plead in paragraph 11 of the complaint, these are insurance policies or plans that CIGNA drafted and provides administrative services for (and in some cases is probably the direct issuer of the policy). It is not unaware of the terms and conditions of these plans/policies and it probably doesn't make sense to have a 106 lengthy insurance contracts attached to a pleading when there is really no point in it.

## X.  THE BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM IS VALID

     Defendant claims the twelfth cause of action for breach of the implied covenant of good faith and fair dealing allegations are insufficient. Defendants' position is incorrect. The twelfth cause of action incorporates the allegations in all the previous paragraphs of the complaint, including the eleventh cause of action for breach of written insurance contract which alleges that Defendants insureds/SURE HAVEN'S patients were insured under plans/policies that obligated Defendants to pay an allowed amount for substance abuse treatment services. That cause of action goes on to allege that CIGNA refused to pay anything for the services (Compl. ¶¶ 69 & 70).

     In addition to the allegations that CIGNA did not pay anything, paragraph 74 of the twelfth cause of action alleges that CIGNA unreasonably withheld plan/policy

- 18 -

benefits even though its obligation to pay the claims was clear. CIGNA has never denied these claims or stated its reason for non-payment.  This satisfies California law which provides that withholding insurance benefits unreasonably or without proper cause supports a first party insurance bad faith claim. *Love v. Fire Insurance Exchange* (1990) 221 Cal.App.3d 1136, 1151.

The Breach of the implied covenant of good faith and fair dealing cause of action is supported by the incorporated allegations and its specific allegations including being careful to assert the only assignable claim for that cause of action- recovery of attorney fees incurred in collecting wrongfully withheld policy benefits pursuant to the California Supreme in *Brandt v. Superior Court* (1985) 37 Cal. 3d 813 have been assigned.

## XI.  THE QUANTUM MERUIT CLAIM IS VALID.

"Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.'" *Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453, 458 (2004) (citation omitted). The plaintiff "must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.'" *Id.* (citation omitted).

Quantum meruit prevents precisely this kind of unjust enrichment by requiring compensation when "'[a] person confers a benefit upon another' [by] 'perform[ing] services *beneficial to or at the request of the other*.'" *Earhart v. William Low Co.*, 25 Cal. 3d 503, 510 (1979) (*quoting* Restatement of Restitution § 1 (1937)) (emphasis in original). "The underlying idea behind quantum meruit is the law's distaste for unjust enrichment. If one has received a benefit which one may not justly retain, one should 'restore the aggrieved party to his [or her] former position by return of the *thing* or its *equivalent* in money.'" *Maglica v. Maglica*, 66 Cal. App. 4th 442, 449 (1998), *as modified on denial of reh'g*, (Sept. 28, 1998) (quoting 1 Witkin, Summary of California Law, Contracts § 91, p. 122 (9th Ed. 1987)) (emphasis added). Quantum meruit

embodies the quasi-contractual theory of restitution, which provides that a person must "make restitution if he or she is unjustly enriched at the expense of another. . .. A person is enriched if the person receives a benefit at another's expense." *McBridev. Boughton*, 123 Cal. App. 4th 379, 389 (2004) (citation omitted). As the California Supreme Court has explained, a benefit means "any form of advantage" and is "conferred not only when one adds to the property of another, but also when one saves the other from expense or loss." *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996).

## XII.  THE STATE LAW CLAIMS ARE NOT PREEMPTED BY ERISA

As a third-party to the contract between the insurer and insured, Plaintiff has independent causes of action. Even when an assignment exists that permits a provider to bring derivative claims under ERISA, that does not convert the provider's third-part claims to ERISA claims. *See Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999) ("we find no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan.").

When obligations are created directly between the provider and the insurer, even when the insured is covered under an ERISA plan, the provider still has rights and causes of action that are not preempted by ERISA. *See Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008) ("where a third party medical provider sues an ERISA plan based on contractual obligations arising directly between the provider and the ERISA plan (or for misrepresentations of coverage made by the ERISA plan to the provider), no ERISA-governed relationship is implicated and the claim is not preempted"); *Port Med. Wellness, Inc. v. Connecticut Gen. Life Ins. Co.*, 233 Cal. Rptr. 3d 830, 848–49 (Ct. App. 2018) ("where a plan assures a provider that a proposed treatment is covered under the plan but later determines it is not covered, the provider may sue based upon the plan's independent promise to the provider to pay for the services rendered.")

Defendant's motion seems to miss this nuance and conflates the different duties that the various parties owe to each other. Defendant does not dispute that Plaintiff is not a party to the insurance contract. An ERISA plan is a contract. *Murphy v. California Physicians Serv.*, 213 F. Supp. 3d 1238, 1246 (N.D. Cal. 2016).

The Supreme Court has established a clear, two-part test for determining whether a state-law claim is completely preempted by ERISA's civil enforcement provision: (1) the plaintiff, "at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by [the] defendant's actions." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1059 (9th Cir. 2018) *citing Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

Neither *Davila* prong is met with regard to the state-law causes of action brought in Plaintiff's complaint.

With regard to the first prong, as a third party non-plan member, the Plaintiff has no inherent ability to bring a claim directly against the Defendant absent independent cause. ERISA's civil enforcement provision provides that a civil action may be brought "***by a participant or beneficiary***" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As a third party, Plaintiff is neither a participant nor a beneficiary.

Plaintiff's state law causes of action all arise under oral and implied contracts between Plaintiff and Defendant. Amounts due under oral and implied contracts do not satisfy the first prong of the Davila test. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 948 (9th Cir. 2009).. As the patients are not parties to these oral and implied contracts, they themselves cannot bring claims against the Defendants for a breach of the oral and implied contracts. As the terms of these oral and/or implied contracts cannot be asserted by the patients, they do not fall within § 502(a)(1)(B). *See Galileo Surgery Ctr., L.P. v. Aetna Health & Life Ins. Co*., No. 2:14-CV-09747-ODW,

- 21 -

2015 WL 898466, at *3 (C.D. Cal. Mar. 3, 2015). Therefore, the first prong is not met and Defendants' motion should be denied.

As to the second prong, the controlling question is whether the claim relies on the violation of a legal duty that arises *independently* of the plaintiff's or assignor's ERISA plan. *See Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1059 (9th Cir. 2018). When there is a legal duty beyond that imposed by an ERISA plan, a claim based on that duty is not completely preempted by ERISA. *Id.* The key to this inquiry is the *origin* of the duty, not its relationship with health plans. *Id.* at 1060. When the duty is independent of the specific rights established by the plan, the claim is not preempted. *Id.*

In cases such as here, where a provider relies upon a promise of payment either in the form of a written contract or otherwise, the Ninth Circuit has routinely help that the second prong of *Davila* is not met when the providers are suing under those legal obligations. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009) (a telephone conversation gave rise to legal duties independent of the terms of the employee benefits plan, so the hospital's claims were ineligible for preemption); *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045 (9th Cir.1999) (holding that providers did not contend that Blue Cross had violated the terms of an ERISA plan, but rather that it had breached a separate contract). As in *Marin* and *Anesthesia Care*, the state law claims asserted here are brought on behalf of provider-based duties created extrinsic to the ERISA plans, duties that arose in VOB's, authorization telephone calls, and implied-in-fact contracts arising from Defendant's prior course of dealing.

Defendant mischaracterizes Plaintiff's complaint as relating solely to "unpaid plan benefits" (Mot. Pg. 16, Ln 12-13). Plaintiff suffered harm by providing services in reliance upon Defendant's representations and good faith prior performance of its legal duties, all separate and apart from the terms of its patients' employers' health plans

(Complaint, Paragraphs 12, 16.) As such, Plaintiff's state law claims are not preempted, and Defendant's motion should be denied.

### XIII.  PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND

Defendants argue that the complaint should be dismissed with prejudice. Not only does that position assume the motion to dismiss is appropriate to all causes of action, but it also runs contrary to well settled law regarding motions to dismiss.

If a Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### XIV.   CONCLUSION

By reason of the foregoing, it is respectfully submitted that the motion to dismiss should be denied. If the court is inclined to sustain any part of the motion, Plaintiff respectfully requests leave to amend.

**[Signature page follows]**

Dated:  June 28, 2019

NAPOLI SHKOLNIK PLLC

/s/ Matthew M. Lavin
MATTHEW M. LAVIN
JENNIFER LIAKOS

LAW OFFICE OF JOHN W. TOWER

/s/ John W. Tower
JOHN W. TOWER

Attorneys for Plaintiff
Bristol SL Holdings, Inc.