1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3            HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING

4    BRISTOL SL HOLDINGS, NC., ET AL.,  )
                                        )
5                                       )
                                        )
6                         Plaintiffs,   )
                                        )
7                                       )
                                        )
8           Vs.                         )   No. SACV19-00709-AG
                                        )
9                                       )
                                        )
10   CIGNA HEALTH LIFE INSURANCE        )
     COMPANY, ET AL.,                   )
11                                      )
                                        )
12                                      )
                          Defendants.   )
13                                      )
     _____

14

15

16             REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                    SANTA ANA, CALIFORNIA

18               MONDAY, SEPTEMBER 23, 2019

19

20

21            MIRIAM V. BAIRD, CSR 11893, CCRA
           OFFICIAL U.S. DISTRICT COURT REPORTER
22          411 WEST FOURTH STREET, SUITE 1-053
                SANTA ANA, CALIFORNIA 92701
23                   MVB11893@aol.com

24

25

1                       **A P P E A R A N C E S**

2

3    **IN BEHALF OF THE PLAINTIFFS,**        JOHN W. TOWER
     **BRISTOL SL HOLDINGS, NC., ET**        LAW OFFICE OF JOHN W TOWER
4    **AL., :**                              2211 ENCINITAS BOULEVARD
                                             2ND FLOOR
5                                            ENCINITAS, CA 92024

6

7

8

9

10   **IN BEHALF OF THE DEFENDANTS,**        WILLIAM P DONOVAN, JR.
     **CIGNA HEALTH LIFE INSURANCE**         KATE MARIE HAMMOND
     **COMPANY, ET AL:**                     MCDERMOTT WILL AND EMERY
11                                           2049 CENTURY PARK EAST
                                             SUITE 3200
12                                           LOS ANGELES, CA 90067-3206

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    SANTA ANA, CALIFORNIA; MONDAY, SEPTEMBER 23, 2019; 10:40 A.M.

2                                ---

3

4

5          THE CLERK:  SACV19-00709-AG Bristol SL Holdings,

6    Inc., et al., vs. CIGNA Health Life Insurance Company, et al.

7          THE COURT:  Appearances, please.

8          MR. TOWER:  John Tower for the plaintiff Bristol.

9          MS. HAMMOND:  Good morning, Your Honor.  Kate

10   Hammond on behalf of the CIGNA defendants.

11         MR. DONOVAN:  Good morning, Your Honor.

12         Bill Donovan also for CIGNA.

13         THE COURT:  All right.  Thank you.  We've issued a

14   fairly long tentative.  Mr. Donovan, would you pull that

15   microphone over to you.  Thank you.  It will reach all the

16   way over.  It's got a long cord on it.

17         MR. DONOVAN:  Thank you, Your Honor.  Ms. Hammond

18   is going to argue today actually.

19         THE COURT:  Okay.  Let's first hear from Mr. Tower.

20         MR. TOWER:  Thank you, Your Honor.  Appreciate the

21   Court issuing the tentative early.  It gave us time to review

22   and digest it.

23         THE COURT:  You know, my daughter at a certain law

24   large law firm once said, Dad, you think you're so great

25   issuing those tentatives on Friday.  I consider them to be a
```

1    way to destroy the weekend of associates.  I'm sorry if I

2    destroyed your weekend.

3            MR. TOWER:  Better to have it destroyed or

4    destroyed the day here trying to figure it out at the last

5    minute, Your Honor.

6            THE COURT:  Good point.

7            MR. TOWER:  First at point 3.8 in the ruling, which

8    is dealing with the UCL claim --

9            THE COURT:  Yes.

10           MR. TOWER:  -- and the Amalgamated case.  I don't

11   think it was as clear as it could have been in the complaint,

12   but I'm asking that we get leave to amend on that cause of

13   action because Bristol is, in essence, an alter ego, if you

14   will, of Sure Haven.  What I mean by that, is all of the

15   individuals shareholders, officers, and directors in Bristol

16   are the same as those in Sure Haven.  When Sure Haven made

17   the assignment to Bristol, it was through the bankruptcy

18   Court with oversight and approval by the Court and the

19   trustee.  If you look at the two corporations and you look at

20   the issue that Amalgamated was looking at is there an injury,

21   in fact, was their concern.  You can't assigned it to a

22   disinterested third party.  They have no skin in the game.

23   We have the blood and guts of both corporations is the same.

24   All of those people lost their investment.  All of them have

25   skin in the game.  That assignment is in part for the benefit

```
 1   of the creditors and the bankruptcy.  So if Bristol recovers
 2   any settlement or judgment in this case, a substantial part
 3   of that goes to the bankruptcy court and to pay the trustee's
 4   fees.
 5         I would submit under Amalgamated, the issue before
 6   the Court was whether or not an employee could assign his
 7   claim to a union.  While a union is doing their job in being
 8   a good representative of the employee, they didn't have the
 9   same -- they didn't have an actual injury in fact.  They
10   didn't have skin in the game.  We do here.  We would like to
11   have the opportunity to present that full context to the
12   Court to evaluate.
13         THE COURT:  All right.  Anything else?
14         MR. TOWER:  Yes, Your Honor.  As to a kind of a
15   procedural logistics issue, we wanted to assure the Court
16   that we weren't just shooting the shotgun and trying to throw
17   everything up there and hoping something sticks.  We're in a
18   kind of hybrid situation as an out-of-network provider.  We
19   are in this no man's land, if you will, and there are a lot
20   of potential causes of action.  We did our best to allege
21   what we could with the information we have.  We appreciate
22   the Court's input from the ruling.
23         We've also looked at a prior case that Your Honor
24   was involved in, the Casa Blanca.  We believe we can provide
25   the level of detail that the Court is looking for to
```

```
1    implicate ERISA plans and to bolster the allegations in our

2    other causes of action, state law causes of action.  The

3    issue is though -- the pleading cases are what they are.

4    They say we're under, as Your Honor has pointed out, an

5    obligation to give a lot of information about ERISA.  Here's

6    the point in paragraph 17 of our complaint, we refer to

7    Exhibit C, which is an attachment, in which we identified all

8    of the individuals, the dates of service, we don't identify

9    by names.  We provide limited non-HIPAA information.

10          So -- we also allege in 17 we will give more

11   information to CIGNA because we know they need it.  We need

12   the plans.  They need more information.  We need to get a

13   lawsuit filed to stop a statute.  We do that.  On July 30th,

14   we provided a very detailed spreadsheet to CIGNA with the --

15   policy numbers, member identification numbers, full names,

16   dates of birth, and dates of service.  So the question we

17   have is in this instance, because CIGNA is asserting

18   preemption -- ERISA preemption and also attacking our

19   complaint as saying we don't implicate ERISA sufficiently,

20   under Rule 26, isn't their obligation to provide us with

21   those plans.

22          We don't have -- they're not easy to get.  If we

23   have the plans and policies, we can lay it all out

24   specifically out of 106.  Here's the ERISA plans.  Here's the

25   non-ERISA plans.  Here's the language, otherwise despite what
```

```
 1    those pleading cases say, we're hamstrung.  We really have a
 2    hard time getting more than what we have.
 3              So my question would be even at this point would it
 4    be a possibility to have an order where we are provided with
 5    the plans and given time to leave to amend putting maybe this
 6    motion on hold or -- or in abeyance until we have an
 7    opportunity to present a full record to the Court so that we
 8    can be evaluated based on that information.
 9              THE COURT:  I didn't understand that last thing.
10    Put this on hold rather than grant it and grant leave?
11    What's the difference?
12              MR. TOWER:  Well, Your Honor, to us the difference
13    is we -- we took your ruling pretty hard.  We took it to
14    heart, but we felt like it -- in this day and age, every --
15    every order of a District Court becomes almost the equivalent
16    of a Supreme Court case out there.
17              THE COURT:  Say that last sentence again.
18              MR. TOWER:  It seems like every time there's an
19    order, for example, if your order became final, it hits
20    Westlaw.  It hits Lexis.  It will be cited.  There was a case
21    from Judge Koh up north that was decided last week that is a
22    very similar case to this.  It is cited.  They're all
23    precedent.  I don't quite understand it.  It's out there.
24              We were, you know, we -- we would like to have a
25    better record to present if there's going to be something
```

1    that is matter of public record, frankly.

2           THE COURT:  You know, that is a very, very

3    important point.  Let me say when I first get law clerks, you

4    know, I do every year, I get new clerks, I often remind them,

5    you know, we're not only deciding this case, but are, may I

6    say, modestly contributing to the common law, and do we want

7    the chambers of Judge Guilford cited for this proposition.

8    So I completely understand what you say.  I do think of that

9    when I write the opinion.  So I understand the argument.

10   This is the first complaint in this matter; correct?

11          MR. TOWER:  Yes, it is, Your Honor.

12          THE COURT:  Okay.  What about the overall notion

13   where I say, the Court doubts whether Bristol can sustain

14   these claims as a matter of law.  Courts have routinely

15   rejected Bristol's arguments that an implied contract forms

16   when an insurer verifies coverage or authorizes treatment for

17   an insured?  You're fearful my case might get added to the

18   list of cases we cite there.  I understand that.  What is

19   your response to that?  How are you going to amend around it?

20          MR. TOWER:  Your Honor, that was based in part on

21   the Pacific Bay case.

22          THE COURT:  Yes.

23          MR. TOWER:  Our case is much different.  We've

24   alleged -- not only did we allege we were told we would be

25   paid the UCR, usual and customary rate.  We also allege there

```
 1    were authorizations to proceed with providing the treatment
 2    services.  Pacific Bay didn't even allege that they --
 3    Pacific Bay is a case where they just allege they were told
 4    they would get paid something.  I would submit they got what
 5    they bargained.  I think that was -- that case is not on
 6    point with this case.
 7             They also in Pacific Bay refer the Orthopedic
 8    Specialist case as supporting in part their holding.
 9    Orthopedic Specialist was a case against CalPERS, a
10    governmental entity, where it was prohibited to allege
11    anything outside of a written contract claim.  No implied or
12    oral contract claim was allowed against the public entity.
13             Last point on that is the case I mentioned from
14    Judge Koh up north --
15             THE COURT:  From Judge Koh, K-o-h?
16             MR. TOWER:  That's correct.
17             In that case, they cite -- they -- Judge Koh ruled
18    in favor of the oral contract and implied contract causes of
19    action on facts -- allegations very similar to this case.
20    She actually referred to a case in that opinion that was very
21    similar to -- that case was California Spine decided on
22    September 17th.  They refer to a case in there that happens
23    to be coincidentally a case that I handled.  So I do know
24    that the allegations are substantially similar.  That would
25    be an issue we would brief to the Court, as well as adding
```

1    additional clarifying allegations.

2          THE COURT:  Okay.  And then there's another point.

3    You take your contract case, which you may or may not be able

4    to establish, why do you throw in fraud, and should I be

5    concerned about the economic loss rule?  Should I be

6    concerned that if you manage to allege a contract, we don't

7    give you punitive damages because you say they didn't intend

8    it when they said it, kind of a difficult thing to prove and

9    a growlingly difficult thing to allege?  I don't mention it

10   fully, but in your amendment, you're probably going to keep

11   the fraud claim.  We will probably have to focus more on what

12   in the modern age is called the economic loss rule, but in

13   the olden days was called, you don't get punitive damages in

14   a contract case by saying they didn't intend at the time of

15   the promise.

16         What do you say to all of that?  Are you going

17   to -- I guess I'm saying when you amend, you might want to

18   address that.  What are you going to say then?

19         MR. TOWER:  I agree with you, Your Honor.  I

20   understand that.  I think we are looking very closely at our

21   two intentional fraud causes of action that are remaining,

22   the intentional misrepresentation and fraudulent concealment.

23   As to the negligent misrepresentation, which would not carry

24   punitive damages, that's a little different.

25         To address the economic loss rule, one of the cases

1    cited by the Court in the tentative is Elrich, a California

2    case.  I read that case as -- and I've done some construction

3    defect litigation in my career.  There are -- that was a case

4    that was a big case in that arena.  What they were doing in

5    that case in my opinion I think is a fair reading of the

6    holding is a policy -- public policy decision limiting the

7    recoverable types of recoverable damages in a construction

8    defect case and saying you're not going to get emotional

9    distress for a construction defect or property damage case.

10   That was a negligent home construction case.

11        As to the rest of it, I certainly understand that,

12   but we do have -- we have loss, and we -- we -- the insurance

13   company is in a position to give us more accurate information

14   when we call in and we verify what the rate of payment is and

15   get authorization to pay.  So that is essentially in a

16   nutshell the basis of the fraud claims.

17        THE COURT:  Okay.  Let me say at this point, my

18   inclination is to give you leave to amend on the one -- it's

19   just one claim for relief; right?  You're going to be

20   amending anyway.  I should give you leave across the board.

21   That was your first request.

22        I might also want to review the tentative for its

23   common law implications.  I believe the thing I mentioned, I

24   did say the Court doubts -- well, what does that mean?  The

25   Court doubts and says something you won't like.  Maybe I

```
 1    should be sure about something before I merely express a

 2    doubt, lest I be added to the string cite.

 3              Okay.  Let's hear from the defendant.

 4              MS. HAMMOND:  Briefly, Your Honor.  Thank you for

 5    the thoughtful tentative.  We agree with it wholeheartedly.

 6              With respect to the UCL claim, Supreme Court case

 7    Amalgamated contains no limitation to --

 8              THE COURT:  Is that Amalgamated?

 9              MS. HAMMOND:  Yeah.  I may have mispronounced it.

10              It contains no limitation.  Assignments broadly are

11    prohibited for UCL claims.  That is consistent with Prop 64,

12    which was enacted by the voters to limit the amount of claims

13    going forward.  So to permit this carve-out, as suggested

14    here, would run afoul of the reasoning behind that case.

15              And then next for the ERISA claims, counsel

16    mentioned Exhibit C at the end the end of the complaint,

17    which lists patient initials and dates of service, and that

18    simply just doesn't cure the fundamental flaws of the

19    complaint.  We have an implied contract allegation, an oral

20    contract, ERISA plan allegations, a written contract.  We

21    have a 106 patients at issue.  There are four patients

22    mentioned in the complaint.  So I don't know whether each

23    patient -- is it a written contract?  Is it ERISA plan?  Is

24    it the implied contact, or oral contract?

25              And then as far as the authorizations and
```

 1    verifications, there are series of case law that squarely

 2    holds that a plaintiff cannot allege cannot succeed on an

 3    implied contract or oral contract claim based on

 4    authorizations or just verifications.  We have those cases

 5    set forth in our motion and the reply papers.

 6            If Your Honor has any additional questions, we're

 7    happy to answer them.

 8            THE COURT:  What do you think on the issue of what

 9    I've called the economic loss situation?  Do you think

10    they'll be able to meet the standards for misrepresentation

11    on that issue?

12            MS. HAMMOND:  As the complaint is drafted now, no.

13    All we have --

14            THE COURT:  Well, I know as the complaint is

15    drafted now, but plaintiffs are often creative.

16            MS. HAMMOND:  I -- I doubt so, Your Honor.  Right

17    now it would just be -- I would assume they will add more

18    allegations regarding authorizations and verifications.  So

19    we are not going to get around that bar that is present

20    there.

21            THE COURT:  Okay.

22            Turning back to the plaintiff.  You know, actually,

23    I think there are two claims that I didn't give you leave on.

24    One was the negligent misrepresentation claim.

25            MR. TOWER:  That's correct.

```
1          THE COURT:  What will you be able to add to the
2    negligent misrepresentation in this case where you might even
3    be having a challenge stating a breach of contract case?
4          MR. TOWER:  Our intention was at this point without
5    binding ourselves, we were strongly considering not including
6    that if we were given leave to amend, taking to heart the
7    Court's ruling.
8          THE COURT:  All right.  Without binding yourself, I
9    appreciate that.
10          MR. TOWER:  The other --
11          THE COURT:  So you're sort of saying give you leave
12    to amend, and you'll respond in good faith?
13          MR. TOWER:  Yes, Your Honor.
14          THE COURT:  Yeah.  Go ahead.
15          MR. TOWER:  Absolutely.
16          THE COURT:  Yes.
17          MR. TOWER:  Absolutely.
18          And the one part of this, is it possible to get
19    some kind of a timing mechanism in place for exchange of
20    information?  We have a lot of information that we can
21    provide -- produce within two weeks.  If the Court is going
22    to issue a final ruling or give leave -- however we do it,
23    can we get more than 20 days?  Can we get an exchange of
24    information where we get the plans, we give our information,
25    we get the plans?  Our information meaning basically all of
```

```
1    the documentation that we're going to produce in the case,

2    get the plans, and then have time to incorporate that

3    information into a pleading so we're not either doing this

4    again and again or being judged on insufficient information

5    when we really want that information to put into a complaint?

6              THE COURT:  Haven't you gone to a core issue in

7    Iqbal/Twombly, and I must say it troubles me, and in

8    analyzing Iqbal/Twombly, which I frankly say I have

9    difficulties with.  I don't see plausibility in Rule 8, never

10   have, but I -- I think Iqbal/Twombly should be reviewed in

11   part on who has the information.  There are times when the

12   plaintiff you know has all of the information.  There are

13   times when the plaintiff doesn't.  Iqbal/Twombly isn't

14   designed to give you a chance to gather all of the

15   information through discovery and otherwise.

16              In fact, Iqbal/Twombly I think is designed to

17   protect defendants from expensive discovery unless you, based

18   on what you know, can set it forth.  It is an odd issue.

19   Sometimes I do think Iqbal/Twombly might best be analyzed on

20   who has the information, which is sort of what you're saying

21   here; right?

22              MR. TOWER:  I agree.

23              THE COURT:  That's not in Iqbal/Twombly?

24              MR. TOWER:  I agree with that too.  It's put us in

25   a real difficult situation when we're trying to do the best
```

1   for our clients.  What do we do?  We got to file and get

2   information.  How do we do it?

3            THE COURT:  Well, you can go to the United States

4   Congress as securities defendants did in the PSLRA --

5   actually, they said the opposite.  They went to Congress and

6   they got a rule that said no discovery until you have a

7   viable complaint, which actually means if you're not in a

8   securities arena, you do get discovery even though your

9   complaint is not viable, which may be why you are asking for

10  extra time.

11           MR. TOWER:  Perhaps under ERISA, we have that same

12  right.  Technically, if a request is made for information,

13  the plan has an obligation to require it.  I don't know if

14  this would qualify as that type of information, but something

15  we could consider.

16           THE COURT:  Okay.  Anything else from anyone?

17  Okay.  I see heads shaking and not nodding.  So I'm going to

18  take this matter under submission and give some thought to

19  what you said.  I will say, however, under American law, you

20  present a complaint, you run the risk of getting a ruling you

21  don't like that you have to live with, but I'm going to look

22  it over and see where it might be appropriate or not

23  appropriate for us to be contributing to the common law.

24           I must say with the great argument from both of

25  you, it's kind of the case where the common law might be

```
 1   elevated from responding to your arguments.  All that being

 2   said, the matter is under submission.  Thank you.

 3              MR. DONOVAN:  Thank you, very much.

 4              MR. TOWER:  Thank you, Your Honor.

 5              MS. HAMMOND:  Thank you, Your Honor.

 6              (Proceedings concluded at 10:58 a.m.)

 7

 8                          CERTIFICATE

 9   I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

10   TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

11   THE ABOVE MATTER.

12   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

13   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

14   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

15

16   /s/ Miriam V. Baird            09/27/2019

17   MIRIAM V. BAIRD                     DATE
     OFFICIAL REPORTER
18

19

20

21

22

23

24

25
```

## /

**/s** [1] - 17:16

## 0

**09/27/2019** [1] - 17:16

## 1

**1-053** [1] - 1:22
**106** [2] - 6:24, 12:21
**10:40** [1] - 3:1
**10:58** [1] - 17:6
**11893** [1] - 1:21
**17** [2] - 6:6, 6:10
**17th** [1] - 9:22

## 2

**20** [1] - 14:23
**2019** [2] - 1:18, 3:1
**2049** [1] - 2:11
**2211** [1] - 2:4
**23** [2] - 1:18, 3:1
**26** [1] - 6:20
**2ND** [1] - 2:4

## 3

**3.8** [1] - 4:7
**30th** [1] - 6:13
**3200** [1] - 2:11

## 4

**411** [1] - 1:22

## 6

**64** [1] - 12:11

## 8

**8** [1] - 15:9

## 9

**90067-3206** [1] - 2:12
**92024** [1] - 2:5
**92701** [1] - 1:22

## A

**a.m** [1] - 17:6
**A.M** [1] - 3:1
**abeyance** [1] - 7:6
**able** [3] - 10:3, 13:10, 14:1
**ABOVE** [1] - 17:11
**absolutely** [2] - 14:15, 14:17
**accurate** [1] - 11:13

**action** [6] - 4:13, 5:20, 6:2, 9:19, 10:21
**actual** [1] - 5:9
**add** [2] - 13:17, 14:1
**added** [2] - 8:17, 12:2
**adding** [1] - 9:25
**additional** [2] - 10:1, 13:6
**address** [2] - 10:18, 10:25
**afoul** [1] - 12:14
**age** [2] - 7:14, 10:12
**agree** [4] - 10:19, 12:5, 15:22, 15:24
**ahead** [1] - 14:14
**al** [2] - 3:6
**AL** [4] - 1:4, 1:10, 2:4, 2:10
**allegation** [1] - 12:19
**allegations** [6] - 6:1, 9:19, 9:24, 10:1, 12:20, 13:18
**allege** [10] - 5:20, 6:10, 8:24, 8:25, 9:2, 9:3, 9:10, 10:6, 10:9, 13:2
**alleged** [1] - 8:24
**allowed** [1] - 9:12
**almost** [1] - 7:15
**alter** [1] - 4:13
**Amalgamated** [5] - 4:10, 4:20, 5:5, 12:7, 12:8
**amend** [7] - 4:12, 7:5, 8:19, 10:17, 11:18, 14:6, 14:12
**amending** [1] - 11:20
**amendment** [1] - 10:10
**American** [1] - 16:19
**amount** [1] - 12:12
**ANA** [3] - 1:17, 1:22, 3:1
**analyzed** [1] - 15:19
**analyzing** [1] - 15:8
**AND** [2] - 2:10, 17:9
**AND/OR** [1] - 17:13
**ANDREW** [1] - 1:3
**ANGELES** [1] - 2:12
**answer** [1] - 13:7
**ANY** [1] - 17:12
**anyway** [1] - 11:20
**appearances** [1] - 3:7
**appreciate** [3] - 3:20, 5:21, 14:9
**appropriate** [2] - 16:22, 16:23
**approval** [1] - 4:18
**ARE** [1] - 17:13
**arena** [2] - 11:4, 16:8
**argue** [1] - 3:18
**argument** [2] - 8:9, 16:24
**arguments** [2] - 8:15, 17:1
**asserting** [1] - 6:17
**assign** [1] - 5:6
**assigned** [1] - 4:21
**assignment** [2] - 4:17, 4:25
**assignments** [1] - 12:10

**associates** [1] - 4:1
**assume** [1] - 13:17
**assure** [1] - 5:15
**attachment** [1] - 6:7
**attacking** [1] - 6:18
**authorization** [1] - 11:15
**authorizations** [4] - 9:1, 12:25, 13:4, 13:18
**authorizes** [1] - 8:16

## B

**BAIRD** [2] - 1:21, 17:17
**Baird** [1] - 17:16
**bankruptcy** [3] - 4:17, 5:1, 5:3
**bar** [1] - 13:19
**bargained** [1] - 9:5
**based** [4] - 7:8, 8:20, 13:3, 15:17
**basis** [1] - 11:16
**Bay** [4] - 8:21, 9:2, 9:3, 9:7
**became** [1] - 7:19
**becomes** [1] - 7:15
**behalf** [1] - 3:10
**BEHALF** [2] - 2:3, 2:9
**behind** [1] - 12:14
**benefit** [1] - 4:25
**best** [3] - 5:20, 15:19, 15:25
**better** [2] - 4:3, 7:25
**big** [1] - 11:4
**Bill** [1] - 3:12
**binding** [2] - 14:5, 14:8
**birth** [1] - 6:16
**Blanca** [1] - 5:24
**blood** [1] - 4:23
**board** [1] - 11:20
**bolster** [1] - 6:1
**BOULEVARD** [1] - 2:4
**breach** [1] - 14:3
**brief** [1] - 9:25
**briefly** [1] - 12:4
**Bristol** [7] - 3:5, 3:8, 4:13, 4:15, 4:17, 5:1, 8:13
**BRISTOL** [2] - 1:4, 2:3
**Bristol's** [1] - 8:15
**broadly** [1] - 12:10

## C

**CA** [2] - 2:5, 2:12
**CALIFORNIA** [4] - 1:2, 1:17, 1:22, 3:1
**California** [2] - 9:21, 11:1
**CalPERS** [1] - 9:9
**cannot** [1] - 13:2
**career** [1] - 11:3
**carry** [1] - 10:23
**carve** [1] - 12:13

**carve-out** [1] - 12:13
**Casa** [1] - 5:24
**case** [39] - 4:10, 5:2, 5:23, 7:16, 7:20, 7:22, 8:5, 8:17, 8:21, 8:23, 9:3, 9:5, 9:6, 9:8, 9:9, 9:13, 9:17, 9:19, 9:20, 9:21, 9:22, 9:23, 10:3, 10:14, 11:2, 11:3, 11:4, 11:5, 11:8, 11:9, 11:10, 12:6, 12:14, 13:1, 14:2, 14:3, 15:1, 16:25
**cases** [5] - 6:3, 7:1, 8:18, 10:25, 13:4
**causes** [5] - 5:20, 6:2, 9:18, 10:21
**CCRA** [1] - 1:21
**CENTRAL** [1] - 1:2
**CENTURY** [1] - 2:11
**certain** [1] - 3:23
**certainly** [1] - 11:11
**CERTIFICATE** [1] - 17:8
**CERTIFY** [1] - 17:9
**challenge** [1] - 14:3
**chambers** [1] - 8:7
**chance** [1] - 15:14
**CHARGED** [1] - 17:12
**CIGNA** [8] - 1:10, 2:10, 3:6, 3:10, 3:12, 6:11, 6:14, 6:17
**CIRCUIT** [1] - 17:12
**cite** [3] - 8:18, 9:17, 12:2
**cited** [4] - 7:20, 7:22, 8:7, 11:1
**claim** [9] - 4:8, 5:7, 9:11, 9:12, 10:11, 11:19, 12:6, 13:3, 13:24
**claims** [6] - 8:14, 11:16, 12:11, 12:12, 12:15, 13:23
**clarifying** [1] - 10:1
**clear** [1] - 4:11
**CLERK** [1] - 3:5
**clerks** [2] - 8:3, 8:4
**clients** [1] - 16:1
**closely** [1] - 10:20
**coincidentally** [1] - 9:23
**common** [4] - 8:6, 11:23, 16:23, 16:25
**COMPANY** [2] - 1:10, 2:10
**Company** [1] - 3:6
**company** [1] - 11:13
**complaint** [13] - 4:11, 6:6, 6:19, 8:10, 12:16, 12:19, 12:22, 13:12, 13:14, 15:5, 16:7, 16:9, 16:20
**completely** [1] - 8:8
**concealment** [1] - 10:22
**concern** [1] - 4:21
**concerned** [2] - 10:5, 10:6
**concluded** [1] - 17:6
**CONFERENCE** [1] - 17:14

**CONFORMANCE** [1] - 17:13
**Congress** [2] - 16:4, 16:5
**consider** [2] - 3:25, 16:15
**considering** [1] - 14:5
**consistent** [1] - 12:11
**construction** [4] - 11:2, 11:7, 11:9, 11:10
**contact** [1] - 12:24
**contains** [2] - 12:7, 12:10
**context** [1] - 5:11
**contract** [16] - 8:15, 9:11, 9:12, 9:18, 10:3, 10:6, 10:14, 12:19, 12:20, 12:23, 12:24, 13:3, 14:3
**contributing** [2] - 8:6, 16:23
**cord** [1] - 3:16
**core** [1] - 15:6
**corporations** [2] - 4:19, 4:23
**CORRECT** [1] - 17:9
**correct** [3] - 8:10, 9:16, 13:25
**counsel** [1] - 12:15
**court** [1] - 5:3
**Court** [17] - 3:21, 4:18, 5:6, 5:12, 5:15, 5:25, 7:7, 7:15, 7:16, 8:13, 9:25, 11:1, 11:24, 11:25, 12:6, 14:21
**COURT** [30] - 1:1, 1:21, 3:7, 3:13, 3:19, 3:23, 4:6, 4:9, 5:13, 7:9, 7:17, 8:2, 8:12, 8:22, 9:15, 10:2, 11:17, 12:8, 13:8, 13:14, 13:21, 14:1, 14:8, 14:11, 14:14, 14:16, 15:6, 15:23, 16:3, 16:16
**Court's** [2] - 5:22, 14:7
**courts** [1] - 8:14
**coverage** [1] - 8:16
**creative** [1] - 13:15
**creditors** [1] - 5:1
**CSR** [1] - 1:21
**cure** [1] - 12:18
**customary** [1] - 8:25

## D

**Dad** [1] - 3:24
**damage** [1] - 11:9
**damages** [4] - 10:7, 10:13, 10:24, 11:7
**DATE** [1] - 17:17
**dates** [4] - 6:8, 6:16, 12:17
**daughter** [1] - 3:23
**days** [2] - 10:13, 14:23
**dealing** [1] - 4:8
**decided** [2] - 7:21, 9:21
**deciding** [1] - 8:5
**decision** [1] - 11:6
**defect** [3] - 11:3, 11:8, 11:9
**defendant** [1] - 12:3

**DEFENDANTS** [1] - 2:9
**Defendants** [1] - 1:12
**defendants** [3] - 3:10, 15:17, 16:4
**DEPOSIT** [1] - 17:13
**designed** [2] - 15:14, 15:16
**despite** [1] - 6:25
**destroy** [1] - 4:1
**destroyed** [3] - 4:2, 4:3, 4:4
**detail** [1] - 5:25
**detailed** [1] - 6:14
**difference** [2] - 7:11, 7:12
**different** [2] - 8:23, 10:24
**difficult** [3] - 10:8, 10:9, 15:25
**difficulties** [1] - 15:9
**digest** [1] - 3:22
**directors** [1] - 4:15
**discovery** [4] - 15:15, 15:17, 16:6, 16:8
**disinterested** [1] - 4:22
**distress** [1] - 11:9
**District** [1] - 7:15
**DISTRICT** [3] - 1:1, 1:2, 1:21
**documentation** [1] - 15:1
**done** [1] - 11:2
**DONOVAN** [4] - 2:9, 3:11, 3:17, 17:3
**Donovan** [2] - 3:12, 3:14
**doubt** [2] - 12:2, 13:16
**doubts** [5] - 8:13, 11:24, 11:25
**drafted** [2] - 13:12, 13:15

## E

**early** [1] - 3:21
**EAST** [1] - 2:11
**easy** [1] - 6:22
**economic** [4] - 10:5, 10:12, 10:25, 13:9
**ego** [1] - 4:13
**either** [1] - 15:3
**elevated** [1] - 17:1
**Elrich** [1] - 11:1
**EMERY** [1] - 2:10
**emotional** [1] - 11:8
**employee** [2] - 5:6, 5:8
**enacted** [1] - 12:12
**ENCINITAS** [2] - 2:4, 2:5
**end** [2] - 12:16
**entity** [2] - 9:10, 9:12
**equivalent** [1] - 7:15
**ERISA** [10] - 6:1, 6:5, 6:18, 6:19, 6:24, 6:25, 12:15, 12:20, 12:23, 16:11
**essence** [1] - 4:13
**essentially** [1] - 11:15
**establish** [1] - 10:4

**ET** [4] - 1:4, 1:10, 2:3, 2:10
**et** [2] - 3:6
**evaluate** [1] - 5:12
**evaluated** [1] - 7:8
**example** [1] - 7:19
**exchange** [2] - 14:19, 14:23
**Exhibit** [2] - 6:7, 12:16
**expensive** [1] - 15:17
**express** [1] - 12:1
**extra** [1] - 16:10

## F

**fact** [3] - 4:21, 5:9, 15:16
**facts** [1] - 9:19
**fair** [1] - 11:5
**fairly** [1] - 3:14
**faith** [1] - 14:12
**far** [1] - 12:25
**favor** [1] - 9:18
**fearful** [1] - 8:17
**FEE** [1] - 17:12
**fees** [1] - 5:4
**FEES** [1] - 17:12
**felt** [1] - 7:14
**figure** [1] - 4:4
**file** [1] - 16:1
**filed** [1] - 6:13
**final** [2] - 7:19, 14:22
**firm** [1] - 3:24
**first** [5] - 3:19, 4:7, 8:3, 8:10, 11:21
**flaws** [1] - 12:18
**FLOOR** [1] - 2:4
**focus** [1] - 10:11
**FOR** [1] - 17:12
**FOREGOING** [1] - 17:9
**forms** [1] - 8:15
**forth** [2] - 13:5, 15:18
**forward** [1] - 12:13
**four** [1] - 12:21
**FOURTH** [1] - 1:22
**frankly** [2] - 8:1, 15:8
**fraud** [4] - 10:4, 10:11, 10:21, 11:16
**fraudulent** [1] - 10:22
**Friday** [1] - 3:25
**full** [3] - 5:11, 6:15, 7:7
**fully** [1] - 10:10
**fundamental** [1] - 12:18

## G

**game** [3] - 4:22, 4:25, 5:10
**gather** [1] - 15:14
**given** [2] - 7:5, 14:6
**governmental** [1] - 9:10
**grant** [1] - 7:10
**great** [2] - 3:24, 16:24

**growlingly** [1] - 10:9
**guess** [1] - 10:17
**GUILFORD** [1] - 1:3
**Guilford** [1] - 8:7
**guts** [1] - 4:23

## H

**HAMMOND** [7] - 2:10, 3:9, 12:4, 12:9, 13:12, 13:16, 17:5
**Hammond** [2] - 3:10, 3:17
**hamstrung** [1] - 7:1
**handled** [1] - 9:23
**happy** [1] - 13:7
**hard** [2] - 7:2, 7:13
**Haven** [2] - 4:14, 4:16
**heads** [1] - 16:17
**HEALTH** [2] - 1:10, 2:10
**Health** [1] - 3:6
**hear** [2] - 3:19, 12:3
**heart** [2] - 7:14, 14:6
**HEREBY** [1] - 17:9
**HIPAA** [1] - 6:9
**hits** [2] - 7:19, 7:20
**hold** [2] - 7:6, 7:10
**holding** [2] - 9:8, 11:6
**Holdings** [1] - 3:5
**HOLDINGS** [2] - 1:4, 2:3
**holds** [1] - 13:2
**home** [1] - 11:10
**Honor** [18] - 3:9, 3:11, 3:17, 3:20, 4:5, 5:14, 5:23, 6:4, 7:12, 8:11, 8:20, 10:19, 12:4, 13:6, 13:16, 14:13, 17:4, 17:5
**HONORABLE** [1] - 1:3
**hoping** [1] - 5:17
**hybrid** [1] - 5:18

## I

**identification** [1] - 6:15
**identified** [1] - 6:7
**identify** [1] - 6:8
**implicate** [2] - 6:1, 6:19
**implications** [1] - 11:23
**implied** [6] - 8:15, 9:11, 9:18, 12:19, 12:24, 13:3
**important** [1] - 8:3
**IN** [4] - 2:3, 2:9, 17:10, 17:13
**Inc** [1] - 3:6
**inclination** [1] - 11:18
**including** [1] - 14:5
**incorporate** [1] - 15:2
**individuals** [2] - 4:15, 6:8
**information** [22] - 5:21, 6:5, 6:9, 6:11, 6:12, 7:8, 11:13, 14:20, 14:24, 14:25, 15:3, 15:4, 15:5, 15:11, 15:12,

15:15, 15:20, 16:2, 16:12, 16:14
**initials** [1] - 12:17
**injury** [2] - 4:20, 5:9
**input** [1] - 5:22
**instance** [1] - 6:17
**insufficient** [1] - 15:4
**insurance** [1] - 11:12
**INSURANCE** [2] - 1:10, 2:10
**Insurance** [1] - 3:6
**insured** [1] - 8:17
**insurer** [1] - 8:16
**intend** [2] - 10:7, 10:14
**intention** [1] - 14:4
**intentional** [2] - 10:21, 10:22
**investment** [1] - 4:24
**involved** [1] - 5:24
**Iqbal/Twombly** [7] - 15:7, 15:8, 15:10, 15:13, 15:16, 15:19, 15:23
**IS** [1] - 17:9
**issue** [11] - 4:20, 5:5, 5:15, 6:3, 9:25, 12:21, 13:8, 13:11, 14:22, 15:6, 15:18
**issued** [1] - 3:13
**issuing** [2] - 3:21, 3:25

### J

**job** [1] - 5:7
**John** [1] - 3:8
**JOHN** [2] - 2:3, 2:3
**JR** [1] - 2:9
**Judge** [5] - 7:21, 8:7, 9:14, 9:15, 9:17
**JUDGE** [1] - 1:3
**judged** [1] - 15:4
**judgment** [1] - 5:2
**JUDICIAL** [1] - 17:14
**July** [1] - 6:13

### K

**KATE** [1] - 2:10
**Kate** [1] - 3:9
**keep** [1] - 10:10
**kind** [5] - 5:14, 5:18, 10:8, 14:19, 16:25
**KOH** [1] - 9:15
**Koh** [4] - 7:21, 9:14, 9:15, 9:17

### L

**land** [1] - 5:19
**language** [1] - 6:25
**large** [1] - 3:24
**last** [5] - 4:4, 7:9, 7:17, 7:21, 9:13
**LAW** [1] - 2:3

**law** [11] - 3:23, 3:24, 6:2, 8:3, 8:6, 8:14, 11:23, 13:1, 16:19, 16:23, 16:25
**lawsuit** [1] - 6:13
**lay** [1] - 6:23
**leave** [9] - 4:12, 7:5, 7:10, 11:18, 11:20, 13:23, 14:6, 14:11, 14:22
**LESS** [1] - 17:12
**lest** [1] - 12:2
**level** [1] - 5:25
**Lexis** [1] - 7:20
**Life** [1] - 3:6
**LIFE** [2] - 1:10, 2:10
**limit** [1] - 12:12
**limitation** [2] - 12:7, 12:10
**limited** [1] - 6:9
**limiting** [1] - 11:6
**list** [1] - 8:18
**lists** [1] - 12:17
**litigation** [1] - 11:3
**live** [1] - 16:21
**logistics** [1] - 5:15
**look** [3] - 4:19, 16:21
**looked** [1] - 5:23
**looking** [3] - 4:20, 5:25, 10:20
**LOS** [1] - 2:12
**loss** [5] - 10:5, 10:12, 10:25, 11:12, 13:9
**lost** [1] - 4:24

### M

**man's** [1] - 5:19
**manage** [1] - 10:6
**MARIE** [1] - 2:10
**matter** [5] - 8:1, 8:10, 8:14, 16:18, 17:2
**MATTER** [1] - 17:11
**MCDERMOTT** [1] - 2:10
**mean** [2] - 4:14, 11:24
**meaning** [1] - 14:25
**means** [1] - 16:7
**mechanism** [1] - 14:19
**meet** [1] - 13:10
**member** [1] - 6:15
**mention** [1] - 10:9
**mentioned** [4] - 9:13, 11:23, 12:16, 12:22
**merely** [1] - 12:1
**microphone** [1] - 3:15
**might** [7] - 8:17, 10:17, 11:22, 14:2, 15:19, 16:22, 16:25
**minute** [1] - 4:5
**MIRIAM** [2] - 1:21, 17:17
**Miriam** [1] - 17:16
**mispronounced** [1] - 12:9

**misrepresentation** [5] - 10:22, 10:23, 13:10, 13:24, 14:2
**modern** [1] - 10:12
**modestly** [1] - 8:6
**MONDAY** [2] - 1:18, 3:1
**morning** [2] - 3:9, 3:11
**motion** [2] - 7:6, 13:5
**MR** [26] - 3:8, 3:11, 3:17, 3:20, 4:3, 4:7, 4:10, 5:14, 7:12, 7:18, 8:11, 8:20, 8:23, 9:16, 10:19, 13:25, 14:4, 14:10, 14:13, 14:15, 14:17, 15:22, 15:24, 16:11, 17:3, 17:4
**MS** [6] - 3:9, 12:4, 12:9, 13:12, 13:16, 17:5
**must** [2] - 15:7, 16:24
**MVB11893@aol.com** [1] - 1:23

### N

**names** [2] - 6:9, 6:15
**NC** [2] - 1:4, 2:3
**need** [4] - 6:11, 6:12
**negligent** [4] - 10:23, 11:10, 13:24, 14:2
**network** [1] - 5:18
**never** [1] - 15:9
**new** [1] - 8:4
**next** [1] - 12:15
**non** [2] - 6:9, 6:25
**non-ERISA** [1] - 6:25
**non-HIPAA** [1] - 6:9
**north** [2] - 7:21, 9:14
**notion** [1] - 8:12
**numbers** [2] - 6:15
**nutshell** [1] - 11:16

### O

**obligation** [3] - 6:5, 6:20, 16:13
**odd** [1] - 15:18
**OF** [8] - 1:2, 1:16, 2:3, 2:3, 2:9, 17:10, 17:14
**OFFICE** [1] - 2:3
**officers** [1] - 4:15
**OFFICIAL** [2] - 1:21, 17:17
**often** [2] - 8:4, 13:15
**olden** [1] - 10:13
**once** [1] - 3:24
**one** [5] - 10:25, 11:18, 11:19, 13:24, 14:18
**opinion** [3] - 8:9, 9:20, 11:5
**opportunity** [2] - 5:11, 7:7
**opposite** [1] - 16:5
**oral** [5] - 9:12, 9:18, 12:19, 12:24, 13:3

**order** [4] - 7:4, 7:15, 7:19
**Orthopedic** [2] - 9:7, 9:9
**otherwise** [2] - 6:25, 15:15
**ourselves** [1] - 14:5
**out-of-network** [1] - 5:18
**outside** [1] - 9:11
**overall** [1] - 8:12
**oversight** [1] - 4:18

### P

**Pacific** [3] - 8:21, 9:3, 9:7
**pacific** [1] - 9:2
**paid** [2] - 8:25, 9:4
**papers** [1] - 13:5
**paragraph** [1] - 6:6
**PARK** [1] - 2:11
**part** [6] - 4:25, 5:2, 8:20, 9:8, 14:18, 15:11
**party** [1] - 4:22
**patient** [2] - 12:17, 12:23
**patients** [1] - 12:21
**pay** [2] - 5:3, 11:15
**payment** [1] - 11:14
**people** [1] - 4:24
**perhaps** [1] - 16:11
**permit** [1] - 12:13
**place** [1] - 14:19
**plaintiff** [5] - 3:8, 13:2, 13:22, 15:12, 15:13
**Plaintiffs** [1] - 1:6
**plaintiffs** [1] - 13:15
**PLAINTIFFS** [1] - 2:3
**plan** [3] - 12:20, 12:23, 16:13
**plans** [10] - 6:1, 6:12, 6:21, 6:23, 6:24, 6:25, 7:5, 14:24, 14:25, 15:2
**plausibility** [1] - 15:9
**pleading** [3] - 6:3, 7:1, 15:3
**point** [10] - 4:6, 4:7, 6:6, 7:3, 8:3, 9:6, 9:13, 10:2, 11:17, 14:4
**pointed** [1] - 6:4
**policies** [1] - 6:23
**policy** [3] - 6:15, 11:6
**position** [1] - 11:13
**possibility** [1] - 7:4
**possible** [1] - 14:18
**potential** [1] - 5:20
**precedent** [1] - 7:23
**preemption** [2] - 6:18
**present** [5] - 5:11, 7:7, 7:25, 13:19, 16:20
**PRESIDING** [1] - 1:3
**pretty** [1] - 7:13
**procedural** [1] - 5:15
**proceed** [1] - 9:1
**proceedings** [1] - 17:6
**PROCEEDINGS** [2] - 1:16,

4

17:10
**produce** [2] - 14:21, 15:1
**prohibited** [2] - 9:10, 12:11
**promise** [1] - 10:15
**Prop** [1] - 12:11
**property** [1] - 11:9
**proposition** [1] - 8:7
**protect** [1] - 15:17
**prove** [1] - 10:8
**provide** [4] - 5:24, 6:9, 6:20, 14:21
**provided** [2] - 6:14, 7:4
**provider** [1] - 5:18
**providing** [1] - 9:1
**PSLRA** [1] - 16:4
**public** [3] - 8:1, 9:12, 11:6
**pull** [1] - 3:14
**punitive** [3] - 10:7, 10:13, 10:24
**put** [3] - 7:10, 15:5, 15:24
**putting** [1] - 7:5

## Q

**qualify** [1] - 16:14
**questions** [1] - 13:6
**quite** [1] - 7:23

## R

**rate** [2] - 8:25, 11:14
**rather** [1] - 7:10
**reach** [1] - 3:15
**read** [1] - 11:2
**reading** [1] - 11:5
**real** [1] - 15:25
**really** [2] - 7:1, 15:5
**reasoning** [1] - 12:14
**record** [3] - 7:7, 7:25, 8:1
**RECORDED** [1] - 17:10
**recoverable** [2] - 11:7
**recovers** [1] - 5:1
**REDUCTION** [1] - 17:13
**refer** [3] - 6:6, 9:7, 9:22
**referred** [1] - 9:20
**regarding** [1] - 13:18
**REGULATIONS** [1] - 17:14
**rejected** [1] - 8:15
**relief** [1] - 11:19
**remaining** [1] - 10:21
**remind** [1] - 8:4
**reply** [1] - 13:5
**REPORTER** [2] - 1:21, 17:17
**REPORTER'S** [1] - 1:16
**representative** [1] - 5:8
**request** [2] - 11:21, 16:12
**require** [1] - 16:13
**respect** [1] - 12:6
**respond** [1] - 14:12

responding [1] - 17:1
**response** [1] - 8:19
**rest** [1] - 11:11
**review** [2] - 3:21, 11:22
**reviewed** [1] - 15:10
**risk** [1] - 16:20
**routinely** [1] - 8:14
**Rule** [2] - 6:20, 15:9
**rule** [4] - 10:5, 10:12, 10:25, 16:6
**ruled** [1] - 9:17
**ruling** [6] - 4:7, 5:22, 7:13, 14:7, 14:22, 16:20
**run** [2] - 12:14, 16:20

## S

**SACV19-00709-AG** [2] - 1:8, 3:5
**SANTA** [3] - 1:17, 1:22, 3:1
**securities** [2] - 16:4, 16:8
**see** [3] - 15:9, 16:17, 16:22
**sentence** [1] - 7:17
**September** [1] - 9:22
**SEPTEMBER** [2] - 1:18, 3:1
**series** [1] - 13:1
**service** [3] - 6:8, 6:16, 12:17
**services** [1] - 9:2
**set** [2] - 13:5, 15:18
**settlement** [1] - 5:2
**shaking** [1] - 16:17
**shareholders** [1] - 4:15
**shooting** [1] - 5:16
**shotgun** [1] - 5:16
**similar** [4] - 7:22, 9:19, 9:21, 9:24
**simply** [1] - 12:18
**situation** [3] - 5:18, 13:9, 15:25
**skin** [3] - 4:22, 4:25, 5:10
**SL** [3] - 1:4, 2:3, 3:5
**sometimes** [1] - 15:19
**sorry** [1] - 4:1
**sort** [2] - 14:11, 15:20
**Specialist** [2] - 9:8, 9:9
**specifically** [1] - 6:24
**Spine** [1] - 9:21
**spreadsheet** [1] - 6:14
**squarely** [1] - 13:1
**standards** [1] - 13:10
**state** [1] - 6:2
**STATES** [2] - 1:1, 17:14
**States** [1] - 16:3
**stating** [1] - 14:3
**statute** [1] - 6:13
**STENOGRAPHICALLY** [1] - 17:10
**sticks** [1] - 5:17
**stop** [1] - 6:13

**STREET** [1] - 1:22
**string** [1] - 12:2
**strongly** [1] - 14:5
**submission** [2] - 16:18, 17:2
**submit** [2] - 5:5, 9:4
**substantial** [1] - 5:2
**substantially** [1] - 9:24
**succeed** [1] - 13:2
**sufficiently** [1] - 6:19
**suggested** [1] - 12:13
**SUITE** [2] - 1:22, 2:11
**supporting** [1] - 9:8
**Supreme** [2] - 7:16, 12:6
**sustain** [1] - 8:13

## T

**technically** [1] - 16:12
**tentative** [5] - 3:14, 3:21, 11:1, 11:22, 12:5
**tentatives** [1] - 3:25
**THAT** [1] - 17:9
**THE** [37] - 2:3, 2:9, 3:5, 3:7, 3:13, 3:19, 3:23, 4:6, 4:9, 5:13, 7:9, 7:17, 8:2, 8:12, 8:22, 9:15, 10:2, 11:17, 12:8, 13:8, 13:14, 13:21, 14:1, 14:8, 14:11, 14:14, 14:16, 15:6, 15:23, 16:3, 16:16, 17:9, 17:10, 17:11, 17:13, 17:14
**third** [1] - 4:22
**THIS** [1] - 17:12
**thoughtful** [1] - 12:5
**throw** [2] - 5:16, 10:4
**timing** [1] - 14:19
**today** [1] - 3:18
**took** [2] - 7:13
**TOWER** [25] - 2:3, 2:3, 3:8, 3:20, 4:3, 4:7, 4:10, 5:14, 7:12, 7:18, 8:11, 8:20, 8:23, 9:16, 10:19, 13:25, 14:4, 14:10, 14:13, 14:15, 14:17, 15:22, 15:24, 16:11, 17:4
**Tower** [2] - 3:8, 3:19
**TRANSCRIPT** [3] - 1:16, 17:10, 17:12
**treatment** [2] - 8:16, 9:1
**troubles** [1] - 15:7
**TRUE** [1] - 17:9
**trustee** [1] - 4:19
**trustee's** [1] - 5:3
**trying** [3] - 4:4, 5:16, 15:25
**turning** [1] - 13:22
**two** [4] - 4:19, 10:21, 13:23, 14:21
**type** [1] - 16:14
**types** [1] - 11:7

## U

**U.S** [1] - 1:21
**UCL** [3] - 4:8, 12:6, 12:11
**UCR** [1] - 8:25
**under** [7] - 5:5, 6:4, 6:20, 16:11, 16:18, 16:19, 17:2
**union** [1] - 5:7
**United** [1] - 16:3
**UNITED** [2] - 1:1, 17:14
**unless** [1] - 15:17
**up** [3] - 5:17, 7:21, 9:14
**usual** [1] - 8:25

## V

**verifications** [3] - 13:1, 13:4, 13:18
**verifies** [1] - 8:16
**verify** [1] - 11:14
**viable** [2] - 16:7, 16:9
**voters** [1] - 12:12
**vs** [1] - 3:6
**Vs** [1] - 1:8

## W

**week** [1] - 7:21
**weekend** [2] - 4:1, 4:2
**weeks** [1] - 14:21
**WEST** [1] - 1:22
**Westlaw** [1] - 7:20
**wholeheartedly** [1] - 12:5
**WILL** [1] - 2:10
**WILLIAM** [1] - 2:9
**WITH** [1] - 17:13
**write** [1] - 8:9
**written** [3] - 9:11, 12:20, 12:23

## Y

**year** [1] - 8:4
**yourself** [1] - 14:8