**MCDERMOTT WILL & EMERY LLP**
WILLIAM P. DONOVAN, JR. (SBN 155881)
wdonovan@mwe.com
BRETT MEYERHOFF (SBN 323041)
bmeyerhoff@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

Attorneys for Defendants
CIGNA HEALTH AND LIFE INSURANCE
COMPANY; CIGNA BEHAVIORAL HEALTH,
INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., a California corporation, in its capacity as the assignee for SURE HAVEN, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, a Connecticut corporation; CIGNA BEHAVIORAL HEALTH, INC., a Connecticut corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 8:19-cv-00709-AG-ADS<br><br>**DEFENDANTS CIGNA HEALTH AND LIFE INSURANCE COMPANY AND CIGNA BEHAVIORAL HEALTH, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF EMILY RUSSELL AND KRISTA SNOW**<br><br>**Date:** September 28, 2020<br>**Time:** 1:30 p.m.<br>**Judge:** Hon. Philip S. Gutierrez<br>**Dept:** 6A |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 28, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Philip S. Gutierrez of the United States District Court for the Central District of California, located in Courtroom 6A, of the above-entitled Court, located at First Street Courthouse, 350 West 1st Street, 6th Floor, Los Angeles, California 90012-4565, defendants Cigna Health and Life Insurance Company and Cigna Behavioral Health, Inc. (collectively, "Cigna"), will and hereby do move the Court for summary judgment as to all remaining causes of action for relief asserted against them by plaintiff Bristol SL Holdings, Inc. ("Bristol") in the Second Amended Complaint filed on or about February 5, 2020 (the "SAC") pursuant to Federal Rules of Civil Procedure 56.

Cigna is entitled to summary judgment on all of Bristol's remaining causes of action—breach of oral contract (COA 1), breach of implied contract (COA 2), and promissory estoppel (COA 3)—on the following independent grounds:

*First*, Cigna is entitled to summary judgment on Bristol's causes of action for alleged breach of oral and implied contract because Cigna did not enter into promises to pay Sure Haven, Inc. ("Sure Haven") on the verification of benefits calls at issue. Bristol offers no evidence supporting its claim that any agreements were formed. Moreover, the undisputed evidence is that Cigna telephone agents were never authorized to enter into binding agreements on such calls with Sure Haven. Cigna's commitment to pay the subject claims (if any) was only determined after submission of claims by Sure Haven and pursuant to the operative terms of the patients' benefit plans. Moreover, it is Cigna's policy to play a disclaimer before these verification of benefits and pre-authorization calls which clearly indicated to Sure Haven that Cigna was not guaranteeing coverage or payment.

*Second*, Cigna is entitled to summary judgment on Bristol's cause of action for promissory estoppel because Bristol has offered no evidence that Cigna made a "clear

and unambiguous promise" to pay for the claims at issue. Instead, Cigna's disclaimers clearly show no such promise was made to Sure Haven. Likewise, courts have recognized these calls are common in the healthcare industry and are understood not to give rise to a promise to pay. Sure Haven's reliance on these calls as a promise to pay was clearly not reasonable.

Simply stated, Cigna is entitled to summary judgment as a matter of law on the undisputed—and undisputable facts—governing this case. Indeed, these arguments were recently adopted in another Cigna case. *See, e.g.*, *Advanced Ambulatory Surgical Center, Inc. v. Conn. Gen. Life Ins. Co.*, 261 F. Supp. 2d 889, 896 (N.D. Ill. 2017).

This motion is based on this notice of motion and motion for summary judgment, the attached memorandum of points and authorities, the declarations of Emily Russell and Krista Snow, the statement of uncontroverted facts, the files, records, and pleadings already on file in this action, and such other and further papers and arguments as may be submitted to the Court.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 9th, 2020 due to the availability of Bristol's counsel.

Dated: July 15, 2020         **MCDERMOTT WILL & EMERY LLP**

By:  */s/ William P. Donovan, Jr.*
WILLIAM P. DONOVAN, JR.
Attorneys for Defendants
CIGNA HEALTH AND LIFE
INSURANCE COMPANY; CIGNA
BEHAVIORAL HEALTH, INC.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................. 1

II. RELEVANT FACTUAL BACKGROUND ......................................................... 1

    A. The Parties ................................................................................................... 1

    B. The Verification of Benefits and Pre-Authorization Calls ....................... 2

        1. Sure Haven Calls to Cigna Telephone Numbers ........................... 3

        2. Sure Haven Calls to Non-Cigna Telephone Numbers .................. 5

    C. Bristol's Mischaracterization of the Verification of Benefit and Pre-Authorization Calls ..................................................................................... 5

    D. Procedural History ...................................................................................... 5

III. LEGAL STANDARD ............................................................................................ 6

IV. ARGUMENT .......................................................................................................... 7

    A. Cigna Is Entitled to Summary Judgment on Bristol's Oral and Implied and Breach of Contract Claims (COA 1-2) ................................. 7

    B. Cigna Is Entitled to Summary Judgment on Bristol's Promissory Estoppel Claim (COA 3) ............................................................................ 11

V. CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*,
   2020 WL 2121372 (C.D. Cal. May 4, 2020) .......................................................... 13

*Advanced Ambulatory Surgical Center, Inc. v. Conn. Gen. Life Ins. Co.*,
   261 F. Supp. 3d 889 (N.D. Ill. 2017) ............................................................... 12, 13

*Am. Employers Grp., Inc. v. Emp't Dev. Dep't*,
   154 Cal. App. 4th 836, 65 Cal. Rptr. 3d 233 (2007) ............................................... 8

*Ambulatory Infusion Therapy Specialists, Inc. v. UniCare Life & Health Ins. Co.*,
   2007 WL 1520994 (S.D. Tex. May 22, 2007) ....................................................... 12

*Cedars Sinai Med. Ctr. v. Mid West Nat'l Life Ins. Co. of Tenn.*,
   118 F. Supp. 2d 1002 (C.D. Cal. 2000) ................................................................... 9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................ 6, 7

*Mortg. Grader, Inc. v. Costco Wholesale Corp.*,
   89 F. Supp. 3d 1055 (2015) ..................................................................................... 6

*Mountain View Surgical Ctr. v. Cigna Health Corp.*,
   2015 WL 519066 (C.D. Cal. Feb. 9, 2015) ............................................................. 7

*Orthopedic Specialists of S. Cal. v. Pub. Empls.' Ret. Sys.*,
   228 Cal. App. 4th 644 (2014) .................................................................................. 8

*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
   12 Cal. App. 5th 200 (2017) .................................................................................... 8

*Pain Mgmt. Specialists v. Blue Shield of Cal. Life & Health Ins. Co.*,
   2015 WL 546025 (C.D. Cal. Feb. 9, 2015) ........................................................... 11

*Regents of the Univ. of Cal. v. Aetna US Health of Cal., Inc.*,
   2011 WL 13227844 (C.D. Cal. Mar. 15, 2011) ................................................. 8, 10

v

*Stanford Hosp. & Clinics v. Multinational Underwriters, Inc.*,
  2008 WL 5221071 (C.D. Cal. Dec. 12, 2008) ............................................... 8, 9, 10

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*,
  520 F. Supp. 2d 1184 (C.D. Cal. 2007) ....................................................... 9, 12, 13

*TML Recovery, LLC v. Humana Inc.*,
  2019 WL 3208807 (C.D. Cal. Mar. 4, 2019) ......................................................... 8

*Yari v. Producers Guild of Am., Inc.*,
  161 Cal. App. 4th 172 (2008) .............................................................................. 11

**Statutes**

Cal. Civil Code § 1550 ............................................................................................... 8

Cal. Civil Code § 1565 ............................................................................................... 8

Cal. Civil Code § 1580 ............................................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 56(a) .................................................................................................. 6

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

This fundamentally flawed lawsuit should never have been filed. Through a series of motions to dismiss and orders of this Honorable Court denying improper attempts by Plaintiff Bristol SL Holdings, Inc. ("Bristol") to amend their claims, only three of the original causes of action are currently pending. There is only one theory of recovery remaining, namely that binding obligations between Cigna and former provider Sure Haven somehow arose during verification of benefits calls for certain patients back in 2015.

As set forth below, Bristol's attempt to transform routine verification of benefits and authorization calls into binding contracts (or claim promissory estoppel) is entirely without basis. Courts have found that these routine calls do not give rise to a binding contract, and Bristol has offered no evidence the calls at issue should be treated any differently. Moreover, because Cigna's obligation to pay providers is determined only following an evaluation of claims submitted *after* services are rendered in accordance with the patient's operative benefit plan, there is no factual or legal basis for Bristol to try to assert that somehow obligations were made before any services were rendered. In reality, Cigna Health and Life Insurance Company and Cigna Behavioral Health, Inc. (collectively, "Cigna") put Sure Haven on notice with disclaimers before the calls that no binding obligations were being created during the discussions. In fact, some of the calls at issue were not even made to Cigna at all. Accordingly, the three remaining causes of action in the operative Second Amended Complaint (the "SAC") should now be subject to summary judgment.

## II. RELEVANT FACTUAL BACKGROUND

### A. The Parties

Bristol is the assignee of claims held by Sure Haven, Inc. ("Sure Haven"). *See* Statement of Uncontroverted Facts ("UF") 1. Sure Haven was a residential substance abuse treatment facility, which filed a voluntary Chapter 11 bankruptcy petition.

UF 2. Sure Haven provided substance abuse and medical health treatment to patients who were covered by health benefit plans that were administered by defendants Cigna Health and Life Insurance Company or Cigna Behavioral Health, Inc. (collectively "Cigna"). UF 3. Bristol has put at issue hundreds of claims for 102 Sure Haven patients that purportedly had health plans administered by Cigna. UF 3. The dates of service for these claims begin on January 1, 2015 and end on December 28, 2015. UF 4.

Cigna administers claims for healthcare benefits plans sponsored by employers. Declaration of Emily Russell ("Russell Decl.") ¶ 5. As part of its role, Cigna provides the individuals covered by those plans ("members") with access to a network of providers, who have contracted to accept established fees in exchange for being part of Cigna's provider network ("in-network" providers). Russell Decl. ¶ 6.

For providers that are not part of Cigna's network ("out-of-network" providers), like Sure Haven, Cigna does not have a contractual arrangement and does not have a specific agreement with the provider to pay certain rates. Russell Decl. ¶ 8. Instead, as a claims administrator, Cigna must process claims according to the terms and limitations set forth in the each member's health benefit plan. UF 7.

### B. The Verification of Benefits and Pre-Authorization Calls

Lacking a contract or pre-agreed rate with Cigna, out-of-network providers, like Sure Haven, often contact Cigna by phone to confirm that the patient has out-of-network benefits before admitting or providing treatment to any Cigna patient. Russell Decl. ¶ 10. This call is typically called a "Verification of Benefits" call. Russell Decl. ¶ 11. On these calls, Cigna representatives inform the provider whether the Cigna member has out-of-network insurance benefits. UF 8. The call representative may also verify the member's deductibles, out-of-pocket maximums and co-insurance percentages specified by the member's health benefit plan. UF 9.

Deductibles, out-of-pocket maximums, and co-insurance percentages reflect the apportionment of responsibility for payment between the health plan and the member. Russell Decl. ¶ 14. They do *not* reflect what Cigna has determined the provider should be paid. Russell Decl. ¶ 14. For an out-of-network provider, the allowed amount is only determined after receiving the claim, reviewing it, and by applying the plan's terms and limitations to the provider's charge. UF 10.

In addition, some health benefits plans require pre-authorization of services prior to certain treatments. Russell Decl. ¶ 17. Providers may call Cigna to obtain these authorizations ("Pre-Authorization" calls), but these calls are also not guarantees of coverage. Russell Decl. ¶ 18.

On any call with a provider, Cigna call representatives are not authorized to enter into commitments or contracts to pay or guarantee coverage. UF 11. Each claim must be administered by Cigna's claims department, and coverage will be determined based on the medical necessity of the service and the terms and limitations of the relevant health plans administered by Cigna. UF 12.

In the Complaint, Sure Haven alleges that it made Verification of Benefits and Pre-Authorization calls to Cigna throughout calendar year 2015. Dkt. 50, SAC, Ex. C. Bristol lists each of the telephone numbers Sure Haven called for each of the patients at issue. *Id.* Many of these numbers are Cigna telephone numbers, but some are not telephone numbers affiliated with Cigna at all. UF 22.

*1.     Sure Haven Calls to Cigna Telephone Numbers*

Since 2013, Cigna's practice has been to play a disclaimer on its primary IVR system when a provider or member makes a verification call. UF 13. For example, the Complaint suggests that Sure Haven called the following telephone numbers for the vast majority of claims:  (800) 244-6224, (800)-874-7489, (800) 900-3791, (800) 797-3895, (800) 700-1092, (800) 351-4598, (800) 887-8945, (800) 797-4392, and (800)

882-4462. UF 14. Calls to these telephone numbers were handled by Cigna's primary IVR for medical benefits. UF 15.

After selecting the "Eligibility" or "Verification of Benefits" option, Cigna's IVR system played the following pre-recorded message:

> By continuing with this call, you understand, accept and agree that the following covered services information does not guarantee coverage or payment and is subject to all benefit plan provisions. Please refer to the Summary Plan Description for coverage. Payment for services will be based on medical necessity, plan provisions, including limitations and exclusions, and eligibility at the time of service.

UF 16. The system does not allow a provider, like Sure Haven, to opt out of hearing this pre-recorded message. UF 17. This particular message has preceded every Verification of Benefits call received by Cigna on its main IVR since February 2013. Snow Decl. ¶ 9.

Sure Haven also claims it made Pre-Authorization calls to the following telephone numbers: (800) 244-6224, (800)-874-7489, (800) 900-3791, (800) 797-3895, (800) 700-1092, (800) 351-4598, (800) 887-8945, (800) 797-4392, and (800) 882-4462. UF 19. Calls to these telephone numbers were also handled by Cigna's primary IVR for medical benefits. UF 19.

After selecting the "Pre-Authorization" option, Cigna's primary IVR system for medical played the following pre-recorded message:

> Please be aware, pre-approval is not a guarantee of coverage. Coverage and covered services are contingent upon the patient's eligibility on the date(s) services are rendered and the patient's covered services plans and policies. Coverage and covered services also may be dependent on your CIGNA HealthCare network participation. If you are not a participating provider in the plan's network, out-of-network covered services may apply.

UF 20. The system does not allow a provider, like Sure Haven, to opt out of hearing this pre-recorded message. UF 21. This particular message has preceded every Pre-Authorization call received by Cigna on its main IVR since February 2013. Snow Decl. ¶ 13.

4

### 2. *Sure Haven Calls to Non-Cigna Telephone Numbers*

For 10 patients at issue, the SAC concedes that Sure Haven called a telephone number that was not associated with Cigna. UF 22. Some of these telephone numbers appear to be associated with other claims administrator (like Banner Health or Anthem), or a plan sponsor (Teamsters Welfare Trust) or the government (Healthcare.gov). Snow Decl. ¶ 14, Ex. A. When Sure Haven called these numbers, they did not speak with a Cigna call representative or Cigna employee. UF 23. None of these third-parties were authorized to commit Cigna on any contract or commitment. UF 24.

## C. Bristol's Mischaracterization of the Verification of Benefits and Pre-Authorization Calls

For each of the hundreds of claims at issue, Bristol alleges that Cigna made an unambiguous promise to pay Bristol certain percentages of the "Usual and Customary Rate" ("UCR") on every standard Verification of Benefits and Pre-Authorization calls. SAC ¶¶ 36-37, Ex. C.

Bristol has produced no evidence in this case, however, that Cigna or its representatives made such promises on these calls. As explained above, Bristol's allegations are inconsistent with undisputed evidence that Cigna's call representatives were not authorized to make such promises and that Cigna played disclaimers before the calls reinforcing it was not guaranteeing payment or coverage. *See* UF 11-12, 16, 20. Moreover, for a number of the claims at issue, Sure Haven did not even call a phone number associated with Cigna or speak with a Cigna representative who could have made the promises Bristol and Sure Haven claim were made. *See* UF 22-24; Snow Decl. ¶¶ 14-15.

## D. Procedural History

Bristol filed its original complaint against Cigna on April 15, 2019 alleging twelve causes of action. (Dkt. No. 1.) Cigna subsequently moved to dismiss all of

Bristol's claims. (Dkt. No. 17.)  On September 24, 2019, the Court granted Cigna's motion finding that all of Bristol's claims were deficiently pled. (Dkt. No. 38.)

Bristol filed its First Amended Complaint ("FAC") on October 28, 2019.  (Dkt. No. 42.) On January 6, 2020, the Court dismissed all but three claims: (1) oral contract; (2) implied contract; and (3) promissory estoppel. (Dkt. No. 49.) Bristol filed the SAC re-pleading its intentional misrepresentation/fraudulent inducement claims. (Dkt. No. 50.) Cigna moved to dismiss the fraud claims, and the Court granted that motion with prejudice on April 21, 2020. (Dkt. No. 61.) The Court denied leave for Bristol to file a third amended complaint on June 30, 2020. (Dkt. No. 70.) Thus, at the time of this motion, only the SAC's three above-mentioned claims remain.

## III.  LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the non-moving party, shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law." *Mortg. Grader, Inc. v. Costco Wholesale Corp.*, 89 F. Supp. 3d 1055, 1059 (2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).) A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970).)

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party does not have the ultimate burden of persuasion at trial, the moving party meets its burden of production and persuasion by either producing

6

evidence negating an essential element of the nonmoving party's claim or defense, or showing that the nonmoving party does not have enough evidence to carry its ultimate burden of persuasion at trial. *Id.* at 325.

## IV. ARGUMENT

While the Court held Bristol had pled enough under the permissive standard of Rule 8(a) to state claims for breach of oral contract (COA 1), implied contract (COA 2), and promissory estoppel (COA 3), (Dkt. No. 49 at 4-6), Bristol has failed to adduce *any* evidence supporting these claims. Cigna is entitled to summary judgment for that reason alone. Regardless, for Bristol's breach of an oral or implied contract, there is no genuine dispute of material fact that Cigna did not consent to form a contract. Likewise, for the promissory estoppel claim (COA 3), there is no genuine dispute of material fact that Cigna did not make an "unambiguous" promise to pay for the services at issue, or that Bristol could have reasonably relied on the information provided during the calls as a promise of payment.

Accordingly, Cigna is entitled to summary judgment as to Bristol's three remaining claims.

### A. Cigna Is Entitled to Summary Judgment on Bristol's Oral and Implied and Breach of Contract Claims (COA 1-2).

To prove a claim for breach of an oral or implied contract Bristol must show "(1) the existence of a contract, (2) performance or excuse for nonperformance, (3) defendant's breach, and (4) damages." *Mountain View Surgical Ctr. v. Cigna Health Corp.,* 2015 WL 519066, at *2 (C.D. Cal. Feb. 9, 2015). Bristol has failed to offer any evidence that a contract existed between Sure Haven and Cigna. In fact, the evidence is all to the contrary. Therefore, Cigna is entitled to summary judgment on Bristol's oral and implied contract claims.

It is axiomatic that there can be no contract unless the parties consent thereto, *i.e.*, have a meeting of the minds on all material points. *Am. Employers Grp., Inc. v.*

*Emp't Dev. Dep't*, 154 Cal. App. 4th 836, 65 Cal. Rptr. 3d 233 (2007). Indeed, "consent is not mutual, unless the parties all agree upon the same thing in the same sense." Cal. Civ. Code §1580. If there is no evidence demonstrating assent by both parties to the same thing, there is no mutual consent and therefore, no contract. Cal. Civil Code §§1550, 1565 and 1580.

Courts in this District and others have addressed the factual scenario at issue here, and have routinely recognized that "[t]he relevant case law weighs against a finding that verification alone constitutes consent, especially when a disclaimer is provided." *Stanford Hosp. & Clinics v. Multinational Underwriters, Inc.*, 2008 WL 5221071, at *6 (C.D. Cal. Dec. 12, 2008). Indeed, courts applying California law have awarded both dismissal and summary judgment to insurers like Cigna on both breach of oral and implied contract claims where the basis of the insurer's consent were alleged promises made by call representatives on verification of benefit or pre-authorization calls. *See, e.g. TML Recovery, LLC v. Humana Inc.*, 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019) (dismissing claims for breach of implied contract and oral contract because "an insurer's verification is not the same as a promise to pay"); *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216-17 (2017) (no contract where insurer allegedly promised that provider "would be paid," which allegedly "led [provider] to believe that it would be paid a portion of percentage or its total billed charges, which charges correlated with [UCR]"); *Orthopedic Specialists of S. Cal. v. Pub. Empls.' Ret. Sys.*, 228 Cal. App. 4th 644, 649 (2014) (affirming that no implied contract is created where insurer authorized treatment and stated that provider "would be paid" for that treatment); *Regents of the Univ. of Cal. v. Aetna US Health of Cal., Inc.,* 2011 WL 13227844, at *5-6 (C.D. Cal. Mar. 15, 2011) (awarding summary judgment to insurer on breach of oral contract claim where provider claimed oral contract was formed by call representative on verification of benefits call); *Stanford Hosp.*, 2008 WL 5221071, at *7 (same); *Cedars Sinai Med.*

*Ctr. v. Mid West Nat'l Life Ins. Co. of Tenn.*, 118 F. Supp. 2d 1002, 1008-09 (C.D. Cal. 2000) (same); *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F. Supp. 2d 1184, 1194-95 (C.D. Cal. 2007) (same for breach of implied contract claim).

In the SAC, Bristol goes to great lengths to allege that it was Sure Haven's understanding that each of these Verification of Benefits and Pre-Authorization calls gave rise to an agreement to pay some percentage of "UCR" for the claims at issue. (*See* SAC, Ex. C.) While the Court credited those allegations at the motion to dismiss phase, (Dkt. No. 49 at 4-6), Bristol has provided no evidence that Sure Haven's account of these conversations is actually true (it is not) or that Cigna consented to this arrangement. Indeed, Courts have recognized "there was no meeting of the minds regarding the payment of the claim" when the plaintiff only provided evidence of its own belief that a contract had been made. *See, e.g.*, *Stanford*, 2008 WL 5221071, at *7.

Here, in fact, the evidence is undisputed that Cigna did not consent to an agreement to pay for the services at issue on the Verification of Benefit and Pre-Authorization calls referenced in the SAC. The Cigna call representatives on these calls were not authorized by Cigna to enter into enter into binding commitments or contracts for payment with providers, like Sure Haven. UF 11. In fact, for 10 of the patients of issue, Bristol's allegations show they called numbers that were not even affiliated with Cigna. UF 22-24; *see also* Snow Decl., ¶14, Ex. A. On those calls, Sure Haven did not speak with a Cigna representative at all, let alone someone who was authorized to bind Cigna to an oral or implied agreement. UF 23-24. In all cases, each claim must be processed by Cigna's claims department, and coverage will be determined based on the medical necessity of the service and the terms and limitations of the relevant health benefits plans administered by Cigna. UF 12.

Moreover, for the vast majority of claims at issue, calls were made to telephone numbers that went through Cigna's primary IVR system. UF 13-14; *see also* Snow

Decl. Ex. A. Before Verification of Benefits and Pre-Authorization calls on this IVR system, a disclaimer was played explicitly stating that the calls are not "guarantees of coverage or payment." UF 16, 20. It was not possible for Sure Haven to opt out of these disclaimers. UF 17, 21. Thus, if there was any doubt about whether Cigna consented to the baseless agreements alleged by Bristol, Cigna's disclaimer, which Sure Haven representatives no doubt heard, dispels it. Ultimately, courts have recognized this evidence is sufficient to show a lack of consent at the summary judgment stage. *See, e.g.*, *Stanford*, 2008 WL 5221071, at *5-7 (finding a lack of consent plaintiff failed to adduce any evidence that defendant had consented to alleged oral agreement, where call representatives were not authorized to provide claim approvals, and policies and disclaimer specifically disclaimed promise to pay).

In the face of this evidence, Bristol will no doubt claim it understood these communications differently. However, Bristol's allegations make no sense. Allowing a call representative to create an agreement to pay for services with an out-of-network provider (particularly without knowledge of the rate the provider charges) irrespective of plan terms and limitations would completely upend Cigna's network structure, and Cigna would never consent to such an arrangement. *See* Russell Decl. ¶¶ 6-9. At the verification of benefit stage, Cigna has no knowledge what services will ultimately be provided, the codes that will be used to bill for those services, the rates that will be charged for those services, or whether the services will be provided and billed in a manner consistent with Cigna's medical and billing guidelines. *See* UF 10, 12. Effectively, the terms of any supposed agreement are completely unknown.

Regardless, any attempt by Bristol to manufacture a dispute over what was said on the Verification of Benefits and Pre-Authorization calls does not create a genuine issue of material fact. *Regents*, 2011 WL 13227844, at *4 (holding that even if "there are many factual disputes at issue regarding exactly what occurred during the communications between the parties, these disputes are immaterial" because the

10

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 8:19-CV-00709-AG-ADS

"[r]elevant case law establishes . . . that insurance authorizations or precertifications–when coupled with disclaimers—are not binding contracts."). The law is clear that the calls did not give rise to a contract, and, in any event, Cigna's lack of consent to any contract is undisputed. Therefore, Cigna is entitled to summary judgment on the contract claims.

### B. Cigna Is Entitled to Summary Judgment on Bristol's Promissory Estoppel Claim (COA 3).

As the Court recognized in its motion to dismiss opinion, Bristol's promissory estoppel claim is "based on the same facts" as its contract claims. (Dkt. 49 at 6.) Put simply, those "facts" have not found any basis in the evidence, and therefore Bristol's promissory estoppel claim should fail for the same reasons as the contract claims. *See Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008) (Promissory estoppel is "the same as contract actions, but only missing the consideration element.").

Regardless, to prove a promissory estoppel claim a plaintiff must show "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Pain Mgmt. Specialists v. Blue Shield of Cal. Life & Health Ins. Co.*, 2015 WL 546025, at *2 (C.D. Cal. Feb. 9, 2015). There is no genuine dispute of fact about whether Cigna made a "clear and unambiguous" promise to pay for the services at issue in this case. It did not. Nor could Bristol have reasonably relied on any alleged promise made given the disclaimer played before the call and the understanding of what a "Verification of Benefits" and "Pre-Authorization" call mean in the industry. Therefore, summary judgment is appropriate for these two reasons.

*First*, Courts have routinely recognized that a Verification of Benefits calls are not a "clear and unambiguous promise" to pay for medical services. In attempting to

11

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 8:19-CV-00709-AG-ADS

prove a promissory estoppel claim, a provider may not transform "mere verification of a patient's benefits into a promise to pay for services." *See, e.g., Advanced Ambulatory Surgical Center, Inc. v. Conn. Gen. Life Ins. Co.*, 261 F. Supp. 3d 889, 897 (N.D. Ill. 2017) (granting insurer's motion for summary judgment on estoppel claim and holding that "confirming the availability and details of a patient's insurance benefits is not a concomitant promise of payment"); *see also Tenet Healthsystem*, 520 F. Supp. 2d at 1193–94 (granting summary judgment on estoppel claim and holding that health insurer did not manifest intent to pay for health provider's services merely by verifying insured's coverage status for medical provider); *Ambulatory Infusion Therapy Specialists, Inc. v. UniCare Life & Health Ins. Co.*, 2007 WL 1520994 (S.D. Tex. May 22, 2007) (granting summary judgment to insurer on estoppel claim because the provider failed to adduce evidence that the insurer promised during the pre-verification call to pay 75 percent of the provider's claim).

As with its contract claims, Bristol attempts to do just that by claiming standard calls were promises to pay. Indeed, Bristol alleges that Cigna did more than verify benefits, instead making a promise to Sure Haven to pay or guarantee coverage. But there is absolutely no evidence any such promise was actually made, and as set forth above, Cigna call representatives (or whoever Sure Haven spoke to on the non-Cigna numbers) were not authorized to make such a promise. UF 11-12, 22-24. Moreover, Cigna played a disclaimer explicitly stating it was ***not*** guaranteeing coverage or payment. UF 16, 20. Courts have recognized that when a disclaimer precedes the verification of benefits call, it is evidence that no promise to pay was made. *See, e.g.*, *Advanced Ambulatory*, 261 F. Supp. 3d at 897 (holding "case here for summary judgment is stronger" because of presence of "disclaimer of the sort that Cigna employed here before its agents spoke with" plaintiff's representatives).

Finally, courts applying California law have recognized that the specific promise that Bristol claims Cigna representatives made—that Cigna indicated reimbursement

would be based on UCR—does not give rise to a promissory estoppel claim. *See, e.g.*, *ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*, 2020 WL 2121372, at *6 (C.D. Cal. May 4, 2020) (dismissing promissory estoppel claim with identical theory to what Plaintiffs are pursuing here—that a defendant made an enforceable promise by allegedly stating during a verification call that it would "pay Plaintiff at its usual and customary rates."); *Pacific Bay*, 12 Cal. App. 5th at 216 (dismissing promissory estoppel claim where plaintiff alleged that it was led to believe it would be paid in accordance "with usual, reasonable and customary charges."). Put simply, the calls Bristol relies upon do not give rise to an enforceable promise and the estoppel claim can be dispatched for that independent reason.

*Second*, it would not have been reasonable for Bristol to believe that a Verification of Benefits or Pre-Authorization call could give rise to a promise to pay. "[C]ourts in the Central District of California have held that within the medical insurance industry, an insurer's verification is not the same as a promise to pay." *ABC Servs.*, 2020 WL 2121372, at *6. Indeed, Courts have recognized that standard Verification of Benefit and Pre-Authorization calls are consistent with the "customs, standards, practices, and procedures within the healthcare and insurance industries" and that a provider, like Sure Haven, "reasonably could not have interpreted a pre-authorization or authorization to be an agreement or guarantee to pay for the services rendered to the insured." *Tenet Healthsystem*, 520 F. Supp. 2d at 1193. In the unlikely event Sure Haven was unaware of the "customs, standards, practices, and procedures" of the healthcare industry, the disclaimer played before each call put Sure Haven on notice that Cigna was not promise making a promise to pay or guarantee coverage by providing a Verification of Benefits or Pre-Authorization. *See Advanced Ambulatory*, 261 F. Supp. 3d at 897 (suggesting that "ubiquity" of disclaimer "is probative of whether the parties shared a common intention that Cigna, by verifying benefits."). Likewise, it would not been reasonable for Sure Haven to believe that a call to a non-

Cigna telephone number, where it spoke to a non-Cigna representative, could give rise to an enforceable promise against Cigna. Sure Haven's claims to the contrary are therefore not reasonable and its promissory estoppel claim fails for this alternative reason.

## V. CONCLUSION

Based on the foregoing, Cigna respectfully requests that the Court grant this motion and grant summary judgment on Bristol's three remaining claims.

Dated: July 15, 2020                **MCDERMOTT WILL & EMERY LLP**

By:   */s/ William P. Donovan, Jr.*
       WILLIAM P. DONOVAN, JR.
       Attorneys for Defendants
       CIGNA HEALTH AND LIFE
       INSURANCE COMPANY; CIGNA
       BEHAVIORAL HEALTH, INC.