1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3              HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING

4      BRISTOL SL HOLDINGS, NC., ET AL.,   )
                                           )
5                                          )
                                           )
6                          Plaintiffs,     )
                                           )
7                                          )
                                           )
8              Vs.                         )   No. SACV19-00709-AG
                                           )
9                                          )
                                           )
10     CIGNA HEALTH LIFE INSURANCE         )
       COMPANY, ET AL.,                    )
11                                         )
                                           )
12                                         )
                           Defendants.     )
13     _____ )

14

15

16               REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                    SANTA ANA, CALIFORNIA

18                   MONDAY, JANUARY 6, 2020

19

20

21

22

23            MIRIAM V. BAIRD, CSR 11893, CCRA
          OFFICIAL U.S. DISTRICT COURT REPORTER
24         411 WEST FOURTH STREET, SUITE 1-053
               SANTA ANA, CALIFORNIA 92701
25                   MVB11893@aol.com

```
 1                        A P P E A R A N C E S

 2

 3    IN BEHALF OF THE PLAINTIFFS,    JOHN W. TOWER
      BRISTOL SL HOLDINGS, NC., ET    LAW OFFICE OF JOHN W. TOWER
 4    AL., :                          2211 ENCINITAS BOULEVARD
                                      2ND FLOOR
 5                                    ENCINITAS, CA 92024

 6                                    MATTHEW M. LAVIN
                                      NAPOLI SHKOLNIK PLLC
 7                                    1750 TYSONS BOULEVARD SUITE
                                      1500
 8                                    MCLEAN, VA 22102

 9

10

11

      IN BEHALF OF THE DEFENDANTS,    WILLIAM P. DONOVAN, JR.
12    CIGNA HEALTH LIFE INSURANCE     MCDERMOTT WILL AND EMERY
      COMPANY, ET AL:                 2049 CENTURY PARK EAST
13                                    SUITE 3200
                                      LOS ANGELES, CA 90067-3206
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        SANTA ANA, CALIFORNIA; MONDAY, JANUARY 6, 2020; 10:55 A.M.

 2                            ---

 3

 4             THE CLERK:  Item 8, SACV19-00709, Bristol SL

 5    Holdings, Inc., vs. Cigna Health and Life Insurance Company.

 6             MR. TOWER:  Good morning, Your Honor.

 7             John Tower appearing for the plaintiff.

 8             MR. LAVIN:  Your Honor, Matthew Lavin for the

 9    plaintiff.

10             MR. DONOVAN:  Bill Donovan for Cigna.

11             THE COURT:  Okay.  So we issued our tentative.  Let

12    me just say the Court does not look favorably upon a 369-page

13    complaint with 2100 paragraphs.  Why was that necessary?

14             MR. TOWER:  Your Honor, we understand that.  The

15    degree of specificity that we felt was necessary to support

16    the claims, given the pleading standards that we have to deal

17    with, and given the information we wanted to convey because

18    of the fraud claims we were making, we felt that that was

19    appropriate and necessary.  I understand the length of the

20    complaint.  I would prefer a more brief complaint.  If you

21    look at it, though, each one of those paragraphs relating to

22    the patients identify very important information.  You could

23    almost take those out of the complaint but/for the previous

24    round of motion to dismiss where we were encouraged to bring

25    more information.
```

```
 1              So we're kind of between a rock and a hard place.
 2    One of the important --
 3              THE COURT:  You should begin by attacking the Court
 4    with an ironic statement.  Your Honor, you granted the
 5    motion.  You're telling me 2100 paragraphs is not enough
 6    while you're telling me -- all right.  So I understand the
 7    irony there.  I do think you could have hit the pleading
 8    requirements with fewer paragraphs, but I understand your
 9    dilemma.  It's a dilemma largely imposed by me and
10    Iqbal/Twombly.  Go ahead.
11              MR. TOWER:  Yes, Your Honor.  In terms of the
12    Court's tentative ruling --
13              THE COURT:  Yes.  Where I do grant leave to amend
14    mainly.
15              MR. TOWER:  Yes.  Actually, I'm going to limit my
16    comments to Sections 3.4.1.
17              THE COURT:  Excellent.
18              MR. TOWER:  And 3.4.2, Your Honor.
19              THE COURT:  Hold on.  Let me look at 3.4.1.
20    Economic Loss rule.  Okay.  Just a moment.
21              MR. TOWER:  The two sections are related because
22    we're dealing with the Economic Loss rule and the fraud
23    claims.
24              THE COURT:  Yes.  Go ahead.
25              MR. TOWER:  First as to the Economic Loss rule
```

```
 1    analysis, there's two reasons why we believe the Economic
 2    Loss rule does not apply in this case.  One is there an is an
 3    exception to that rule for fraudulent inducement claims,
 4    which we believe we've addressed.  I'll address that in my
 5    second part of this argument.
 6            The other reason and more importantly is, I think,
 7    for public policy and for precedent, there is no reason --
 8    in fact, there are many reasons not to apply the economic
 9    loss rule to a case that involves an oral or implied contract
10    claim that is in dispute that is not an admitted contract
11    when there is also an alternative fraud claim that is
12    alleged, a separate alternative fraud claim.
13            THE COURT:  A fraud in the inducement or --
14            MR. TOWER:  Fraud in the inducement, Your Honor.
15            THE COURT:  Okay.  Let me just tell you where I'm
16    coming from and I really invite your argument.  I appreciate
17    the way you've honed in on it.  You know, we all sue for
18    breach of contract.  You made a promise; you didn't perform;
19    give me contract damages, which are limited and which don't
20    include punitive damages.  I've always been intrigued by the
21    prospect of adding maybe one more line to your 2100
22    paragraphs, but one more line that says, and when you made
23    that promise, you didn't intend it.  Boom.  Punitive damages.
24            I think the economic loss rule and maybe
25    Iqbal/Twombly are vehicles to cut back on that ability.
```

1    There are situations where I know you didn't just throw in,

2    when you made the promise you didn't intend.  I'm always

3    struggling whether this is a situation where that occurs.

4         That's always been my concern.  I'm not a fan of

5    Iqbal/Twombly, but to the extent it prevents you from simply

6    saying when you the made the contractual promise you didn't

7    intend to perform, I get punitive damages.  Well, I'm looking

8    at that carefully.  So I have that concern.  I do recognize

9    that sometimes the facts set up such that you can make an

10   appropriate Iqbal/Twombly plausibility specificity argument

11   that you get punitive damages because this isn't a

12   run-of-the-mill simple addition of fraud in the inducement.

13   Go ahead.

14        MR. TOWER:  Yes, Your Honor.

15        THE COURT:  Uh-huh.

16        MR. TOWER:  And we have alleged in the complaint --

17   I hesitate to mention the paragraph number 1986 that when the

18   representations were made, the defendants knew they would not

19   pay.  The following paragraph, the purpose of defendant's

20   purposes of promises to pay was to induce providers to admit

21   defendant's insureds and provide treatment to them.

22        THE COURT:  Okay.  Let me just say, what you just

23   read, sorry to say, is boilerplate.

24        MR. TOWER:  Correct.

25        THE COURT:  You aren't giving me more specific

```
 1    facts that move this to an area of plausibility.  You've
 2    stated exactly what I've stated 90 seconds ago, when he made
 3    the promise, he didn't intend.  You need to say, when he made
 4    the promise, he consulted with his vice president, and he
 5    knew it was impossible to perform, and yet he went ahead and
 6    did it, or when he made the promise, he knew that the
 7    shipment of goods had been prevented by a hurricane, and he
 8    knew it couldn't be -- I'm -- it couldn't be performed.  I'm
 9    talking about something other than simply saying, when he
10    made the promise, he knew he couldn't perform.  You know
11    what, you can say that in every breach of contract case and
12    expose the defendant to punitive damages.
13              MR. TOWER:  Agree and understood.
14              THE COURT:  So what more do you have?
15              MR. TOWER:  That was my preliminary comment.
16              THE COURT:  Good.
17              MR. TOWER:  What we have is if you look at the
18    complaint, we have alleged a pattern and a course of conduct
19    over 11 months where authorizations, specific authorizations
20    were given for treatment of hundreds of patients and then not
21    paid.  That's on Exhibit C to the complaint.  We also have
22    allegations that there was a course of dealing and a history
23    between these parties where our claims were authorized,
24    claims were paid.
25              Why -- so the Court might ask what is -- how is
```

1   this an inducement?  What is in it for the defendants?  Their

2   insureds get treated.  We put in all these preliminary

3   allegations to add some context here.  They have -- they go

4   and market Cigna -- all these other different insurance

5   companies market to these big companies that have these

6   employee benefit plans.  Here is the policy.  We write the

7   poilcy.  We'll administrate it.  We'll take care of it for

8   you.  We're giving you a policy that gives your high-level

9   employees or your employees you want to take care of the

10  right to go out of the network and get treatment.

11          If they were to say -- when we called their number

12  and we talk to their people and we're given an authorization

13  number, if they were to say, oh, you know what, we don't --

14  we're not going to pay.  You're out of the network.  We don't

15  like you.  There would be such a backlash by authorizing the

16  treatment, they are taking care of that issue so they can go

17  and compete with all of the other insurance companies and say

18  you can go out of the network.  You pay a little bit more,

19  but you have that option.  This de facto removes that.

20  That's what makes it more than just a breach of contract,

21  Your Honor, in our opinion.

22          I would add those authorization numbers are really

23  important.  If you look at the -- the Court indicated that

24  there is -- the names of the people we talked to, the names

25  of these company representatives are not listed.  There's a

1    reason for that.  A lot of times we don't get a name.  If we

2    do get a name, we get a pseudonym.  We get a name that they

3    use like a collection agency agent would.

4            If you look at the first complaint, we did mention

5    a few names.  We get a first name.  Sometimes we get a last

6    initial.  Three of the people that we identified in the first

7    complaint, it was Honey.  It was Angela.  It was Lauren.  The

8    names are really irrelevant.  What matters in this industry

9    is that authorization number, because when we submit the

10   claims, the authorization number is on the claims.  We've

11   provided over a hundred thousand documents, claim forms, and

12   all of that to the defendant.

13           So we're not just simply coming in here and

14   fishing, Your Honor.  We're also in a position where we're

15   asserting breach of contract, oral and implied.  At this

16   point those are in dispute.  Now, we apparently have gotten

17   through the pleading stage on that, at least at this point,

18   but in the future, we don't know for sure.  There is actually

19   the possibility that we could prove a claim for fraud but not

20   a claim for breach of contract.  They're different elements.

21   There's totally different elements in those.  Totally

22   different standards in those.  There's lots of reasons.

23           I'd also point out, Your Honor, we're not

24   requesting punitive damages in connection -- we're not

25   requesting extra contractual damages in connection with these

| | |
|---|---|
| 1 | fraud claims for a number of reasons.  That relates to the |
| 2 | economic loss argument, not just the exception fraudulent |
| 3 | inducement exception, but in general.  Should courts apply |
| 4 | the economic loss rule to oral or implied contracts?  I would |
| 5 | say public policy says no.  The cases actually support that. |
| 6 | Public policy -- |
| 7 | THE COURT:  Wait.  You say we should apply the |
| 8 | economic loss rule to written contracts but not to oral or |
| 9 | implied contracts? |
| 10 | MR. TOWER:  Yes. |
| 11 | THE COURT:  Okay. |
| 12 | MR. TOWER:  Here's why, public policy behind that |
| 13 | are written contracts -- the parties negotiate the risks, |
| 14 | they allocate risk.  They put terms in there.  In fact, in |
| 15 | the Court's tentative ruling, the Court cites to the United |
| 16 | Guarantee case.  United Guarantee vs. Countrywide.  In that |
| 17 | case, the contract specifically addressed contractually what |
| 18 | happens in the event of not just breach, but in the event of |
| 19 | fraud.  They contractually allocated the risk of fraud, the |
| 20 | remedies.  They dealt with it contractually.  That's one of |
| 21 | the huge public policies that the courts espouse as to why |
| 22 | that rule makes sense.  It doesn't happen in an oral or |
| 23 | implied agreement.  Maybe possibly but not likely. |
| 24 | The other public policy consideration is this |
| 25 | overlap of tort law and contract law somehow merging, which |

1    really is a focus on the remedy.  Is there going to be extra

2    contractual damage?  Here's why I think it's important that

3    the courts look at this distinction between an oral or

4    written contract or an implied written contract.  Those

5    public policies also -- these out-of-network providers, we're

6    kind of stuck between a rock and hard place, as I said.  We

7    don't have a contract relationship.  We allege a breach of an

8    oral or implied contract.  We don't know for sure how that is

9    going to play out.  It's been challenged aggressively.  I'm

10   sure.  It will continue to be challenged aggressively here.

11          We also have alternative claims that we can make.

12   Under pleading rules in federal court, we're entitled to

13   allege inconsistent alternative legal theories.

14          THE COURT:  Wait.  Did I contest that in my

15   tentative?

16          MR. TOWER:  I don't believe so, Your Honor.  The

17   point is not that you contested it.  None of these cases have

18   addressed that issue at the pleading stage.  The United

19   Guarantee Court was a written contract.  The Erlich case that

20   cited by the Court was a case in which there was a jury

21   trial.  The jury found no fraud.  So in that case, the

22   economic loss rule was irrelevant.  All they held was you

23   can't get extra contractual damages for breach of contract.

24   We don't dispute that.

25          The one case that is a little different is the UMG

1    Recordings case.  That case did not involve a written

2    contract.  It involved an oral agreement.  However, there was

3    not a cause of action for breach of oral contract asserted in

4    that case.  So the pleading rule never got addressed.  The

5    issue of could they have alleged both because they did not --

6    the counterclaim in that case did not allege breach of

7    contract.  It alleged fraud and other relief.

8            My point in bringing that up, Your Honor, is at

9    this stage, we shouldn't be forced to make an election.  We

10   should, assuming that we appropriately plead our fraud cause

11   of action, our fraudulent inducement cause of action, we

12   should be allowed to proceed.

13           THE COURT:  I don't -- I didn't intend anything in

14   my order to say you had to make an election now.  I

15   understand your argument.

16           MR. TOWER:  Maybe the terminology could be more

17   refined.  The point is that we're losing -- if the economic

18   loss rule is applied at this point in time, maybe -- we're

19   not making an election.  We're losing a right that I think we

20   should be allowed under the public policy of allowing

21   alternative pleadings.  I think to harmonize these policies

22   of the economic loss rule and allowing inconsistent

23   alternative theories, again, if the oral contract is in

24   dispute, it's a different case.  When there's a written

25   contract, generally the argument is, was there a breach or

1    was the contract violated somehow?

2           In an oral contract setting it is not so simple.  I

3    would submit, and in this case, it's the case, there's a

4    dispute is there even a contract?  That's why I think there's

5    a real important distinction to be made there, Your Honor.

6           THE COURT:  All right.  Well stated.  Thank you,

7    Counsel.

8           MR. TOWER:  Thank you.

9           THE COURT:  Let's hear from the defense.

10          MR. DONOVAN:  Thank you very much, Your Honor.  I

11   heard nothing in that argument to disturb Your Honor's

12   thoughtful tentative in your order back in September

13   dismissing with leave to amend the causes of action that were

14   attempted to be defended.  The only paragraph that counsel

15   for Bristol gave you to try to support the fraud claim was

16   completely boilerplate language, as Your Honor recognized.

17          THE COURT:  No.  He also said that within his 2100

18   paragraphs, there was a story of how it was to their

19   advantage or a necessity to them to make false statements in

20   these requests buried amongst all of the other factual

21   milieu.  It wasn't just the boilerplate you described.

22          MR. DONOVAN:  Well, Your Honor, I think there's

23   nothing in the 2,000 paragraphs that supports a fraud claim

24   or really any claim, as your thoughtful tentative ruling

25   demonstrates.  On the economic loss theory --

1          THE COURT:  I must say it is a little hard with

2   2100 paragraphs to see what fits to what.

3          MR. DONOVAN:  Well, even with respect to the oral

4   and implied contract theories that I want to get to in a

5   minute, what they're given us is sort of an illusion that

6   there's meaningful detail.  Right.  I've never seen a

7   complaint this long.  Candidly, I've never seen a complaint

8   even close to this that has actually provided Your Honor and

9   the defendants with so little to prove the claims.

10          To go back for a minute to the economic loss rule,

11   the tentative cites half a dozen cases.  They're on point.

12   They're persuasive.  We would submit they're controlling.

13   Bristol's counsel has not cited a single case to support

14   their unique theory that somehow the economic loss rule does

15   not apply.  The damages they're seeking in this case are

16   contract damages.  They've given Your Honor and Cigna no

17   specifics to support under 9(b) or otherwise their

18   misrepresentation claims.

19          I wanted to briefly address the oral and implied

20   contract claims, which Your Honor dismissed the first time

21   and suggested back in September it would be very difficult

22   for them to get over the hurdle.  In our view, they haven't

23   gotten over the hurdle.  I want to be laser focused because

24   it's been a long morning.  If Your Honor goes back to --

25          THE COURT:  No, it's a typical morning.

1    MR. DONOVAN:  Okay.  Good.  I'm going to take my

2    time.

3    THE COURT:  Well, now wait a minute --

4    MR. DONOVAN:  Your Honor, we -- I want to base this

5    on page 216 of the Pack Bay Recovery decision that Your Honor

6    cited both in September and now.  It's a case we rely upon

7    heavily.  The example that I'm going to use is what the --

8    the patient they refer to is 10049.  They're substantially

9    identical allegations for all these patients.  It's on pages

10   19 through 21 of the first amended complaint.

11   In our view, they don't come close to pleading an

12   implied or oral contract.  They don't plead a meeting of the

13   mind.  Here's why.  The language matches up almost

14   identically to Pack Bay.  Number one, in the 2,000 pages --

15   excuse me, two paragraphs let alone the allegations for this

16   plaintiff, they don't allege what specific services were

17   allegedly the service of the contract.

18   THE COURT:  Hold on.  Just a moment.

19   MR. DONOVAN:  Sure.

20   THE COURT:  Okay.  Go ahead.

21   MR. DONOVAN:  They don't give us a CPT code.  They

22   don't give us a procedure code.  There is no specifics as to

23   what the alleged treatment was all about.

24   Number two, if you go back for this patient or any

25   anothers, they don't allege they -- that they actually

1  provided the treatment.  If so, when.  Is it before the first

2  call?  Is it after the 12th call?  Your Honor, you don't know

3  and we don't know whether the treatment was provided and when

4  they allege it was provided.

5       Obviously, if they allege they provided services

6  before the first call, there can be no contract.  There can

7  be no agreement on which they base their claim.

8       The third thing is there's no agreement on payment.

9  What they've tried to do is to get around Your Honor's prior

10 order and Pac Bay and the other cases that we cited is to

11 allege that Cigna allegedly on the phone agreed to pay

12 various percentages of UCR -- of usual and customary charges

13 for unspecified treatment and unspecified days.  The problem

14 with that is they don't agree there was an agreement with

15 Cigna as to what the UCR rate is.  That's a critical point.

16      So now connecting the dots and going back to Pac

17 Bay, on page 216, 12 Cal.App.5th at 216 is the pin cite, the

18 point that -- the Court of Appeal in affirming the dismissal

19 of the case said that the type of treatment or the extent of

20 treatment is not described.  Same here as well.  It says, in

21 addition, it does not appear the parties reach an agreement

22 as to the rate Blue Shield would pay Pacific Bay.  It quotes

23 the allegation.  It says that plaintiffs allege that Blue

24 Shield would pay, quote, a portion or percentage of its total

25 bill charges, which charges correlated with usual,

1  reasonable, and customary charges, unquote.  That's what

2  they've done.

3          Sometimes forty percent.  Sometimes 50 percent.

4  Sometimes 70 percent.  But in the complaint in the front of

5  us, there's not even any description of what UCR meant.  Let

6  alone that Cigna agreed to some ill-defined definition of

7  usual and customary charges.

8          So for those reasons, Your Honor, we would urge you

9  to adopt your tentative except with respect to the implied

10  and oral contracts, since they're getting leave to amend, to

11  try to get them to fix it.  Because it's our view that the

12  various cases we cited Orthopedic, Tenet, Pac Bay, even

13  Children's Hospital, which we cite, Children's Hospital says

14  that bill charges are not an indicia or not necessarily not

15  the indicia of necessarily and customary charges.

16          So even taking their allegations at face value,

17  accepting the allegations as true, they have not even alleged

18  a viable either promissory estoppel or oral or implied

19  contract, because they haven't identified the treatment, the

20  rate for that treatment, and that there was any so-called

21  breach, because they haven't identified whether the treatment

22  was allegedly provided.

23          With that, Your Honor, I'll answer obviously any

24  questions you have.  That's the argument I wanted to make.

25          THE COURT:  Well argued, Mr. Donovan.  Anything to

1   close?

2           MR. TOWER:  Yes, Your Honor.

3           THE COURT:  That's, Mr. Tower; right?

4           MR. TOWER:  Yes, thank you.  Briefly.

5           THE COURT:  Oh, I do have a quick question.  If you

6   were to succeed wildly in this case, how much money would you

7   get?

8           MR. TOWER:  I think the demand of the complaint is

9   $8 million.  That wasn't your question probably.

10          THE COURT:  No.  So we're looking at 8 million.  I

11  was trying to figure out how much per page of the complaint.

12  The page is, you know, I'm required to look at

13  proportionality.  8 million is real money.  Go ahead.

14          MR. TOWER:  There's a lot of claims over a long

15  period --

16          THE COURT:  Yes, there is.

17          MR. TOWER:  -- let's put it that way.

18          Briefly, the Court distinguished Pacific Bay.

19  We've made an effort to do that as well.  It's an important

20  distinction that needs to be made.  Pacific Bay cases, it's

21  limited by the Court's own ruling to the very specific record

22  before that Court.  They made that clear in the first

23  paragraph of that opinion.

24          In that case, there was never a representation of

25  UCR made.  There was simply an allegation that the provider

1    thought they would get paid something that would be UCR, not

2    that they would get paid UCR, but that's what they believed

3    it would be.  So they got what they bargained for basically.

4    They got paid something.  That was also a low-payment case in

5    part.  So there's a distinction there.

6          Then there's a couple procedural matters to address

7    to the Court as well after this part is finished.

8          THE COURT:  Let's hear the procedural matter.

9          MR. TOWER:  On the Section 5.0, your concluding

10   paragraph of your tentative ruling on disposition, I think

11   this is part of the confusion that we created with our

12   complaint, perhaps, of, you know, which claims apply, which

13   causes of action apply to which claims.

14         THE COURT:  That's part of the problem.  We picked

15   it up when Mr. Donovan said, all we have is bare bone.  I

16   said, no within the 2100 is a holistic argument about

17   motivations, et cetera.  It's hard to put all of that

18   together, which is what I was trying to get at in what you

19   are now addressing.

20         MR. TOWER:  In fact, we do address UCR in those

21   allegations.  Here's my point.  Given the Court's ruling on

22   some of these other causes of action that we're not

23   addressing in this argument, I think what we're going to have

24   is assuming that the Court sticks with the tentative ruling

25   or something approximate to it, we would probably only amend

as to the three fraud claims.  In other words, we would not

address some of the other claims where we do have leave to

amend because they're somewhat moot by the other rulings.

What that means, though, however, is that we're

going to have -- all of the causes of action are going to

apply across the board to all of the patients.  There's not

going to be different categories of patients that these

claims only apply to these.  They're all going to be the same

claims.  All going to be based on these verification,

authorization calls, and the oral, implied contract, and

fraud claims.  That will simplify that part of the Court's

concern.

My other question was, is there an additional --

the Court talked about a spreadsheet, Your Honor.  When we

file an amended pleading, we're looking for a little bit of,

once again, wanting to provide the information in an

appropriate format.  It's difficult.  We're dealing with

HIPAA-protected information.  We're providing tons of

information offline.  We're providing a lot of information in

these exhibits with passwords so that they can be correlated

later.  It's hard for us.  We want to accommodate the Court

and the parties.

THE COURT:  All right.  Here's my response to that.

I must say, look at it from the Court's perspective.

Mr. Donovan noted we are a little busy today.  We are a

1    little busy in the back.  To look at 2100 paragraphs and 369

2    pages and determine what facts go where and what do they

3    establish is a challenge.  I was trying to find a way where

4    you might more succinctly help the Court determine what

5    allegations go to which claims of relief.

6                 MR. TOWER:  I think we can do that.

7                 THE COURT:  Look, I'll take out that line, and

8    perhaps -- I'll take out that line.  That's what I need.  I'm

9    trying to find a solution to the 2100 paragraphs.

10                MR. TOWER:  Understood, Your Honor.

11                THE COURT:  Anything else?

12                MR. TOWER:  Last procedural issue is we have a

13   mediation deadline.  I think we need some additional time to

14   meet that deadline.

15                THE COURT:  How did you get?  I only give that when

16   people ask.

17                MR. DONOVAN:  Your Honor, you are correct.  Having

18   been in your courtroom, they asked for an early mediation

19   deadline of January 31st.  That's why Your Honor gave us one.

20                THE COURT:  Yeah.  It what was only on your

21   request, but tell me what the problem is?

22                MR. TOWER:  There's not a problem.  In fact,

23   because we're in this pleading -- still in the pleading

24   stage, I'm bringing it up simply so we don't violate a

25   deadline.  I guess we are responsible for that deadline.  I

 1    wanted to bring it up with the Court so there wouldn't be any

 2    questions.

 3              THE COURT:  How do you feel about January 31st?

 4              MR. DONOVAN:  Your Honor, we'd like to mediate once

 5    the pleadings are settled, assuming something is still

 6    around.

 7              THE COURT:  All right.  You requested the mediation

 8    deadline.  You are now raising issues about it.  I strike the

 9    mediation deadline.  Do it at your convenience.  That's why I

10    don't like judges who cast down a thunderbolt of when you

11    conduct mediation.  I'm trusting the counsel.  I will trust

12    the counsel here.  You will not be in default on that.

13              Anything else before I take this under submission

14    and consider the good arguments made here today?

15              MR. DONOVAN:  Not for the defense.  Thank you very

16    much.

17              MR. TOWER:  Thank you.

18              THE COURT:  Good.  Thank you.

19              (Proceedings concluded at 11:22 a.m.)

20

21

22

23

24

25

```
1                           CERTIFICATE

2    I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

3    TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

4    THE ABOVE MATTER.

5    FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

6    REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

7    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

8

9    /s/ Miriam V. Baird            12/04/2020

10   MIRIAM V. BAIRD                      DATE
     OFFICIAL REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## /

**/s** [1] - 23:9

## 1

**1-053** [1] - 1:22
**10049** [1] - 15:8
**10:55** [1] - 3:1
**11** [1] - 7:19
**11893** [1] - 1:21
**11:22** [1] - 22:19
**12** [1] - 16:17
**12/04/2020** [1] - 23:9
**12th** [1] - 16:2
**19** [1] - 15:10
**1986** [1] - 6:17

## 2

**2,000** [2] - 13:23, 15:14
**2020** [2] - 1:18, 3:1
**2049** [1] - 2:10
**21** [1] - 15:10
**2100** [8] - 3:13, 4:5, 5:21, 13:17, 14:2, 19:16, 21:1, 21:9
**216** [3] - 15:5, 16:17
**2211** [1] - 2:4
**2ND** [1] - 2:4

## 3

**3.4.1** [2] - 4:16, 4:19
**3.4.2** [1] - 4:18
**31st** [2] - 21:19, 22:3
**3200** [1] - 2:11
**369** [1] - 21:1
**369-page** [1] - 3:12

## 4

**411** [1] - 1:22

## 5

**5.0** [1] - 19:9
**50** [1] - 17:3

## 6

**6** [2] - 1:18, 3:1

## 7

**70** [1] - 17:4

## 8

**8** [4] - 3:4, 18:9, 18:10, 18:13

## 9

**9(b** [1] - 14:17
**90** [1] - 7:2
**90067-3206** [1] - 2:11
**92024** [1] - 2:5
**92701** [1] - 1:22

## A

**a.m** [1] - 22:19
**A.M** [1] - 3:1
**ability** [1] - 5:25
**ABOVE** [1] - 23:4
**accepting** [1] - 17:17
**accommodate** [1] - 20:21
**action** [7] - 12:3, 12:11, 13:13, 19:13, 19:22, 20:5
**add** [2] - 8:3, 8:22
**adding** [1] - 5:21
**addition** [2] - 6:12, 16:21
**additional** [2] - 20:13, 21:13
**address** [5] - 5:4, 14:19, 19:6, 19:20, 20:2
**addressed** [4] - 5:4, 10:17, 11:18, 12:4
**addressing** [2] - 19:19, 19:23
**administrate** [1] - 8:7
**admit** [1] - 6:20
**admitted** [1] - 5:10
**adopt** [1] - 17:9
**advantage** [1] - 13:19
**affirming** [1] - 16:18
**agency** [1] - 9:3
**agent** [1] - 9:3
**aggressively** [2] - 11:9, 11:10
**ago** [1] - 7:2
**agree** [2] - 7:13, 16:14
**agreed** [2] - 16:11, 17:6
**agreement** [6] - 10:23, 12:2, 16:7, 16:8, 16:14, 16:21
**ahead** [6] - 4:10, 4:24, 6:13, 7:5, 15:20, 18:13
**AL** [4] - 1:4, 1:10, 2:4, 2:10
**allegation** [2] - 16:23, 18:25
**allegations** [8] - 7:22, 8:3, 15:9, 15:15, 17:16, 17:17, 19:21, 21:5
**allege** [9] - 11:7, 11:13, 12:6, 15:16, 15:25, 16:4, 16:5, 16:11, 16:23
**alleged** [7] - 5:12, 6:16, 7:18, 12:5, 12:7, 15:23, 17:17
**allegedly** [3] - 15:17, 16:11, 17:22
**allocate** [1] - 10:14
**allocated** [1] - 10:19

**allowed** [2] - 12:12, 12:20
**allowing** [2] - 12:20, 12:22
**almost** [2] - 3:23, 15:13
**alone** [2] - 15:15, 17:6
**alternative** [6] - 5:11, 5:12, 11:11, 11:13, 12:21, 12:23
**amend** [5] - 4:13, 13:13, 17:10, 19:25, 20:3
**amended** [2] - 15:10, 20:15
**ANA** [3] - 1:17, 1:22, 3:1
**analysis** [1] - 5:1
**AND** [2] - 2:10, 23:2
**AND/OR** [1] - 23:6
**ANDREW** [1] - 1:3
**Angela** [1] - 9:7
**ANGELES** [1] - 2:11
**anothers** [1] - 15:25
**answer** [1] - 17:23
**ANY** [1] - 23:5
**Appeal** [1] - 16:18
**appear** [1] - 16:21
**appearing** [1] - 3:7
**applied** [1] - 12:18
**apply** [9] - 5:2, 5:8, 10:3, 10:7, 14:15, 19:12, 19:13, 20:6, 20:8
**appreciate** [1] - 5:16
**appropriate** [3] - 3:19, 6:10, 20:17
**appropriately** [1] - 12:10
**approximate** [1] - 19:25
**ARE** [1] - 23:6
**area** [1] - 7:1
**argued** [1] - 17:25
**argument** [10] - 5:5, 5:16, 6:10, 10:2, 12:15, 12:25, 13:11, 17:24, 19:16, 19:23
**arguments** [1] - 22:14
**asserted** [1] - 12:3
**asserting** [1] - 9:15
**assuming** [3] - 12:10, 19:24, 22:5
**attacking** [1] - 4:3
**attempted** [1] - 13:14
**authorization** [5] - 8:12, 8:22, 9:9, 9:10, 20:10
**authorizations** [2] - 7:19
**authorized** [1] - 7:23
**authorizing** [1] - 8:15

## B

**backlash** [1] - 8:15
**Baird** [1] - 23:9
**BAIRD** [2] - 1:21, 23:10
**bare** [1] - 19:15
**bargained** [1] - 19:3
**base** [2] - 15:4, 16:7
**based** [1] - 20:9

**Bay** [8] - 15:5, 15:14, 16:10, 16:17, 16:22, 17:12, 18:18, 18:20
**begin** [1] - 4:3
**BEHALF** [2] - 2:3, 2:9
**behind** [1] - 10:12
**benefit** [1] - 8:6
**between** [4] - 4:1, 7:23, 11:3, 11:6
**big** [1] - 8:5
**Bill** [1] - 3:10
**bill** [2] - 16:25, 17:14
**bit** [2] - 8:18, 20:15
**Blue** [2] - 16:22, 16:23
**board** [1] - 20:6
**boilerplate** [3] - 6:23, 13:16, 13:21
**bone** [1] - 19:15
**boom** [1] - 5:23
**BOULEVARD** [1] - 2:4
**breach** [12] - 5:18, 7:11, 8:20, 9:15, 9:20, 10:18, 11:7, 11:23, 12:3, 12:6, 12:25, 17:21
**brief** [1] - 3:20
**briefly** [3] - 14:19, 18:4, 18:18
**bring** [2] - 3:24, 22:1
**bringing** [2] - 12:8, 21:24
**Bristol** [2] - 3:4, 13:15
**BRISTOL** [2] - 1:4, 2:3
**Bristol's** [1] - 14:13
**buried** [1] - 13:20
**busy** [2] - 20:25, 21:1
**but/for** [1] - 3:23

## C

**CA** [2] - 2:5, 2:11
**Cal.App.5th** [1] - 16:17
**CALIFORNIA** [4] - 1:2, 1:17, 1:22, 3:1
**candidly** [1] - 14:7
**care** [3] - 8:7, 8:9, 8:16
**carefully** [1] - 6:8
**case** [23] - 5:2, 5:9, 7:11, 10:16, 10:17, 11:19, 11:20, 11:21, 11:25, 12:1, 12:4, 12:6, 12:24, 13:3, 14:13, 14:15, 15:6, 16:19, 18:6, 18:24, 19:4
**cases** [6] - 10:5, 11:17, 14:11, 16:10, 17:12, 18:20
**cast** [1] - 22:10
**categories** [1] - 20:7
**causes** [4] - 13:13, 19:13, 19:22, 20:5
**CCRA** [1] - 1:21
**CENTRAL** [1] - 1:2
**CENTURY** [1] - 2:10

**CERTIFICATE** [1] - 23:1
**CERTIFY** [1] - 23:2
**cetera** [1] - 19:17
**challenge** [1] - 21:3
**challenged** [2] - 11:9, 11:10
**CHARGED** [1] - 23:5
**charges** [7] - 16:12, 16:25, 17:1, 17:7, 17:14, 17:15
**Children's** [2] - 17:13
**CIGNA** [2] - 1:10, 2:10
**Cigna** [7] - 3:5, 3:10, 8:4, 14:16, 16:11, 16:15, 17:6
**CIRCUIT** [1] - 23:5
**cite** [2] - 16:17, 17:13
**cited** [5] - 11:20, 14:13, 15:6, 16:10, 17:12
**cites** [2] - 10:15, 14:11
**claim** [10] - 5:10, 5:11, 5:12, 9:11, 9:19, 9:20, 13:15, 13:23, 13:24, 16:7
**claims** [22] - 3:16, 3:18, 4:23, 5:3, 7:23, 7:24, 9:10, 10:1, 11:11, 14:9, 14:18, 14:20, 18:14, 19:12, 19:13, 20:1, 20:2, 20:8, 20:9, 20:11, 21:5
**clear** [1] - 18:22
**CLERK** [1] - 3:4
**close** [3] - 14:8, 15:11, 18:1
**code** [2] - 15:21, 15:22
**collection** [1] - 9:3
**coming** [2] - 5:16, 9:13
**comment** [1] - 7:15
**comments** [1] - 4:16
**companies** [3] - 8:5, 8:17
**Company** [1] - 3:5
**company** [1] - 8:25
**COMPANY** [2] - 1:10, 2:10
**compete** [1] - 8:17
**complaint** [16] - 3:13, 3:20, 3:23, 6:16, 7:18, 7:21, 9:4, 9:7, 14:7, 15:10, 17:4, 18:8, 18:11, 19:12
**completely** [1] - 13:16
**concern** [3] - 6:4, 6:8, 20:12
**concluded** [1] - 22:19
**concluding** [1] - 19:9
**conduct** [2] - 7:18, 22:11
**CONFERENCE** [1] - 23:7
**CONFORMANCE** [1] - 23:6
**confusion** [1] - 19:11
**connecting** [1] - 16:16
**connection** [2] - 9:24, 9:25
**consider** [1] - 22:14
**consideration** [1] - 10:24
**consulted** [1] - 7:4
**contest** [1] - 11:14
**contested** [1] - 11:17
**context** [1] - 8:3

**continue** [1] - 11:10
**contract** [32] - 5:9, 5:10, 5:18, 5:19, 7:11, 8:20, 9:15, 9:20, 10:17, 10:25, 11:4, 11:7, 11:8, 11:19, 11:23, 12:2, 12:3, 12:7, 12:23, 12:25, 13:1, 13:2, 13:4, 14:4, 14:16, 14:20, 15:12, 15:17, 16:6, 17:19, 20:10
**contracts** [5] - 10:4, 10:8, 10:9, 10:13, 17:10
**contractual** [4] - 6:6, 9:25, 11:2, 11:23
**contractually** [3] - 10:17, 10:19, 10:20
**controlling** [1] - 14:12
**convenience** [1] - 22:9
**convey** [1] - 3:17
**correct** [2] - 6:24, 21:17
**CORRECT** [1] - 23:2
**correlated** [2] - 16:25, 20:20
**Counsel** [1] - 13:7
**counsel** [4] - 13:14, 14:13, 22:11, 22:12
**counterclaim** [1] - 12:6
**Countrywide** [1] - 10:16
**couple** [1] - 19:6
**course** [2] - 7:18, 7:22
**court** [1] - 11:12
**Court** [16] - 3:12, 4:3, 7:25, 8:23, 10:15, 11:19, 11:20, 16:18, 18:18, 18:22, 19:7, 19:24, 20:14, 20:21, 21:4, 22:1
**COURT** [42] - 1:1, 1:21, 3:11, 4:3, 4:13, 4:17, 4:19, 4:24, 5:13, 5:15, 6:15, 6:22, 6:25, 7:14, 7:16, 10:7, 10:11, 11:14, 12:13, 13:6, 13:9, 13:17, 14:1, 14:25, 15:3, 15:18, 15:20, 17:25, 18:3, 18:5, 18:10, 18:16, 19:8, 19:14, 20:23, 21:7, 21:11, 21:15, 21:20, 22:3, 22:7, 22:18
**Court's** [6] - 4:12, 10:15, 18:21, 19:21, 20:11, 20:24
**courtroom** [1] - 21:18
**courts** [3] - 10:3, 10:21, 11:3
**CPT** [1] - 15:21
**created** [1] - 19:11
**critical** [1] - 16:15
**CSR** [1] - 1:21
**customary** [4] - 16:12, 17:1, 17:7, 17:15
**cut** [1] - 5:25

**D**

**damage** [1] - 11:2
**damages** [11] - 5:19, 5:20, 5:23, 6:7, 6:11, 7:12, 9:24, 9:25, 11:23, 14:15, 14:16
**DATE** [1] - 23:10
**days** [1] - 16:13
**de** [1] - 8:19
**deadline** [7] - 21:13, 21:14, 21:19, 21:25, 22:8, 22:9
**deal** [1] - 3:16
**dealing** [3] - 4:22, 7:22, 20:17
**dealt** [1] - 10:20
**decision** [1] - 15:5
**default** [1] - 22:12
**defendant** [2] - 7:12, 9:12
**defendant's** [2] - 6:19, 6:21
**DEFENDANTS** [1] - 2:9
**Defendants** [1] - 1:12
**defendants** [3] - 6:18, 8:1, 14:9
**defended** [1] - 13:14
**defense** [2] - 13:9, 22:15
**defined** [1] - 17:6
**definition** [1] - 17:6
**degree** [1] - 3:15
**demand** [1] - 18:8
**demonstrates** [1] - 13:25
**DEPOSIT** [1] - 23:6
**described** [2] - 13:21, 16:20
**description** [1] - 17:5
**detail** [1] - 14:6
**determine** [2] - 21:2, 21:4
**different** [7] - 8:4, 9:20, 9:21, 9:22, 11:25, 12:24, 20:7
**difficult** [2] - 14:21, 20:17
**dilemma** [1] - 4:9
**dismiss** [1] - 3:24
**dismissal** [1] - 16:18
**dismissed** [1] - 14:20
**dismissing** [1] - 13:13
**disposition** [1] - 19:10
**dispute** [5] - 5:10, 9:16, 11:24, 12:24, 13:4
**distinction** [3] - 11:3, 13:5, 18:20, 19:5
**distinguished** [1] - 18:18
**DISTRICT** [3] - 1:1, 1:2, 1:21
**disturb** [1] - 13:11
**documents** [1] - 9:11
**done** [1] - 17:2
**DONOVAN** [12] - 2:9, 3:10, 13:10, 13:22, 14:3, 15:1, 15:4, 15:19, 15:21, 21:17, 22:4, 22:15
**Donovan** [4] - 3:10, 17:25, 19:15, 20:25

**dots** [1] - 16:16
**down** [1] - 22:10
**dozen** [1] - 14:11

**E**

**early** [1] - 21:18
**EAST** [1] - 2:10
**economic** [12] - 4:20, 5:8, 5:24, 10:2, 10:4, 10:8, 11:22, 12:17, 12:22, 13:25, 14:10, 14:14
**Economic** [3] - 4:22, 4:25, 5:1
**effort** [1] - 18:19
**either** [1] - 17:18
**election** [3] - 12:9, 12:14, 12:19
**elements** [2] - 9:20, 9:21
**EMERY** [1] - 2:10
**employee** [1] - 8:6
**employees** [2] - 8:9
**ENCINITAS** [2] - 2:4, 2:5
**encouraged** [1] - 3:24
**entitled** [1] - 11:12
**Erlich** [1] - 11:19
**espouse** [1] - 10:21
**establish** [1] - 21:3
**estoppel** [1] - 17:18
**et** [1] - 19:17
**ET** [4] - 1:4, 1:10, 2:3, 2:10
**event** [2] - 10:18
**exactly** [1] - 7:2
**example** [1] - 15:7
**excellent** [1] - 4:17
**except** [1] - 17:9
**exception** [3] - 5:3, 10:2, 10:3
**excuse** [1] - 15:15
**Exhibit** [1] - 7:21
**exhibits** [1] - 20:20
**expose** [1] - 7:12
**extent** [2] - 6:5, 16:19
**extra** [3] - 9:25, 11:1, 11:23

**F**

**face** [1] - 17:16
**fact** [4] - 5:8, 10:14, 19:20, 21:22
**facto** [1] - 8:19
**facts** [3] - 6:9, 7:1, 21:2
**factual** [1] - 13:20
**false** [1] - 13:19
**fan** [1] - 6:4
**favorably** [1] - 3:12
**federal** [1] - 11:12
**FEE** [1] - 23:5
**FEES** [1] - 23:5

**felt** [2] - 3:15, 3:18
**few** [1] - 9:5
**fewer** [1] - 4:8
**figure** [1] - 18:11
**file** [1] - 20:15
**finished** [1] - 19:7
**first** [9] - 4:25, 9:4, 9:5, 9:6, 14:20, 15:10, 16:1, 16:6, 18:22
**fishing** [1] - 9:14
**fits** [1] - 14:2
**fix** [1] - 17:11
**FLOOR** [1] - 2:4
**focus** [1] - 11:1
**focused** [1] - 14:23
**following** [1] - 6:19
**FOR** [1] - 23:5
**forced** [1] - 12:9
**FOREGOING** [1] - 23:2
**format** [1] - 20:17
**forms** [1] - 9:11
**forty** [1] - 17:3
**FOURTH** [1] - 1:22
**fraud** [18] - 3:18, 4:22, 5:11, 5:12, 5:13, 5:14, 6:12, 9:19, 10:1, 10:19, 11:21, 12:7, 12:10, 13:15, 13:23, 20:1, 20:11
**fraudulent** [3] - 5:3, 10:2, 12:11
**front** [1] - 17:4
**future** [1] - 9:18

## G

**general** [1] - 10:3
**generally** [1] - 12:25
**given** [7] - 3:6, 3:17, 7:20, 8:12, 14:5, 14:16, 19:21
**goods** [1] - 7:7
**grant** [1] - 4:13
**granted** [1] - 4:4
**Guarantee** [3] - 10:16, 11:19
**guess** [1] - 21:25
**GUILFORD** [1] - 1:3

## H

**half** [1] - 14:11
**hard** [5] - 4:1, 11:6, 14:1, 19:17, 20:21
**harmonize** [1] - 12:21
**Health** [1] - 3:5
**HEALTH** [2] - 1:10, 2:10
**hear** [2] - 13:9, 19:8
**heard** [1] - 13:11
**heavily** [1] - 15:7
**held** [1] - 11:22
**help** [1] - 21:4
**HEREBY** [1] - 23:2

**hesitate** [1] - 6:17
**high** [1] - 8:8
**high-level** [1] - 8:8
**HIPAA** [1] - 20:18
**HIPAA-protected** [1] - 20:18
**history** [1] - 7:22
**hit** [1] - 4:7
**hold** [2] - 4:19, 15:18
**Holdings** [1] - 3:5
**HOLDINGS** [2] - 1:4, 2:3
**holistic** [1] - 19:16
**honed** [1] - 5:17
**Honey** [1] - 9:7
**Honor** [32] - 3:6, 3:8, 3:14, 4:4, 4:11, 4:18, 5:14, 6:14, 8:21, 9:14, 9:23, 11:16, 12:8, 13:5, 13:10, 13:16, 13:22, 14:8, 14:16, 14:20, 14:24, 15:4, 15:5, 16:2, 17:8, 17:23, 18:2, 20:14, 21:10, 21:17, 21:19, 22:4
**Honor's** [2] - 13:11, 16:9
**HONORABLE** [1] - 1:3
**Hospital** [2] - 17:13
**huge** [1] - 10:21
**hundred** [1] - 9:11
**hundreds** [1] - 7:20
**hurdle** [2] - 14:22, 14:23
**hurricane** [1] - 7:7

## I

**identical** [1] - 15:9
**identically** [1] - 15:14
**identified** [3] - 9:6, 17:19, 17:21
**identify** [1] - 3:22
**ill** [1] - 17:6
**ill-defined** [1] - 17:6
**illusion** [1] - 14:5
**implied** [13] - 5:9, 9:15, 10:4, 10:9, 10:23, 11:4, 11:8, 14:4, 14:19, 15:12, 17:9, 17:18, 20:10
**important** [6] - 3:22, 4:2, 8:23, 11:2, 13:5, 18:19
**importantly** [1] - 5:6
**imposed** [1] - 4:9
**impossible** [1] - 7:5
**IN** [4] - 2:3, 2:9, 23:3, 23:6
**Inc** [1] - 3:5
**include** [1] - 5:20
**inconsistent** [2] - 11:13, 12:22
**indicated** [1] - 8:23
**indicia** [2] - 17:14, 17:15
**induce** [1] - 6:20
**inducement** [7] - 5:3, 5:13, 5:14, 6:12, 8:1, 10:3, 12:11
**industry** [1] - 9:8

**information** [7] - 3:17, 3:22, 3:25, 20:16, 20:18, 20:19
**initial** [1] - 9:6
**Insurance** [1] - 3:5
**insurance** [2] - 8:4, 8:17
**INSURANCE** [2] - 1:10, 2:10
**insureds** [2] - 6:21, 8:2
**intend** [5] - 5:23, 6:2, 6:7, 7:3, 12:13
**intrigued** [1] - 5:20
**invite** [1] - 5:16
**involve** [1] - 12:1
**involved** [1] - 12:2
**involves** [1] - 5:9
**Iqbal/Twombly** [4] - 4:10, 5:25, 6:5, 6:10
**ironic** [1] - 4:4
**irony** [1] - 4:7
**irrelevant** [2] - 9:8, 11:22
**IS** [1] - 23:2
**issue** [4] - 8:16, 11:18, 12:5, 21:12
**issued** [1] - 3:11
**issues** [1] - 22:8
**item** [1] - 3:4

## J

**January** [2] - 21:19, 22:3
**JANUARY** [2] - 1:18, 3:1
**John** [1] - 3:7
**JOHN** [2] - 2:3, 2:3
**JR** [1] - 2:9
**JUDGE** [1] - 1:3
**judges** [1] - 22:10
**JUDICIAL** [1] - 23:7
**jury** [2] - 11:20, 11:21

## K

**kind** [2] - 4:1, 11:6

## L

**language** [2] - 13:16, 15:13
**largely** [1] - 4:9
**laser** [1] - 14:23
**last** [2] - 9:5, 21:12
**Lauren** [1] - 9:7
**LAVIN** [1] - 3:8
**Lavin** [1] - 3:8
**law** [2] - 10:25
**LAW** [1] - 2:3
**least** [1] - 9:17
**leave** [4] - 4:13, 13:13, 17:10, 20:2
**legal** [1] - 11:13
**length** [1] - 3:19
**LESS** [1] - 23:5
**level** [1] - 8:8

**Life** [1] - 3:5
**LIFE** [2] - 1:10, 2:10
**likely** [1] - 10:23
**limit** [1] - 4:15
**limited** [2] - 5:19, 18:21
**line** [4] - 5:21, 5:22, 21:7, 21:8
**listed** [1] - 8:25
**look** [11] - 3:12, 3:21, 4:19, 7:17, 8:23, 9:4, 11:3, 18:12, 20:24, 21:1, 21:7
**looking** [3] - 6:7, 18:10, 20:15
**LOS** [1] - 2:11
**losing** [2] - 12:17, 12:19
**loss** [11] - 5:9, 5:24, 10:2, 10:4, 10:8, 11:22, 12:18, 12:22, 13:25, 14:10, 14:14
**Loss** [4] - 4:20, 4:22, 4:25, 5:2
**low** [1] - 19:4
**low-payment** [1] - 19:4

## M

**market** [2] - 8:4, 8:5
**matches** [1] - 15:13
**MATTER** [1] - 23:4
**matter** [1] - 19:8
**matters** [2] - 9:8, 19:6
**Matthew** [1] - 3:8
**MCDERMOTT** [1] - 2:10
**meaningful** [1] - 14:6
**means** [1] - 20:4
**meant** [1] - 17:5
**mediate** [1] - 22:4
**mediation** [5] - 21:13, 21:18, 22:7, 22:9, 22:11
**meet** [1] - 21:14
**meeting** [1] - 15:12
**mention** [2] - 6:17, 9:4
**merging** [1] - 10:25
**might** [2] - 7:25, 21:4
**milieu** [1] - 13:21
**mill** [1] - 6:12
**million** [3] - 18:9, 18:10, 18:13
**mind** [1] - 15:13
**minute** [3] - 14:5, 14:10, 15:3
**Miriam** [1] - 23:9
**MIRIAM** [2] - 1:21, 23:10
**misrepresentation** [1] - 14:18
**moment** [2] - 4:20, 15:18
**MONDAY** [2] - 1:18, 3:1
**money** [2] - 18:6, 18:13
**months** [1] - 7:19
**moot** [1] - 20:3
**morning** [3] - 3:6, 14:24,

14:25
**motion** [2] - 3:24, 4:5
**motivations** [1] - 19:17
**move** [1] - 7:1
**MR** [43] - 3:6, 3:8, 3:10, 3:14, 4:11, 4:15, 4:18, 4:21, 4:25, 5:14, 6:14, 6:16, 6:24, 7:13, 7:15, 7:17, 10:10, 10:12, 11:16, 12:16, 13:8, 13:10, 13:22, 14:3, 15:1, 15:4, 15:19, 15:21, 18:2, 18:4, 18:8, 18:14, 18:17, 19:9, 19:20, 21:6, 21:10, 21:12, 21:17, 21:22, 22:4, 22:15, 22:17
**must** [2] - 14:1, 20:24
**MVB11893@aol.com** [1] - 1:23

### N

**name** [4] - 9:1, 9:2, 9:5
**names** [4] - 8:24, 9:5, 9:8
**NC** [2] - 1:4, 2:3
**necessarily** [2] - 17:14, 17:15
**necessary** [3] - 3:13, 3:15, 3:19
**necessity** [1] - 13:19
**need** [3] - 7:3, 21:8, 21:13
**needs** [1] - 18:20
**negotiate** [1] - 10:13
**network** [4] - 8:10, 8:14, 8:18, 11:5
**never** [4] - 12:4, 14:6, 14:7, 18:24
**none** [1] - 11:17
**noted** [1] - 20:25
**nothing** [2] - 13:11, 13:23
**Number** [2] - 15:14, 15:24
**number** [6] - 6:17, 8:11, 8:13, 9:9, 9:10, 10:1
**numbers** [1] - 8:22

### O

**obviously** [2] - 16:5, 17:23
**occurs** [1] - 6:3
**OF** [8] - 1:2, 1:16, 2:3, 2:3, 2:9, 23:3, 23:7
**OFFICE** [1] - 2:3
**OFFICIAL** [2] - 1:21, 23:10
**offline** [1] - 20:19
**once** [2] - 20:16, 22:4
**one** [9] - 3:21, 4:2, 5:2, 5:21, 5:22, 10:20, 11:25, 15:14, 21:19
**opinion** [2] - 8:21, 18:23
**option** [1] - 8:19
**oral** [17] - 5:9, 9:15, 10:4,

10:8, 10:22, 11:3, 11:8, 12:2, 12:3, 12:23, 13:2, 14:3, 14:19, 15:12, 17:10, 17:18, 20:10
**order** [3] - 12:14, 13:12, 16:10
**Orthopedic** [1] - 17:12
**otherwise** [1] - 14:17
**out-of-network** [1] - 11:5
**overlap** [1] - 10:25
**own** [1] - 18:21

### P

**Pac** [3] - 16:10, 16:16, 17:12
**pacific** [1] - 18:20
**Pacific** [2] - 16:22, 18:18
**Pack** [2] - 15:5, 15:14
**page** [4] - 15:5, 16:17, 18:11, 18:12
**pages** [3] - 15:9, 15:14, 21:2
**paid** [5] - 7:21, 7:24, 19:1, 19:2, 19:4
**paragraph** [5] - 6:17, 6:19, 13:14, 18:23, 19:10
**paragraphs** [11] - 3:13, 3:21, 4:5, 4:8, 5:22, 13:18, 13:23, 14:2, 15:15, 21:1, 21:9
**PARK** [1] - 2:10
**part** [6] - 5:5, 19:5, 19:7, 19:11, 19:14, 20:11
**parties** [4] - 7:23, 10:13, 16:21, 20:22
**passwords** [1] - 20:20
**patient** [2] - 15:8, 15:24
**patients** [5] - 3:22, 7:20, 15:9, 20:6, 20:7
**pattern** [1] - 7:18
**pay** [7] - 6:19, 6:20, 8:14, 8:18, 16:11, 16:22, 16:24
**payment** [2] - 16:8, 19:4
**people** [4] - 8:12, 8:24, 9:6, 21:16
**per** [1] - 18:11
**percent** [2] - 17:3, 17:4
**percentage** [1] - 16:24
**percentages** [1] - 16:12
**perform** [4] - 5:18, 6:7, 7:5, 7:10
**performed** [1] - 7:8
**perhaps** [2] - 19:12, 21:8
**period** [1] - 18:15
**perspective** [1] - 20:24
**persuasive** [1] - 14:12
**phone** [1] - 16:11
**picked** [1] - 19:14
**pin** [1] - 16:17
**place** [2] - 4:1, 11:6
**plaintiff** [3] - 3:7, 3:9, 15:16

**Plaintiffs** [1] - 1:6
**plaintiffs** [1] - 16:23
**PLAINTIFFS** [1] - 2:3
**plans** [1] - 8:6
**plausibility** [2] - 6:10, 7:1
**play** [1] - 11:9
**plead** [2] - 12:10, 15:12
**pleading** [10] - 3:16, 4:7, 9:17, 11:12, 11:18, 12:4, 15:11, 20:15, 21:23
**pleadings** [2] - 12:21, 22:5
**poilcy** [1] - 8:7
**point** [11] - 9:16, 9:17, 9:23, 11:17, 12:8, 12:17, 12:18, 14:11, 16:15, 16:18, 19:21
**policies** [3] - 10:21, 11:5, 12:21
**policy** [8] - 5:7, 8:6, 8:8, 10:5, 10:6, 10:12, 10:24, 12:20
**portion** [1] - 16:24
**position** [1] - 9:14
**possibility** [1] - 9:19
**possibly** [1] - 10:23
**precedent** [1] - 5:7
**prefer** [1] - 3:20
**preliminary** [2] - 7:15, 8:2
**president** [1] - 7:4
**PRESIDING** [1] - 1:3
**prevented** [1] - 7:7
**prevents** [1] - 6:5
**previous** [1] - 3:23
**problem** [4] - 16:13, 19:14, 21:21, 21:22
**procedural** [3] - 19:6, 19:8, 21:12
**procedure** [1] - 15:22
**proceed** [1] - 12:12
**proceedings** [1] - 22:19
**PROCEEDINGS** [2] - 1:16, 23:3
**promise** [8] - 5:18, 5:23, 6:2, 6:6, 7:3, 7:4, 7:6, 7:10
**promises** [1] - 6:20
**promissory** [1] - 17:18
**proportionality** [1] - 18:13
**prospect** [1] - 5:21
**protected** [1] - 20:18
**prove** [2] - 9:19, 14:9
**provide** [2] - 6:21, 20:16
**provided** [7] - 9:11, 14:8, 16:1, 16:3, 16:4, 16:5, 17:22
**provider** [1] - 18:25
**providers** [2] - 6:20, 11:5
**providing** [2] - 20:18, 20:19
**pseudonym** [1] - 9:2
**public** [8] - 5:7, 10:5, 10:6, 10:12, 10:21, 10:24, 11:5,

12:20
**punitive** [6] - 5:20, 5:23, 6:7, 6:11, 7:12, 9:24
**purpose** [1] - 6:19
**purposes** [1] - 6:20
**put** [4] - 8:2, 10:14, 18:17, 19:17

### Q

**questions** [2] - 17:24, 22:2
**quick** [1] - 18:5
**quote** [1] - 16:24
**quotes** [1] - 16:22

### R

**raising** [1] - 22:8
**rate** [3] - 16:15, 16:22, 17:20
**reach** [1] - 16:21
**read** [1] - 6:23
**real** [2] - 13:5, 18:13
**really** [5] - 5:16, 8:22, 9:8, 11:1, 13:24
**reason** [3] - 5:6, 5:7, 9:1
**reasonable** [1] - 17:1
**reasons** [5] - 5:1, 5:8, 9:22, 10:1, 17:8
**recognize** [1] - 6:8
**recognized** [1] - 13:16
**record** [1] - 18:21
**RECORDED** [1] - 23:3
**Recordings** [1] - 12:1
**Recovery** [1] - 15:5
**REDUCTION** [1] - 23:6
**refer** [1] - 15:8
**refined** [1] - 12:17
**REGULATIONS** [1] - 23:7
**related** [1] - 4:21
**relates** [1] - 10:1
**relating** [1] - 3:21
**relationship** [1] - 11:7
**relief** [2] - 12:7, 21:5
**rely** [1] - 15:6
**remedies** [1] - 10:20
**remedy** [1] - 11:1
**removes** [1] - 8:19
**REPORTER** [2] - 1:21, 23:10
**REPORTER'S** [1] - 1:16
**representation** [1] - 18:24
**representations** [1] - 6:18
**representatives** [1] - 8:25
**request** [1] - 21:21
**requested** [1] - 22:7
**requesting** [2] - 9:24, 9:25
**requests** [1] - 13:20
**required** [1] - 18:12
**requirements** [1] - 4:8
**respect** [2] - 14:3, 17:9

**response** [1] - 20:23
**responsible** [1] - 21:25
**risk** [2] - 10:14, 10:19
**risks** [1] - 10:13
**rock** [2] - 4:1, 11:6
**round** [1] - 3:24
**rule** [16] - 4:20, 4:22, 4:25, 5:2, 5:3, 5:9, 5:24, 10:4, 10:8, 10:22, 11:22, 12:4, 12:18, 12:22, 14:10, 14:14
**rules** [1] - 11:12
**ruling** [7] - 4:12, 10:15, 13:24, 18:21, 19:10, 19:21, 19:24
**rulings** [1] - 20:3
**run** [1] - 6:12
**run-of-the-mill** [1] - 6:12

## S

**SACV19-00709** [1] - 3:4
**SACV19-00709-AG** [1] - 1:8
**SANTA** [3] - 1:17, 1:22, 3:1
**second** [1] - 5:5
**seconds** [1] - 7:2
**Section** [1] - 19:9
**Sections** [1] - 4:16
**sections** [1] - 4:21
**see** [1] - 14:2
**seeking** [1] - 14:15
**sense** [1] - 10:22
**separate** [1] - 5:12
**September** [3] - 13:12, 14:21, 15:6
**service** [1] - 15:17
**services** [2] - 15:16, 16:5
**set** [1] - 6:9
**setting** [1] - 13:2
**settled** [1] - 22:5
**Shield** [2] - 16:22, 16:24
**shipment** [1] - 7:7
**simple** [2] - 6:12, 13:2
**simplify** [1] - 20:11
**simply** [5] - 6:5, 7:9, 9:13, 18:25, 21:24
**single** [1] - 14:13
**situation** [1] - 6:3
**situations** [1] - 6:1
**SL** [3] - 1:4, 2:3, 3:4
**so-called** [1] - 17:20
**solution** [1] - 21:9
**sometimes** [5] - 6:9, 9:5, 17:3, 17:4
**somewhat** [1] - 20:3
**sorry** [1] - 6:23
**sort** [1] - 14:5
**specific** [4] - 6:25, 7:19, 15:16, 18:21
**specifically** [1] - 10:17

**specificity** [2] - 3:15, 6:10
**specifics** [2] - 14:17, 15:22
**spreadsheet** [1] - 20:14
**stage** [3] - 9:17, 11:18, 12:9, 21:24
**standards** [2] - 3:16, 9:22
**statement** [1] - 4:4
**statements** [1] - 13:19
**STATES** [2] - 1:1, 23:7
**STENOGRAPHICALLY** [1] - 23:3
**sticks** [1] - 19:24
**still** [2] - 21:23, 22:5
**story** [1] - 13:18
**STREET** [1] - 1:22
**strike** [1] - 22:8
**struggling** [1] - 6:3
**stuck** [1] - 11:6
**submission** [1] - 22:13
**submit** [3] - 9:9, 13:3, 14:12
**substantially** [1] - 15:8
**succeed** [1] - 18:6
**succinctly** [1] - 21:4
**sue** [1] - 5:17
**suggested** [1] - 14:21
**SUITE** [2] - 1:22, 2:11
**support** [5] - 3:15, 10:5, 13:15, 14:13, 14:17
**supports** [1] - 13:23

## T

**Tenet** [1] - 17:12
**tentative** [10] - 3:11, 4:12, 10:15, 11:15, 13:12, 13:24, 14:11, 17:9, 19:10, 19:24
**terminology** [1] - 12:16
**terms** [2] - 4:11, 10:14
**THAT** [1] - 23:2
**THE** [49] - 2:3, 2:9, 3:4, 3:11, 4:3, 4:13, 4:17, 4:19, 4:24, 5:13, 5:15, 6:15, 6:22, 6:25, 7:14, 7:16, 10:7, 10:11, 11:14, 12:13, 13:6, 13:9, 13:17, 14:1, 14:25, 15:3, 15:18, 15:20, 17:25, 18:3, 18:5, 18:10, 18:16, 19:8, 19:14, 20:23, 21:7, 21:11, 21:15, 21:20, 22:3, 22:7, 22:18, 23:2, 23:3, 23:4, 23:6, 23:7
**theories** [3] - 11:13, 12:23, 14:4
**theory** [2] - 13:25, 14:14
**they've** [3] - 14:16, 16:9, 17:2
**third** [1] - 16:8
**THIS** [1] - 23:5
**thoughtful** [2] - 13:12, 13:24
**thousand** [1] - 9:11
**three** [2] - 9:6, 20:1

**throw** [1] - 6:1
**thunderbolt** [1] - 22:10
**today** [2] - 20:25, 22:14
**together** [1] - 19:18
**tons** [1] - 20:18
**tort** [1] - 10:25
**total** [1] - 16:24
**totally** [1] - 9:21
**Tower** [2] - 3:7, 18:3
**TOWER** [33] - 2:3, 2:3, 3:6, 3:14, 4:11, 4:15, 4:18, 4:21, 4:25, 5:14, 6:14, 6:16, 6:24, 7:13, 7:15, 7:17, 10:10, 10:12, 11:16, 12:16, 13:8, 18:2, 18:4, 18:8, 18:14, 18:17, 19:9, 19:20, 21:6, 21:10, 21:12, 21:22, 22:17
**TRANSCRIPT** [3] - 1:16, 23:3, 23:5
**treated** [1] - 8:2
**treatment** [13] - 6:21, 7:20, 8:10, 8:16, 15:23, 16:1, 16:3, 16:13, 16:19, 16:20, 17:19, 17:20, 17:21
**trial** [1] - 11:21
**tried** [1] - 16:9
**TRUE** [1] - 23:2
**true** [1] - 17:17
**trust** [1] - 22:11
**trusting** [1] - 22:11
**try** [2] - 13:15, 17:11
**trying** [4] - 18:11, 19:18, 21:3, 21:9
**two** [4] - 4:21, 5:1, 15:15, 15:24
**type** [1] - 16:19
**typical** [1] - 14:25

## U

**U.S** [1] - 1:21
**UCR** [7] - 16:12, 16:15, 17:5, 18:25, 19:1, 19:2, 19:20
**UMG** [1] - 11:25
**under** [4] - 11:12, 12:20, 14:17, 22:13
**understood** [2] - 7:13, 21:10
**unique** [1] - 14:14
**United** [2] - 10:15, 11:18
**UNITED** [2] - 1:1, 23:7
**united** [1] - 10:16
**unquote** [1] - 17:1
**unspecified** [2] - 16:13
**up** [6] - 6:9, 12:8, 15:13, 19:15, 21:24, 22:1
**urge** [1] - 17:8
**usual** [3] - 16:12, 16:25, 17:7

## V

**value** [1] - 17:16
**various** [2] - 16:12, 17:12
**vehicles** [1] - 5:25
**verification** [1] - 20:9
**viable** [1] - 17:18
**vice** [1] - 7:4
**view** [3] - 14:22, 15:11, 17:11
**violate** [1] - 21:24
**violated** [1] - 13:1
**Vs** [1] - 1:8
**vs** [2] - 3:5, 10:16

## W

**wait** [3] - 10:7, 11:14, 15:3
**WEST** [1] - 1:22
**wildly** [1] - 18:6
**WILL** [1] - 2:10
**WILLIAM** [1] - 2:9
**WITH** [1] - 23:6
**words** [1] - 20:1
**write** [1] - 8:6
**written** [7] - 10:8, 10:13, 11:4, 11:19, 12:1, 12:24